Mark Rosenbaum (CA SBN # 59940)
Amanda Mangaser Savage (CA SBN # 325996)
Rebecca Brown (CA SBN # 345805)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
mrosenbaum@publiccounsel.org
asavage@publiccounsel.org
rbrown@publiccounsel.org

*Listing of counsel continued on following page*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jose Antonio PEREZ-FUNEZ, *et al*.,<br><br>            Plaintiffs,<br><br>      vs.<br><br>U.S. Department of Homeland Security, *et al*.,<br><br>            Defendants. | Case No.: CV 81-01457-MWF(Ex)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TERMINATE PERMANENT INJUNCTION AND ADVISAL ORDER**<br><br>Date: February 9, 2026<br>Time: 10:00 a.m.<br>Place: Courtroom 5A, First Street Courthouse<br>Judge: Honorable Michael W. Fitzgerald |

Gilbert Paul Carrasco (CA SBN # 90838)
900 Pacific Coast Highway, Suite # 305
Huntington Beach, CA 92648-4863
Telephone: (503) 990-4879
carrasco@willamette.edu

Adam B. Wolfson (CA SBN # 262125)
Paulina Slagter (CA SBN # 318559)
Quinn Emanuel Urquhart & Sullivan LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
adamwolfson@quinnemanuel.com
paulinaslagter@quinnemanuel.com

Peter McGraw*
Kevin Siegel*
NATIONAL IMMIGRATION LAW CENTER
1121 14th Street, Suite 200
Washington, D.C. 20005
Telephone: (213) 639-3900
Fax: (213) 639-3911
mcgraw@nilc.org
siegel@nilc.org

Richard A. Koffman**
Alex Bodaken**
Nina L. Haug**
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave., NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 408-4600
rkoffman@cohenmilstein.com
abodaken@cohenmilstein.com
nhaug@cohenmilstein.com

Diane Kee***
COHEN MILSTEIN SELLERS & TOLL PLLC
100 N. 18th St., Suite 1820

ii

Philadelphia, PA 19103
Telephone: (267) 479-5700
dkee@cohenmilstein.com


*Admitted *pro hac vice*

** Application for *pro hac vice* admission pending

*** Application for *pro hac vice* admission forthcoming

# TABLE OF CONTENTS

INTRODUCTION ...............................................................................................9

BACKGROUND ..............................................................................................10

ARGUMENT....................................................................................................14

I.    Defendants Are Not Entitled to Relief Under Rules 60(b)(4) or 60(b)(6)....14

   A.    Rule 60(b)(4) Does Not Apply.................................................................14

   B.    Rule 60(b)(6) Does Not Apply.................................................................15

II.   Termination Is Not Justified Under Rule 60(b)(5). .....................................17

   A.    Neither Section 1252(f)(1) Nor *Aleman Gonzalez* Require the Injunction's Termination........................................................................................17

   B.    The TVPRA and OBBB Do Not Constitute Changes in Law That Justify Terminating the Injunction. ...........................................................23

   C.    The Government's Termination Request Is Untimely.............................26

   D.    Relevant Factual Changes Do Not Justify the Permanent Injunction's Termination.......................................................................................27

CONCLUSION.................................................................................................30

# TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton*, 521 U.S. 203 (1997) ...............................................................8

*Al Otro Lado v. EOIR*, 138 F.4th 1102 (9th Cir. 2025) ................................. 13, 14

*Allen v. Milas*, 896 F.3d 1094 (9th Cir. 2018) .....................................................10

*Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252 (1977) .......................8

*Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846 (9th Cir. 2012) .................................12

*Biden v. Texas*, 597 U.S. 785 (2022) .................................................................6, 7

*Buck v. Davis*, 580 U.S. 100 (2017)......................................................................8

*California ex rel. Becerra v. U.S. Env't Prot. Agency*, 978 F.3d 708
  (9th Cir. 2020) ...............................................................................................15

*Coleman v. Brown*, 922 F. Supp. 2d (N.D. Cal. 2013) ..........................................19

*Concialdi v. Jacobs Eng'g Grp.*, 2019 WL 3084282 (C.D. Cal. 2019) .................12

*Firebaugh Canal Co. v. United States*, 203 F.3d 568 (9th Cir. 2000)....................16

*Flores v. Bondi*, 2025 WL 2633183 (C.D. Cal. 1985)............................................17

*Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016) ............................................... 15, 18

*Flores v. Rosen*, 984 F.3d 720 (9th Cir. 2020) ........................................... 4, 15, 17

*Freedom From Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of
  Educ.*, 2025 WL 3282571 (C.D. Cal. Oct. 10, 2025)..........................................18

*Frew v. Hawkins*, 401 F. Supp. 2d 619 (E.D. Tex. 2005) ......................................18

*Galvez v. Jaddou*, 52 F.4th 821 (9th Cir. 2022)............................................. 10, 11

*Garcia Ramirez v. ICE*, 2025 WL 3563183 (D.D.C. Dec. 12, 2025).....................14

*Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022) ...................................... 1, 9, 10

*Gillispie v. Warden, London Corr. Inst.*, 771 F.3d 323 (6th Cir. 2014)...................7

*Gonzales v. Dep't of Homeland Sec.*, 508 F.3d 1227 (9th Cir. 2007)............. 11, 14

*Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788 (9th Cir. 2020)..............9

*Hoffmann v. Pulido*, 928 F.3d 1147 (9th Cir. 2019)...............................................7

*Horne v. Flores*, 557 U.S. 433, 447 (2009) ................................................... 9, 19

*Ibarra-Perez v. United States*, 154 F.4th 989 (9th Cir. 2025) ................................. 10

*Inland Concrete Enters., Inc. v. Kraft*, 318 F.R.D. 383 (C.D. Cal. 2016) ................. 7

*J.D.B. v. North Carolina*, 564 U.S. 261 (2011) ...................................................... 21

*Jeff D. v. Little*, 2023 WL 7220754 (D. Idaho Nov. 1, 2023) .................................. 18

*Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016) .................................................... 21

*L.G.M.L. v. Noem*, --- F. Supp. 3d ---, 2025 WL 2671690 (D.D.C. Sep. 18, 2025) .... .......................................................................................................... 1, 5, 11, 16

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988) ......................... 8

*Mathews v. Diaz*, 426 U.S. 67 (1976) ....................................................................... 8

*Nehmer v. U.S. Dep't of Veterans Affs.*, 494 F.3d 846 (9th Cir. 2007) ................... 17

*Nemaizer v. Baker*, 793 F.2d 58 (2d Cir. 1986) ........................................................ 7

*Orantes-Hernandez v. Gonzales*, 504 F. Supp. 2d 825 (C.D. Cal. 2007), *aff'd sub nom. Orantes-Hernandez v. Holder*, 321 F. App'x 625 (9th Cir. 2009) .............. 19

*Perez-Funez v. Dist. Dir., I.N.S.* (*Perez-Funez I*), 611 F. Supp. 990 (C.D. Cal. 1984)… .................................................................................................... 3, 20

*Perez-Funez v. Dist. Dir., I.N.S.* (*Perez-Funez II*), 619 F. Supp. 656 (C.D. Cal. 1985) ........................................................................................................ passim

*Pigford v. Veneman*, 292 F.3d 918 (D.C. Cir. 2002) .............................................. 21

*Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806 (1945) ............................................................................................. 21

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ............................................... 14

*Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367 (1992) .......................... 9, 18, 21

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) .................................... 7

*Tenn. Valley Auth. v. Hill*, 437 U.S. 153 (1978) .................................................... 16

*Texas v. Dep't of Homeland Sec.*, 123 F.4th 186 (5th Cir. 2024) ........................... 12

*United Farm Workers v. Noem*, 785 F. Supp. 3d 672 (E.D. Cal. 2025) ................. 14

*United States v. Asarco, Inc.*, 430 F.3d 972 (9th Cir. 2005) .................................. 19

*United States v. Boch Oldsmobile*, 909 F.2d 657 (1st Cir. 1990) ............................ 7

vi

*United States v. Hernandez-Garcia*, 44 F.4th 1157 (9th Cir. 2022)........................11

*United States v. Holtzman*, 762 F.2d 720 (9th Cir. 1985) .....................................17

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) .........................7

*Webster v. Doe*, 486 U.S. 592 (1988) ...................................................................10

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ................................................................8

**Statutes**

8 U.S.C. § 1229a ....................................................................................................13

8 U.S.C. §1225(a)(4)..............................................................................................16

8 U.S.C. § 1232(a)(1)..............................................................................................12

8 U.S.C. § 1232(a)(1)(B)(ii) ...................................................................................12

8 U.S.C. § 1232(a)(2)..................................................................................... 15, 16, 21

8 U.S.C. § 1232(a)(2)(A)(iii) ..................................................................................13

8 U.S.C. § 1232(a)(2)(B) ...........................................................................................2

8 U.S.C. § 1232(a)(5)(D) ............................................................................... 2, 5, 15

8 U.S.C. § 1232(b)(2)(A)..........................................................................................12

8 U.S.C. § 1232(c)(2)(A) ..........................................................................................20

8 U.S.C. § 1252(f)(1) .............................................................................................1, 9

8 U.S.C. § 1225......................................................................................................13

**Other Authorities**

Aliens and Nationality; Homeland Security; Regulations, 68 Fed. Reg. 9824, 9838
    (Feb. 28, 2003) .................................................................................................4

Detention and Release of Juveniles, 53 Fed. Reg. 17450 (May 17, 1988)...............4

Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens;
    Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312,
    10362 (Mar. 6, 1997)........................................................................................4

Jose Olivarés, *Unaccompanied Children Being Pressured to Return to Their
    Countries by US Border Officials*, The Guardian (Dec. 19, 2025),

https://www.theguardian.com/us-news/2025/dec/19/unaccompanied-children-trump-self-deport.................................................................................14

**Regulations**

45 C.F.R. § 410.1309(a)(1).................................................................17

8 C.F.R. § 1236.3(g) ...........................................................................4

8 C.F.R. § 1236.3(h) .........................................................................17

8 C.F.R. § 236.3(g) ............................................................................4

**Rules**

Fed. R. Civ. P. 60(b)(4)......................................................................6

Fed. R. Civ. P. 60(b)(5)...................................................................1, 9

Fed. R. Civ. P. 60(b)(6)......................................................................7

# INTRODUCTION

The Government seeks to terminate an injunction that sets out constitutionally required procedural safeguards against the unlawful removal of unaccompanied children through unknowing and involuntary waivers of their rights. Simultaneously, the Government proposes to drastically expand, beyond limitations in the Trafficking Victims Protection Reauthorization Act ("TVPRA"), the use of expedited return procedures to remove those children. Dkt. 250 at 9. The Government's motion comes less than three months after its failed attempt to remove Guatemalan unaccompanied children in the middle of the night under the guise of "repatriation." *See L.G.M.L. v. Noem*, --- F. Supp. 3d ---, 2025 WL 2671690, at \*13 (D.D.C. Sep. 18, 2025). But the Government's desire to rush unaccompanied children out of the country cannot override the statutory and constitutional protections to which those children are entitled. Its motion must be denied.

The Government claims changes in law—namely, the Supreme Court's interpretation of 8 U.S.C. § 1252(f)(1) in *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022) and the TVPRA—warrant termination of the injunction under Federal Rule of Civil Procedure 60(b). Dkt. 250 at 2–3, 18. But both Rules 60(b)(4) and 60(b)(6) are squarely foreclosed as means of terminating the injunction. And the Government's Rule 60(b)(5) arguments fail for four reasons. *First*, because the protections ordered by the injunction flow from the Fifth Amendment and operate primarily on the TVPRA, they are not subject to Section 1252(f)(1)'s remedial bar. *Second*, none of the other intervening legal authorities cited by the Government permit what the injunction forbids or otherwise make termination appropriate. *Third*, the Government's motion based on these intervening legal authorities is untimely. *Fourth*, relevant factual changes do not justify the injunction's termination.

The Court's permanent injunction continues to serve a vital purpose in ensuring basic Due Process for unaccompanied children, particularly given the Government's recent efforts to expeditiously remove them from the United States.

9

While recent factual developments may justify modification as set out in Plaintiffs' accompanying cross-motion, terminating the injunction is unwarranted.

## BACKGROUND

Brought on behalf of a class represented by Jose Antonio Perez-Funez, Jose Cruz, Supaya Cruz, Yanira Pena, and Claudia Pena—children fleeing the brutal and protracted civil war in El Salvador—this action challenged the then-Immigration and Nationality Services' ("INS") so-called "voluntary" departure procedure, whereby immigration officials would present recently apprehended unaccompanied children with the option to "voluntarily" depart the United States instead of pursuing relief from removal at a formal deportation hearing. *See Perez-Funez v. Dist. Dir., I.N.S.* (*Perez-Funez II*), 619 F. Supp. 656, 658-59 (C.D. Cal. 1985).[1] Following a trial that included testimony from the five class representatives, 14 additional class member children, and multiple expert witnesses, the Court found that the INS's policies and practices deprived unaccompanied children of procedural due process by coercing them into waiving their rights unknowingly and involuntarily. *Id.* at 669. The Court therefore ordered the agency to:

> (1) read and provide to class members a simplified rights advisal document along with a list of free legal service providers;[2]

---

[1] As described below, *see infra* Section II.A, since 2008, the return of certain unaccompanied children to their country of last habitual residence without initiation of formal removal proceedings has been controlled by the TVPRA's return provision, which has limited application to children from Mexico or Canada who are apprehended "at a land border or Port of Entry of the United States." 8 U.S.C. § 1232(a)(2)(B). All other unaccompanied children sought to be removed by the Government must be provided the opportunity to pursue relief in formal removal proceedings. 8 U.S.C. § 1232(a)(5)(D).

[2] Since approximately 1997, the Government has used Form I-770 as this rights advisal document and continues to use this form today. Exh. 1 (Form I-770); Dkt. 250 at 6 (acknowledging the current use of Form I-770).

(2) if the child permanently resides in Mexico or Canada and was apprehended "in the immediate vicinity of the border," inform the child that they may call a parent, close relative, friend, or organization from the free legal services provider list;

(3) for all other class members, provide access to telephones and ensure that the child has in fact communicated with a parent, close adult relative, friend, or organization from the free legal services provider list; and

(4) obtain a signed acknowledgment by the child, on a separate copy of the advisal document, that they have received this information, including confirmation of communication with a parent, close adult relative, friend, or legal organization where applicable.

*Perez-Funez v. Dist. Dir., I.N.S.* (*Perez-Funez I*), 611 F. Supp. 990, 1005–06 (C.D. Cal. 1984); *Perez-Funez II*, 619 F. Supp. at 669–70.[3]

While recognizing that these protections would "entail some expense," the Court found any cost to be a "minimal burden upon the Government" compared to the great risk of depriving class members of their "significant constitutional and statutory rights." *Perez-Funez II*, 619 F. Supp. at 668. It was "common sense" that the ordered safeguards were needed to protect "unaccompanied children of tender years encounter[ing] a stressful situation in which they are forced to make critical decisions" about difficult legal questions in the absence of a trusted adult. *Id.* at 662. As the Court explained: "Their interrogators are foreign and authoritarian. The environment is new and the culture completely different. The law is complex. The children generally are questioned separately." *Id.* (citation omitted). Under such

---

[3] The Court's 1985 order "ma[de] the preliminary injunction of January 24, 1984 permanent" with certain modifications, including striking specific language prohibiting "employ[ment] of threats, misrepresentations, subterfuge, or other forms of coercion." *Perez-Funez II*, 619 F. Supp. at 670. The permanent injunction incorporates the preliminary injunction's prohibition on "advis[ing], encourag[ing], or persuad[ing]" class members to change their decision about whether to seek relief from removal in Immigration Court. *Perez-Funez I*, 611 F. Supp. at 1005.

11

circumstances, it was "obvious to the Court" that the situation faced by unaccompanied children "is inherently coercive," such that many children—especially those "accustomed to autocratic governments"—naturally responded by "defer[ring] to the authority before them." *Id.* at 661–62 (citation omitted).

Notwithstanding the Government's present claim that the injunction from its inception "improperly deprived future officials of their designated legislative and executive powers to adapt immigration policy to changing political and economic circumstances," the Government provided the advisals required by the injunction ***for 40 years*** with no objection. Dkt. 250 at 3 (citation modified). Since 1988, significant portions of the Court's injunction have been incorporated into the Government's regulations. *See, e.g.*, 8 C.F.R. § 1236.3(g)–(h);[4] Detention and Release of Juveniles, 53 Fed. Reg. 17450 (May 17, 1988) ("[L]anguage of the [*Perez-Funez*] order has been incorporated in the final rule."). Even after 2008, when the TVPRA codified further safeguards for unaccompanied children, the Government failed ***for 17 years***

---

[4] The injunction's requirements are currently partially described in two different places in the Government's regulations. *See* 8 C.F.R. §§ 236.3(g)(1), 1236.3(g)–(h). But the current language at 8 C.F.R. § 236.3(g)–(h) has not taken effect.

INS first adopted requirements from the *Perez-Funez* injunction in 1988 in a regulation codified at 8 C.F.R. § 242.24. *See* Detention & Release of Juveniles, 53 Fed. Reg. 17450-51 (May 17, 1988). In 1997, INS adopted interim regulations incorporating aspects of the permanent injunction. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10362 (Mar. 6, 1997). In 2003, following the passage of the Homeland Security Act, the U.S. Department of Homeland Security ("DHS") duplicated the language of 8 C.F.R. § 236.3(g)–(h) word-for-word at 8 C.F.R. § 1236.3(g)–(h). *See* Aliens and Nationality; Homeland Security; Regulations, 68 Fed. Reg. 9824, 9838 (Feb. 28, 2003).

In 2019, DHS adopted a final rule modifying 8 C.F.R. § 236.3(g). 84 Fed. Reg. 44392, 44525–26 (Aug. 23, 2019). But DHS's rules were found invalid, except for severed portions not including 8 C.F.R. § 236.3(g)(1), which contained parts of the *Perez-Funez* injunctions requirements and did not take effect. *Flores v. Rosen*, 984 F.3d 720, 744 (9th Cir. 2020).

to argue that any change in law or fact made compliance with the injunction inequitable. *See* Dkt. 250 at 3 (claiming that the TVPRA "close[d] the gaps motivating this court's injunction in the first place"). Which begs the question: Why now?

The answer, as the accompanying evidence and further tailored discovery sought by Plaintiffs will demonstrate, is disturbingly clear: the Government seeks to subvert the protections of the TVPRA, accompanying regulations, and the Court's injunction by coercing unaccompanied children into self-deporting. *Cf. L.G.M.L.*, 2025 WL 2671690, at *12 (removing unaccompanied children from the United States under the guise of "reunification" likely "circumvent[s] the process that Congress established for doing so"). This plan is particularly harmful for unaccompanied children from non-contiguous countries—*i.e.*, countries other than Canada or Mexico—who, when encountered by U.S. Customs and Border Patrol ("CBP"), are required under the TVPRA to be transferred to the custody of the Office of Refugee Resettlement ("ORR"), placed in the "least restrictive setting that is in the best interest of the child," and given the opportunity to pursue relief from removal in Immigration Court. 8 U.S.C. § 1232(a)(5)(D), (b), (c)(2)(A). The Government seeks to take advantage of the brief 72-hour period before these children are transferred to ORR to subject them—unlawfully—to expedited return procedures. Exh. 2 at ¶5 (Decl. of Fisher Flores); Dkt. 250 at 9 (claiming that recent appropriations authorize return of unaccompanied children from "any country, not just contiguous countries"); Exh. 3 (Letter from CBP Commissioner Scott).

A legal services provider in the Rio Grande Valley area of Texas reports that children from non-contiguous countries in CBP custody have already been presented with and signed expedited return forms consistent within what appears to be an attempt to comply with the TVPRA's protections. Exh. 2 at ¶¶6-15. Many children did so under circumstances that are coercive or otherwise short of knowing and voluntary. *Id*. Moreover, CBP has created a new "UAC Processing Pathway Advisal"

form that encourages return before transfer to ORR by, among other things, threatening "prolonged" detention for children who seek removal hearings or express fear of returning to their home country. Exh. 4 at 6 (Decl. of Silver);[5] Exh. 5 (Decl. of Winger and Email).[6] Because the *Perez-Funez* injunction affirms the "significant constitutional and statutory rights" of children to make informed and voluntary decisions—and provides procedural protections to guard against the Government's violation of those rights—the Government now seeks termination. *Perez-Funez II*, 619 F. Supp. at 668.

## ARGUMENT

### I. Defendants Are Not Entitled to Relief Under Rules 60(b)(4) or 60(b)(6).

#### A. Rule 60(b)(4) Does Not Apply.

The Government's attempt under Rule 60(b)(4) to "attack [the injunction] as void due to lack of subject matter jurisdiction," Dkt. 250 at 9, fails for two reasons. First, Rule 60(b)(4) does not apply because the Court had jurisdiction to impose this injunction when it was issued. Second, any later-imposed restrictions limit only the Court's available remedies, not its subject matter jurisdiction. *Biden v. Texas*, 597 U.S. 785, 801 (2022).

Federal courts considering Rule 60(b)(4) motions "generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *United Student Aid Funds, Inc. v.*

---

[5] This document is also found at *Garcia Ramirez v. U.S. Immig. & Customs Enf't*, 18-cv-00508 (D.D.C. Nov. 13, 2025), Dkt. Nos. 426, 426-1.

[6] In recent reporting, CBP also appears to acknowledge this document as its own. *See* Jose Olivarés, *Unaccompanied Children Being Pressured to Return to Their Countries by US Border Officials*, The Guardian (Dec. 19, 2025), https://www.theguardian.com/us-news/2025/dec/19/unaccompanied-children-trump-self-deport (quoting CBP spokesperson as saying "[t]he advisal document provided to unaccompanied children explains options available under the Immigration and Nationality Act on their path forward").

14

*Espinosa*, 559 U.S. 260, 271 (2010) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986) and citing *United States v. Boch Oldsmobile*, 909 F.2d 657, 661–62 (1st Cir. 1990)); *see also Hoffmann v. Pulido*, 928 F.3d 1147, 1151 (9th Cir. 2019).

"A void judgment is from its inception a legal nullity." *Inland Concrete Enters., Inc. v. Kraft*, 318 F.R.D. 383, 410 (C.D. Cal. 2016) (citation modified). A Rule 60(b)(4) motion relying on post-judgment events, therefore, "is focused on the wrong point in time." *Gillispie v. Warden, London Corr. Inst.*, 771 F.3d 323, 327 (6th Cir. 2014). Although the Government points to intervening changes in "[t]he legal and factual landscape" over the last four decades during which the permanent injunction protected class members' rights, Dkt. 250 at 3, none of these alleged changes affect the Court's jurisdiction when the injunction was imposed in 1985. The Government cannot now plausibly claim that the Court lacked subject matter jurisdiction in 1985, let alone that it lacked an "arguable basis" for jurisdiction. *See United Student Aid Funds*, 559 U.S. at 271.

Second, there is "no basis for the conclusion that Section 1252(f)(1) concerns subject matter jurisdiction" at all. *Biden v. Texas*, 597 U.S. at 801. As the Supreme Court has explained, "[j]urisdiction . . . is a word of many, too many meanings." *Id.* (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998)). Despite the use of the phrase "jurisdiction or authority" in Section 1252(f)(1), "the question whether a court has jurisdiction to grant a particular remedy is different from the question whether it has subject matter jurisdiction over a particular class of claims." *Id.* Even if, *arguendo*, the Government's interpretation of Section 1252(f)(1) had merit, the statute constrains only the relief this Court can grant. This precludes the Government's Rule 60(b)(4) attack.

### B. Rule 60(b)(6) Does Not Apply.

The Government also argues that "[t]his case presents the 'extraordinary circumstances' that justify relief under Rule 60(b)(6)." Dkt. 250 at 20 (quoting *Ackermann v. United States*, 340 U.S. 193, 198 (1959)); *see Buck v. Davis*, 580 U.S.

15

100, 123 (2017). But the Government invokes Rule 60(b)(4) and primarily argues, under Rule 60(b)(5), that "applying [the judgment] prospectively is no longer equitable." *Agostini v. Felton*, 521 U.S. 203, 215 (1997). Dispositive here, "clause (6)" of Rule 60(b) "and clauses (1) through (5) are mutually exclusive." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988). A party may not avail itself of relief under Rule 60(b)(6) if the motion raises grounds covered by Rule 60(b)(1) through (5)—as the Government does here.

Even if Rule 60(b)(6) could apply, there are no "extraordinary circumstances" present. To claim otherwise, the Government points to supposed separation-of-powers concerns surrounding immigration policy, Dkt. 250 at 21, and misleadingly quotes *Arlington Heights v. Metro Housing Development Corporation* to argue that the injunction "is a 'substantial intrusion' into the workings of the political branches." Dkt. 250 at 19 (quoting *Arlington Heights v. Metro Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977)). In *Arlington Heights*, the Supreme Court merely noted in dicta that "judicial inquiries into legislative or executive *motivation* represent a substantial intrusion into the workings of other branches of Government." *Arlington Heights*, 429 U.S. at 268 n.18 (emphasis added). Moreover, the Supreme Court has never viewed separation-of-powers concerns as overriding the judiciary's role in ensuring that non-citizens receive constitutional protections, even if such protections implicate immigration policy. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 693–94 (2001) (Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent") (collecting cases); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) (Due Process applies even to people "whose presence in this country is unlawful, involuntary, or transitory"). Even if the Government could raise Rule 60(b)(6) as a basis for relief, therefore, its arguments are unavailing.

**II. Termination Is Not Justified Under Rule 60(b)(5).**

Rule 60(b)(5) permits relief from an injunction where "applying it prospectively is no longer equitable." Accordingly, "the Rule provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)).

The Government's first argument regarding changed legal conditions is that 8 U.S.C. § 1252(f)(1) and the Supreme Court's interpretation of that statute in *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022), preclude this Court from maintaining its order for classwide relief. The Government is wrong because the injunction is neither founded on nor implicates a provision of the Immigration and Nationality Act ("INA") subject to Section 1252(f)(1).

The Government's other arguments for termination based on intervening legal developments also fail. No legal authority permits what the injunction prohibits. And while the Government has incorporated significant portions of the injunction into its regulations, the Executive's unilateral creation of law through agency rulemaking does not excuse compliance with the injunction nor warrant its termination. Moreover, the Government's Rule 60(b)(5) motion based on intervening legal developments should be rejected as untimely, and no factual changes justify the injunction's termination.

> **A. Neither Section 1252(f)(1) Nor *Aleman Gonzalez* Require the Injunction's Termination.**

*Aleman Gonzalez* does not require termination of the injunction because the injunction does not "enjoin or restrain the operation of" a covered provision of the INA. *See* 8 U.S.C. § 1252(f)(1). "By its terms, § 1252(f)(1) does not . . . categorically insulate immigration enforcement from judicial classwide injunctions." *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 812 (9th Cir.

2020) (internal quotation marks omitted). Instead, Section 1252(f)(1) prohibits courts from issuing non-individual injunctive relief restraining the operation of "specified statutory provisions" of the INA, *Aleman Gonzalez*, 596 U.S. at 550—namely, 8 U.S.C. §§ 1221–1231, *see Galvez v. Jaddou*, 52 F.4th 821, 829–31 (9th Cir. 2022). Because the injunction here is neither based on nor enjoins a covered provision, it is not subject to Section 1252(f)(1).

The permanent injunction itself does not "order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Aleman Gonzalez*, 596 U.S. at 550. It is premised not on statutory law of any kind, but rather on the Fifth Amendment and the process due to unaccompanied children to ensure that their waiver of the opportunity to pursue relief in Immigration Court is knowing and voluntary. *See Perez-Funez II*, 619 F. Supp. at 659–60. The injunction here is thus categorically distinct from the classwide relief issued by lower courts in *Aleman Gonzalez*, which directly enjoined the Government's ability to detain noncitizens under 8 U.S.C. § 1231, a statute expressly subject to Section 1252(f)(1)'s remedial strictures. *Aleman Gonzalez*, 596 U.S. at 547. Because the injunction does not "order federal officials to take or to refrain from taking" an action under *any* statutory provision, let alone one subject to Section 1252(f)(1), it is not precluded by Section 1252(f)(1) or *Aleman Gonzalez*'s interpretation of the statute. *See Aleman Gonzalez*, 596 U.S. at 550.[7]

Moreover, the injunction does not directly operate on statutes subject to—and thus is not precluded by—Section 1252(f)(1). The Government's argument to the contrary relies on a passing reference to two provisions concerning voluntary

---

[7] Any doubts regarding Section 1252(f)(1)'s application to this constitutionally required injunction must be resolved in Plaintiffs' favor. That is so both because ambiguities in statutes limiting judicial review are construed narrowly, *see Ibarra-Perez v. United States*, 154 F.4th 989, 995–96 (9th Cir. 2025), and because of the presumption that the judiciary may address constitutional claims, *see Allen v. Milas*, 896 F.3d 1094, 1108 (9th Cir. 2018); *Webster v. Doe*, 486 U.S. 592, 601–05 (1988).

18

departure and withdrawal of application for admission that are within Section 1252(f)(1)'s scope. *See* Dkt. 250 at 11–12 (citing 8 U.S.C. §§ 1225(a)(4) and 1229c). But the Government concedes that the 2008-enacted TVPRA now represents the "detailed, comprehensive and binding statutory scheme governing" for the processing and return of unaccompanied children. Dkt. 250 at 14;[8] *L.G.M.L.*, 2025 WL 2671690, at *2. It is thus the TVPRA, 8 U.S.C. § 1232, not Sections 1225(a)(4) and 1229c, that the injunction "directly implicates" today. *Gonzales v. Dep't of Homeland Sec.*, 508 F.3d 1227, 1233 (9th Cir. 2007); *see also United States v. Hernandez-Garcia*, 44 F.4th 1157, 1164 (9th Cir. 2022) (recognizing that a "later and more specific statute usually controls," for interpretive purposes, over earlier and more general ones).

That conclusion disposes of the Government's remedial-bar argument because—as the Government likewise concedes, *see* Dkt. 250 at 12—the TVPRA is not covered by Section 1252(f)(1). *See Galvez*, 52 F.4th at 829–31 (9th Cir. 2022).[9]

---

[8] The Government also asserts that the recently enacted One Big Beautiful Bill Act ("OBBB") further modifies such procedures. Dkt. 250 at 14–15. Setting aside the Government's misinterpretation of the OBBB's import, *but see infra* Section II.B, the OBBB also is not covered by Section 1252(f)(1). *See L.G.M.L.*, 2025 WL 2671690, at *11 n.6; *Galvez*, 52 F.4th at 830 (statutes enacted after 1996 "could not have enacted a law that was amended by the IIRIRA of 1996").

[9] Some cases have suggested that 8 U.S.C. § 1232 is within the range of INA subsections covered by Section 1252(f)(1) because "the reference in § 1252(f)(1) to 'the provisions of part IV of this subchapter' appears to refer to 8 U.S.C. §§ 1221–1232." *Galvez*, 52 F.4th at 830 (citing 8 U.S.C. § 1252(f)(1)); *cf. Aleman Gonzalez*, 596 U.S. at 549 (citing 8 U.S.C. §§ 1221–1232 as the range of provisions referenced in Section 1252(f)(1)). But as the Ninth Circuit explained in *Galvez*, both the text of the Statutes at Large (which controls over the United States Code) and the reference in Section 1252(f)(1) to covering only provisions "as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996," 8 U.S.C. § 1252(f)(1), make clear that the 2008-enacted TVPRA is not covered by Section 1252(f)(1). *Galvez*, 52 F.4th at 829–31; *accord L.G.M.L.*, 2025 WL 2671690, at *11 n.6.

"Congress legislated which sections are covered by § 1252(f)(1)" and "[t]he Executive Branch does not get to propose additions." *Texas v. Dep't of Homeland Sec.*, 123 F.4th 186, 210 (5th Cir. 2024). By establishing robust procedures for the processing and return of unaccompanied children in the TVPRA, which Section 1252(f)(1) does not govern, Congress exempted those procedures—and injunctions implicating them—from Section 1252(f)(1)'s remedial limitations.

The Government may attempt to argue in reply that the permanent injunction, although operating directly on the TVPRA, is nonetheless barred by Section 1252(f)(1) because of the TVRPA's references to 8 U.S.C. §§ 1225(a) and 1229c. *See* 8 U.S.C. § 1232(a)(1)(B)(ii), (a)(5)(D)(ii). That argument, if explained "for the first time in a reply brief," would be waived. *Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846, 852 n.3 (9th Cir. 2012); *see Concialdi v. Jacobs Eng'g Grp.*, 2019 WL 3084282, at *10 n.9 (C.D. Cal. 2019) ("When a party includes no developed argumentation on a point . . . we treat the argument as waived.") (citations omitted). It is also wrong on the merits.

Judge Rafeedie entered the permanent injunction after finding the INS's "policies and procedures" for so-called "voluntary" departure "constitutionally infirm," because they did not sufficiently guard against "[t]he problems of an inherently coercive situation" and class members with "impaired decision-making ability." *Perez-Funez II*, 619 F. Supp. at 669; *id*. at 659–60. With the TVPRA, Congress imposed new obligations on federal agencies to ensure that unaccompanied children "are safely repatriated." 8 U.S.C. § 1232(a)(1). Agencies, including CBP, must notify the U.S. Department of Health and Human Services ("HHS") within 48 hours of discovering any unaccompanied child, 8 U.S.C. § 1232(b)(2)(A), and, absent "exceptional circumstances," must transfer custody of the child to ORR within 72 hours. *Id*. § 1232(b)(3). Unaccompanied children must be "promptly placed in the least restrictive setting that is in [their] best interest." *Id*. § 1232(c)(2)(A). Children from non-contiguous countries are not eligible for return

outside of removal proceedings at all and must be provided access to counsel "to the greatest extent practicable." *Id*. § 1232(a)(5)(D), (c)(5). For unaccompanied children from Mexico or Canada, immigration officials must determine whether the child has been or is likely to be a victim of human trafficking, *id*. § 1232(a)(2)(A)(i), whether the child fears returning to their home country "owing to a credible fear of persecution," *id*. § 1232(a)(2)(A)(ii), and whether the child can make an "independent decision" to return. *Id*. § 1232(a)(2)(A)(iii).

The injunction requires immigration officials to give unaccompanied children verbal and written advisals and phone access to ensure that they can make knowing and voluntary decisions about whether to return to their home country. *Perez-Funez II*, 619 F. Supp. at 669; *see also* Exh. 3 (describing Form I-770 as part of the TVPRA screening process). Thus, the injunction principally operates on the TVPRA's distinct requirement to determine whether unaccompanied children are eligible for return outside of removal proceedings, including the determination that a child is able to make an "independent decision" to return, 8 U.S.C. § 1232(a)(2)(A)(iii), not the INA provisions that may be implicated once the TVPRA's processing requirements are satisfied.

Moreover, any spillover effect on INA provisions covered by Section 1252(f)(1) is irrelevant given the Ninth Circuit's repeated holdings "that § 1252(f)(1) does not prohibit an injunction" operating on non-covered provisions "simply because of collateral effects on a covered provision." *Al Otro Lado v. EOIR*, 138 F.4th 1102, 1125 (9th Cir. 2025) (en banc), *cert. granted on other grounds*, 2025 WL 3198572 (Nov. 17, 2025). Numerous courts have applied this doctrine where an injunction has potential "downstream effects on removal proceedings" pursuant to 8 U.S.C. §§ 1225 and 1229a or other covered provisions. *See, e.g.*, *RAICES v. Noem*, 793 F. Supp. 3d 19, 107 (D.D.C. 2025). The Ninth Circuit found that a court may provide classwide relief regarding asylum rules, which are not covered by Section 1252(f)(1), even though "asylum eligibility may change the outcome of a removal

proceeding under a [Section-1252(f)(1)] covered provision." *Al Otro Lado*, 138 F.4th at 1126. Such an effect on a covered provision "is collateral." *Id.* Similarly, the Ninth Circuit affirmed an injunction against "the unlawful application of statutory provisions regarding adjustment of status"—which are not covered by Section 1252(f)(1)—"notwithstanding that a [Section-1252(f)(1)-covered] reinstatement proceeding may be a collateral consequence of an unsuccessful adjustment application." *Gonzales*, 508 F.3d at 1233.

Two recent cases have applied the collateral-effects doctrine to uphold injunctions like the one here. In April 2025, a court in the Eastern District of California held that an injunction based on the Fourth Amendment and a non-covered INA subpart was not prohibited "*even if* there may be collateral effects upon a provision covered by Section 1252(f)(1)." *United Farm Workers v. Noem*, 785 F. Supp. 3d 672, 705–06 (E.D. Cal. 2025). Weeks ago, a District of Columbia federal court concluded that an injunction implicating a subsection of the TVPRA was not barred merely because it might have collateral effects on a covered provision of the INA. *Garcia Ramirez v. ICE*, 2025 WL 3563183, at *18 (D.D.C. Dec. 12, 2025).

The permanent injunction here, based on the Fifth Amendment, directly operates on the TVPRA, which is not subject to Section 1252(f)(1). Any potential downstream effects on the removal process are collateral, as in the cases cited above. Prospective application of the injunction is therefore permitted.

Finally, the Government has not moved to vacate the declaratory relief issued in this case. *See Perez-Funez II*, 619 F. Supp. at 669. Even if it had, Ninth Circuit precedent establishes "that § 1252(f)(1) does not 'bar classwide declaratory relief.'" *Al Otro Lado*, 138 F.4th at 1123–24 (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010)). As explained in Plaintiffs' accompanying cross-motion, additional discovery may justify modifying the declaratory relief issued in this case. *See* Dkt. 269 at 20. Regardless, declaratory relief establishing the illegality of

unconstitutional practices vis-à-vis unaccompanied minors cannot be eliminated through the Government's motion.

### B.  The TVPRA and OBBB Do Not Constitute Changes in Law That Justify Terminating the Injunction.

The Government argues that "the substantive merits" of the injunction "have been displaced by Congress's own comprehensive changes to the immigration laws affecting the minors at issue." Dkt. 250 at 13. Specifically, the Government points to the TVPRA and the OBBB as "obviat[ing] whatever need there was for the Court's 1985 order while creating a dramatically different legal landscape" for the rights of unaccompanied children. *Id.* at 13–14. But the Government must show that compliance with the injunction has become "impermissible." *Flores v. Lynch*, 828 F.3d 898, 909–10 (9th Cir. 2016); *see also California ex rel. Becerra v. U.S. Env't Prot. Agency*, 978 F.3d 708, 719 (9th Cir. 2020) (change in law must "permit what was previously forbidden"). The TVPRA does not validate conduct that the injunction prohibits. But instead, the TVPRA codifies the requirements for determining whether certain unaccompanied children are eligible for return to Mexico or Canada outside of removal proceedings. *See supra* Section II.A; 8 U.S.C. § 1232(a)(2). All other unaccompanied children must be afforded the opportunity to pursue relief from removal in Immigration Court and provided with access to counsel "to the greatest extent practicable." 8 U.S.C. § 1232(a)(5)(D), (c)(5). As a result, the TVPRA is not an intervening legal authority that requires termination. *See Flores v. Rosen*, 984 F.3d 720, 741 (9th Cir. 2020) ("As the government does not otherwise argue that the statutes 'make legal what the decree was designed to prevent,' it has not demonstrated that the Homeland Security Act and the TVPRA effected legal changes warranting termination of the Agreement." (citation omitted)). The Constitution continues to require properly advising unaccompanied children of their rights and prohibits undue influence when eligible unaccompanied children are subject to modern return procedures under the TVPRA.

23

There also is no support for the Government's bald contention that the "OBBB expands DHS's authority to permit [unaccompanied children] from any country, not just contiguous countries, to withdraw their application for admission pursuant to 8 U.S.C. § 1225(a)(4) and provides funds to DHS for such withdrawals." Dkt. 250 at 9. Section 100051(8), the relevant provision of the OBBB is merely an appropriation, *not* authorizing legislation. *See L.G.M.L.*, 2025 WL 2671690, at *15 n.9 (rejecting argument that OBBB overcomes the "very strong presumption" that "appropriation acts" do not "substantively change existing laws") (internal citations omitted); *see* OBBB, Pub. L. No. 119-21, § 100051(8)(A), 139 Stat. 72 (2025). The Government's interpretation necessarily repeals the TVPRA's provision requiring that children from non-contiguous countries be provided an opportunity to pursue relief from removal before the Immigration Court. 8 U.S.C. § 1232(a)(5)(D). Such repeals by implication are strongly disfavored. *See Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 190 (1978) (explaining that the doctrine disfavoring repeals by implication applies with "even greater force" where claimed repeal is appropriations legislation); *see also Firebaugh Canal Co. v. United States*, 203 F.3d 568, 575 (9th Cir. 2000) (repeal by implication is only justified where "earlier and later statutes are irreconcilable"). The OBBB provides "funding [for] removal operations for specified unaccompanied . . . children." Pub. Law. 119-21, 139 Stat. 72, 386. It also limits the use of those funds to "permitting a specified unaccompanied . . . child to withdraw the application for admission of the child pursuant to section 235(a)(4) of the Immigration and Nationality Act (8 U.S.C. 1225(a)(4))." *Id.* Put simply, the OBBB funds activities already authorized by the TVPRA's return provisions for children from contiguous countries who meet the criteria outlined above. 8 U.S.C. § 1232(a)(2).[10]

---

[10] Assuming, *arguendo*, that OBBB permits the expedited return of unaccompanied children from non-contiguous countries as the Government claims, Dkt. 250 at 16, the appropriations bill says nothing about the notice or other procedural safeguards

Neither do intervening regulations highlighted by the Government require termination of the injunction. These regulations apply only to unaccompanied children who have been transferred to the custody of ORR, not to children who would be subject to the TVPRA's expedited return provision. *See, e.g.*, 45 C.F.R. § 410.1309(a)(1) (describing "ORR's responsibilities in relation to legal services for unaccompanied children"), 410.1309(a)(2) ("An unaccompanied child *in ORR's legal custody* shall receive . . . ." (emphasis added)). They do not permit what the injunction forbids and, in any event, the Government's unilateral creation of law through rulemaking does not excuse it from compliance with the injunction or warrant termination. *See Flores v. Rosen*, 984 F.3d at 741 (citing *Nehmer v. U.S. Dep't of Veterans Affs.*, 494 F.3d 846, 860 (9th Cir. 2007)). Moreover, the Government clearly intends to discontinue use of Form I-770, despite valid regulations requiring its use. Dkt. 250 at 13, 17–18 (describing purported flaws of Form I-770); 8 C.F.R. § 1236.3(h). The Government continues to seek termination of the *Flores* Settlement Agreement ("FSA"), which also requires the use of Form I-770. *Flores v. Bondi*, 2025 WL 2633183 (C.D. Cal. Aug. 15, 2025); Exh. 6 at ¶¶12A, 24.D (*Flores* Settlement Agreement). The Government has not implemented a "durable remedy" that would justify termination of the injunction. *Horne*, 557 U.S. at 450.

In short, no changes in law have altered the undisputed "equitable purpose" of the injunction, which is "to ensure accurate and comprehensible notice" to vulnerable unaccompanied children facing voluntary departure. Dkt. 250 at 17.

---

due to children before their return. Therefore, the OBBB does not make compliance with the Court's permanent injunction impermissible and warrant termination.

**C. The Government's Termination Request Is Untimely.**

Motions under Rule 60(b)(5)[11] must be brought "within a reasonable time." *United States v. Holtzman*, 762 F.2d 720, 725 (9th Cir. 1985); *see also* Fed. R. Civ. P. 60(c)(1). In evaluating what constitutes a reasonable time, "[c]ourts take into consideration 'the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties.'" *Freedom From Religion Found., Inc. v. Chino Valley Unified Sch. Dist. Bd. of Educ.*, 2025 WL 3282571, at *2 (C.D. Cal. Oct. 10, 2025) (quoting *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981)).

The Government primarily relies upon the TVPRA as the change in law warranting relief under Rule 60(b)(5). Dkt. 250 at 14–17. But Congress passed the TVPRA nearly two decades ago. The Government was undoubtedly able to learn of the TVPRA's passage and assess any effect on this Court's injunction, yet it offers no justification for delaying its motion for 17 years. The Government did not request relief on this basis within a reasonable time. *See Jeff D. v. Little*, 2023 WL 7220754, at *3 (D. Idaho Nov. 1, 2023) ("Courts have found unexcused delays of much shorter than 12 years unreasonable." (collecting cases)).

Meanwhile, Plaintiffs have a significant interest in the finality of an injunction that has critically protected unaccompanied children's Due Process rights for forty years. The Government's inexcusable delay prejudices Plaintiffs' strong reliance interests. The Court should not entertain this untimely request for relief.

---

[11] Motions under Rule 60(b)(4) and (b)(6) must also be made within a reasonable time. Fed. R. Civ. P. 60(c)(1). Even assuming *arguendo* that the Government raised viable grounds for relief under these subsections (it has not), any request for relief under Rule 60(b)(4) and (b)(6) should also be considered untimely for largely the same reasons articulated with respect to Rule 60(b)(5).

### D. Relevant Factual Changes Do Not Justify the Permanent Injunction's Termination.

Factual changes and legal developments that fall short of permitting previously forbidden conduct remain relevant to the Court's consideration of whether to modify an injunction. *See, e.g.*, *Flores v. Lynch*, 828 F.3d at 910 ("At most" the TVPRA "might support modification" of conflicting provisions of consent decree.). Although courts adopt a "flexible approach" when considering Rule 60(b)(5) requests, "it does not follow" that termination of an injunction "will be warranted in all circumstances." *Rufo*, 502 U.S. at 381, 383; *see also Frew v. Hawkins*, 401 F. Supp. 2d 619, 683 (E.D. Tex. 2005) (noting the "radical nature" of dissolving an injunction in its entirety). Assertions that "it is no longer convenient to live with the terms" of an injunction do not entitle a party to relief. *Rufo*, 502 U.S. at 383.

The Government bears the burden of establishing "a significant and unanticipated change in factual conditions warranting modification." *United States v. Asarco, Inc.*, 430 F.3d 972, 979 (9th Cir. 2005) (movant citing "changed factual conditions" must show that changes make compliance more onerous, unworkable, or detrimental to the public interest). Typically, this requires the submission of evidence to support factual findings by the court. *Horne*, 557 U.S. at 461 (proper Rule 60(b)(5) analysis requires "further factual findings" about whether significantly changed circumstance warrants relief); *see also Coleman v. Brown*, 922 F. Supp. 2d 1004, 1035 (N.D. Cal. 2013) (requiring "compelling evidence" for relief under Rule 60(b)(5)).

The Government submits conclusory descriptions of the increased "technological capacity" of federal agencies, the number of unaccompanied children arriving in the United States, and the "complexities of modern intake operations." Dkt. 250 at 17–19. The Government also maintains that various legislative developments and agency restructuring have introduced different "naming

27

conventions" and "new procedural mechanisms—centralized recordkeeping, interagency information sharing, and updated adjudication protocols—that are entirely absent from [Form I-770]." *Id.* at 18. But it is unclear why Form I-770, or any advisal, would need to include this information. Nor does the Government explain how these vague and seemingly irrelevant "procedural mechanisms" require termination, and—despite its criticisms of Form I-770—has not provided evidence of an alternative mechanism that would better effectuate unaccompanied minors' rights. *See Orantes-Hernandez v. Gonzales*, 504 F. Supp. 2d 825, 853 (C.D. Cal. 2007), *aff'd sub nom. Orantes-Hernandez v. Holder*, 321 F. App'x 625 (9th Cir. 2009) ("Without proof that the form [advising non-citizens of their right to apply for asylum] is effective *in practice*, the court cannot conclude that 'on-the-ground' practices have changed so much that the *Orantes* advisal [imposed by a prior injunction] is no longer necessary to ensure that aliens in § 240 proceedings understand they have the right to apply for asylum."). Regardless, any pertinent differences in "naming conventions" could be remedied by modestly altering the injunction or the form of the advisal. *See* Dkt. 269 at 18-20. In sum, the Government does not present any valid factual bases for ending the injunction.

Additionally, Form I-770 is required by the FSA, Exh. 6 at ¶ 24.D, and the Government's own regulations. 8 C.F.R. § 1236.3(h). Terminating the injunction would not relieve the Government of its obligation to use Form I-770, at least not immediately. Instead, it may further the Government's efforts to expeditiously remove unaccompanied children by allowing it to "advise, encourage, or persuade" class members to waive their Due Process rights. *Perez-Funez I*, 611 F. Supp. at 1005.

Substantial evidence from recent months demonstrates the Government's pursuit of expeditious removals under circumstances that would violate the injunction. As noted *supra*, CBP has created an overtly coercive and misleading document titled "UAC Processing Pathway Advisal" that threatens unaccompanied

children with "prolonged" detention if the child elects a removal hearing, despite the TVPRA's requirement that children be placed in the "least restrictive setting" that is in their best interest. Exh. 4 at 6; Exh. 5 at ¶ 10; 8 U.S.C. § 1232(c)(2)(A). CBP's advisal informs unaccompanied children that they can return to their home country in the short 72-hour timespan before transfer to ORR custody where children can access other procedural protections under the TVPRA. Exh. 4 at 6. This is the brief period that the Government seeks to exploit with its novel legal interpretation of the OBBB and its import for expedited returns of class members. Exh. 2 at ¶ 5; Dkt. 250 at 9; Exh. 3 at 2–3 (stating that unaccompanied children "may be transferred" to ORR "[d]epending on the timing of the next available flight"). In this context, several children describe being pressured into accepting return or circumstances that otherwise fall short of a knowing and voluntary waiver of rights. Exh. 2 at ¶¶ 6–15. This evidence suggests that the Government has not "acted fairly and without fraud or deceit as to the controversy in issue," as is required of parties seeking relief in equity. *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814–15 (1945).

Finally, even if the Government could meet its burden to demonstrate that changed factual circumstances require the injunction's reevaluation, the Court would then need to consider whether termination is "suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 383. A suitably tailored modification is one that "return[s] both parties as nearly as possible to where they would have been absent the changed circumstances." *Kelly v. Wengler*, 822 F.3d 1085, 1098 (9th Cir. 2016) (quoting *Pigford v. Veneman*, 292 F.3d 918, 927 (D.C. Cir. 2002)). Termination of the injunction is not suitably tailored to any of the changed circumstances cited by the Government. The TVPRA does not address the notice due to class members and still permits the return of a limited subset of class members to Mexico or Canada outside of the protections of removal proceedings. 8 U.S.C. § 1232(a)(2). Termination would deprive class members of basic statutory and Constitutional

29

safeguards while relieving the Government of prohibitions designed to prevent undue influence of law enforcement officials on vulnerable children. *J.D.B. v. North Carolina*, 564 U.S. 261, 272 (2011) (recognizing the "commonsense conclusion[]" that children "lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them").

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Government's motion to terminate the permanent injunction.

DATED: January 6, 2026

*/s/ Mark Rosenbaum*
Mark Rosenbaum (CA SBN # 59940)
Amanda Mangaser Savage (CA SBN # 325996)
Rebecca Brown (CA SBN # 345805)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
mrosenbaum@publiccounsel.org
asavage@publiccounsel.org
rbrown@publiccounsel.org

Gilbert Paul Carrasco (CA SBN # 90838)
900 Pacific Coast Highway, Suite # 305
Huntington Beach, CA 92648-4863
Telephone: (503) 990-4879
carrasco@willamette.edu

Adam B. Wolfson (CA SBN # 262125)
Quinn Emanuel Urquhart & Sullivan LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
adamwolfson@quinnemanuel.com

Peter McGraw*
Kevin Siegel*
NATIONAL IMMIGRATION LAW CENTER
1121 14th Street, Suite 200
Washington, D.C. 20005
Telephone: (213) 639-3900
Fax: (213) 639-3911
mcgraw@nilc.org
siegel@nilc.org

Richard A. Koffman**
Alex Bodaken**
Nina L. Haug**
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave., NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 408-4600
rkoffman@cohenmilstein.com
abodaken@cohenmilstein.com
nhaug@cohenmilstein.com

Diane Kee***
COHEN MILSTEIN SELLERS & TOLL PLLC
100 N. 18th St., Suite 1820
Philadelphia, PA 19103
Telephone: (267) 479-5700
dkee@cohenmilstein.com

*Counsel for Plaintiffs*

*Admitted *pro hac vice*

** Application for *pro hac vice*

*** Application for *pro hac vice* admission forthcoming

31

**CERTIFICATE OF COMPLIANCE**

I, Peter McGraw, certify that the Memorandum of Points and Authorities contains 6,943 words and complies with the word limit of Local Rule 11-6.1.

DATED: January 6, 2026.

*/s/ Peter McGraw*
Peter McGraw
NATIONAL IMMIGRATION LAW CENTER
1121 14th Street, Suite 200
Washington, D.C. 20005
Telephone: (213) 639-3900
Fax: (213) 639-3911
mcgraw@nilc.org

**CERTIFICATE OF SERVICE**

I hereby certify that on January 6, 2026, I caused a copy of Plaintiffs' Opposition to Defendants' Motion to Terminate Permanent Injunction and Rights Advisal to be served by email to the following counsel by filing the same with the Court's electronic filing system:

ZACHARY CARDIN
Trial Attorney
United States Department of Justice
Office of Immigration Litigation
Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington DC 20044
(202) 802-3410
zachary.a.cardin@usdoj.gov

Dated: January 6, 2026                    *Peter McGraw*
                                          Peter McGraw