# EXHIBIT 6

*Flores* Settlement Agreement

8/12/96

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos Holguín
Peter A. Schey
256 South Occidental Boulevard
Los Angeles, CA  90057
(213) 388-8693

NATIONAL CENTER FOR YOUTH LAW
Alice Bussiere
James Morales
114 Sansome Street, Suite 905
San Francisco, CA  94104
(415) 453-3307

Attorneys for Plaintiffs

Michael Johnson
Assistant United States Attorney
300 N. Los Angeles St., Rm. 7516
Los Angeles, CA  90012

Allen Hausman
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC  20044

Attorneys for Defendants

Additional counsel listed next page



FILED
CLERK, U.S. DISTRICT COURT

JAN 1 7 1997

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JENNY LISETTE FLORES, et al., | ) | Case No. CV 85-4544-RJK(Px) |
| | ) | |
| Plaintiffs, | ) | Stipulated Settlement |
| | ) | Agreement |
| -vs- | ) | |
| | ) | |
| JANET RENO, Attorney General | ) | |
| of the United States, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiffs' Additional Counsel

ACLU FOUNDATION OF SOUTHERN CALIFORNIA
Mark Rosenbaum
Sylvia Argueta
1616 Beverly Boulevard
Los Angeles, CA  90026
Telephone: (213) 977-9500

STREICH LANG
Susan G. Boswell
Jeffrey Willis
1500 Bank of America Plaza
33 North Stone Avenue
Tucson, AZ  85701
Telephone: (602) 770-8700

Defendants' Additional Counsel:

Arthur Strathern
Mary Jane Candaux
Office of the General Counsel
U.S. Immigration & Naturalization Service
425 I St. N.W.
Washington, DC  20536
/ / /

STIPULATED SETTLEMENT AGREEMENT

WHEREAS, Plaintiffs have filed this action against Defendants, challenging, *inter alia*, the constitutionality of Defendants' policies, practices and regulations regarding the detention and release of unaccompanied minors taken into the custody of the Immigration and Naturalization Service (INS) in the Western Region; and

WHEREAS, the district court has certified this case as a class action on behalf of all minors apprehended by the INS in the Western Region of the United States; and

WHEREAS, this litigation has been pending for nine (9) years, all parties have conducted extensive discovery, and the United States Supreme Court has upheld the constitutionality of the challenged INS regulations on their face and has remanded for further proceedings consistent with its opinion; and

WHEREAS, on November 30, 1987, the parties reached a settlement agreement requiring that minors in INS custody in the Western Region be housed in facilities meeting certain standards, including state standards for the housing and care of dependent children, and Plaintiffs' motion to enforce compliance with that settlement is currently pending before the court; and

WHEREAS, a trial in this case would be complex, lengthy and costly to all parties concerned, and the decision of the district court would be subject to appeal by the losing parties with the final outcome uncertain; and

WHEREAS, the parties believe that settlement of this action is in their best interests and best serves the interests of justice by avoiding a complex, lengthy and costly trial, and subsequent appeals which could last several more years;

NOW, THEREFORE, Plaintiffs and Defendants enter into this Stipulated Settlement Agreement

3

(the Agreement), stipulate that it constitutes a full and complete resolution of the issues raised in this action, and agree to the following:

I       DEFINITIONS

As used throughout this Agreement the following definitions shall apply:

1. The term "party" or "parties" shall apply to Defendants and Plaintiffs.  As the term applies to Defendants, it shall include their agents, employees, contractors and/or successors in office.  As the term applies to Plaintiffs, it shall include all class members.

2. The term "Plaintiff" or "Plaintiffs" shall apply to the named plaintiffs and all class members.

3. The term "class member" or "class members" shall apply to the persons defined in Paragraph 10 below.

4. The term "minor" shall apply to any person under the age of eighteen (18) years who is detained in the legal custody of the INS.  This Agreement shall cease to apply to any person who has reached the age of eighteen years.  The term "minor" shall not include an emancipated minor or an individual who has been incarcerated due to a conviction for a criminal offense as an adult.  The INS shall treat all persons who are under the age of eighteen but not included within the definition of "minor" as adults for all purposes, including release on bond or recognizance.

5. The term "emancipated minor" shall refer to any minor who has been determined to be emancipated in an appropriate state judicial proceeding.

6. The term "licensed program" shall refer to any program, agency or organization that is licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children, including a program operating group homes, foster homes, or facilities for special needs minors.  A licensed program must also meet those standards for licensed programs set forth in

4

Exhibit 1 attached hereto. All homes and facilities operated by licensed programs, including facilities for special needs minors, shall be non-secure as required under state law; provided, however, that a facility for special needs minors may maintain that level of security permitted under state law which is necessary for the protection of a minor or others in appropriate circumstances, *e.g.*, cases in which a minor has drug or alcohol problems or is mentally ill. The INS shall make reasonable efforts to provide licensed placements in those geographical areas where the majority of minors are apprehended, such as southern California, southeast Texas, southern Florida and the northeast corridor.

7. The term "special needs minor" shall refer to a minor whose mental and/or physical condition requires special services and treatment by staff. A minor may have special needs due to drug or alcohol abuse, serious emotional disturbance, mental illness or retardation, or a physical condition or chronic illness that requires special services or treatment. A minor who has suffered serious neglect or abuse may be considered a minor with special needs if the minor requires special services or treatment as a result of the neglect or abuse. The INS shall assess minors to determine if they have special needs and, if so, shall place such minors, whenever possible, in licensed programs in which the INS places children without special needs, but which provide services and treatment for such special needs.

8. The term "medium security facility" shall refer to a facility that is operated by a program, agency or organization licensed by an appropriate State agency and that meets those standards set forth in Exhibit 1 attached hereto. A medium security facility is designed for minors who require close supervision but do not need placement in juvenile correctional facilities. It provides 24-hour awake supervision, custody, care, and treatment. It maintains stricter security measures, such as intensive staff supervision, than a facility operated by a licensed program in order to control problem behavior and to prevent escape. Such a facility may have a secure perimeter but shall not be equipped internally with

5

major restraining construction or procedures typically associated with correctional facilities.

II    SCOPE OF SETTLEMENT, EFFECTIVE DATE, AND PUBLICATION

9. This Agreement sets out nationwide policy for the detention, release, and treatment of minors in the custody of the INS and shall supersede all previous INS policies that are inconsistent with the terms of this Agreement. This Agreement shall become effective upon final court approval, except that those terms of this Agreement regarding placement pursuant to Paragraph 19 shall not become effective until all contracts under the Program Announcement referenced in Paragraph 20 below are negotiated and implemented. The INS shall make its best efforts to execute these contracts within 120 days after the court's final approval of this Agreement. However, the INS will make reasonable efforts to comply with Paragraph 19 prior to full implementation of all such contracts. Once all contracts under the Program Announcement referenced in Paragraph 20 have been implemented, this Agreement shall supersede the agreement entitled Memorandum of Understanding Re Compromise of Class Action: Conditions of Detention (hereinafter "MOU"), entered into by and between the Plaintiffs and Defendants and filed with the United States District Court for the Central District of California on November 30, 1987, and the MOU shall thereafter be null and void. However, Plaintiffs shall not institute any legal action for enforcement of the MOU for a six (6) month period commencing with the final district court approval of this Agreement, except that Plaintiffs may institute enforcement proceedings if the Defendants have engaged in serious violations of the MOU that have caused irreparable harm to a class member for which injunctive relief would be appropriate. Within 120 days of the final district court approval of this Agreement, the INS shall initiate action to publish the relevant and substantive terms of this Agreement as a Service regulation. The final regulations shall not be inconsistent with the terms of this Agreement. Within 30 days of final court approval of this

6

Agreement, the INS shall distribute to all INS field offices and sub-offices instructions regarding the processing, treatment, and placement of juveniles. Those instructions shall include, but may not be limited to, the provisions summarizing the terms of this Agreement, attached hereto as Exhibit 2.

III     CLASS DEFINITION

10. The certified class in this action shall be defined as follows: "All minors who are detained in the legal custody of the INS."

IV      STATEMENTS OF GENERAL APPLICABILITY

11. The INS treats, and shall continue to treat, all minors in its custody with dignity, respect and special concern for their particular vulnerability as minors. The INS shall place each detained minor in the least restrictive setting appropriate to the minor's age and special needs, provided that such setting is consistent with its interests to ensure the minor's timely appearance before the INS and the immigration courts and to protect the minor's well-being and that of others. Nothing herein shall require the INS to release a minor to any person or agency whom the INS has reason to believe may harm or neglect the minor or fail to present him or her before the INS or the immigration courts when requested to do so.

V       PROCEDURES AND TEMPORARY PLACEMENT FOLLOWING ARREST

12.A. Whenever the INS takes a minor into custody, it shall expeditiously process the minor and shall provide the minor with a notice of rights, including the right to a bond redetermination hearing if applicable. Following arrest, the INS shall hold minors in facilities that are safe and sanitary and that are consistent with the INS's concern for the  particular vulnerability of minors. Facilities will provide access  to toilets and sinks, drinking water and food as appropriate, medical assistance if the minor is in need of emergency services, adequate temperature control and ventilation, adequate supervision to

7

protect minors from others, and contact with family members who were arrested with the minor. The INS will segregate unaccompanied minors from unrelated adults. Where such segregation is not immediately possible, an unaccompanied minor will not be detained with an unrelated adult for more than 24 hours. If there is no one to whom the INS may release the minor pursuant to Paragraph 14, and no appropriate licensed program is immediately available for placement pursuant to Paragraph 19, the minor may be placed in an INS detention facility, or other INS-contracted facility, having separate accommodations for minors, or a State or county juvenile detention facility. However, minors shall be separated from delinquent offenders. Every effort must be taken to ensure that the safety and well-being of the minors detained in these facilities are satisfactorily provided for by the staff. The INS will transfer a minor from a placement under this paragraph to a placement under Paragraph 19, (i) within three (3) days, if the minor was apprehended in an INS district in which a licensed program is located and has space available; or (ii) within five (5) days in all other cases; except:

1.     as otherwise provided under Paragraph 13 or Paragraph 21;

2.     as otherwise required by any court decree or court-approved settlement;

3.     in the event of an emergency or influx of minors into the United States, in which case the INS shall place all minors pursuant to Paragraph 19 as expeditiously as possible; or

4.     where individuals must be transported from remote areas for processing or speak unusual languages such that the INS must locate interpreters in order to complete processing, in which case the INS shall place all such minors pursuant to Paragraph 19 within five (5) business days.

B. For purposes of this paragraph, the term "emergency" shall be defined as any act or event that prevents the placement of minors pursuant to Paragraph 19 within the time frame provided. Such

8

emergencies include natural disasters (e.g., earthquakes, hurricanes, etc.), facility fires, civil disturbances, and medical emergencies (e.g., a chicken pox epidemic among a group of minors). The term "influx of minors into the United States" shall be defined as those circumstances where the INS has, at any given time, more than 130 minors eligible for placement in a licensed program under Paragraph 19, including those who have been so placed or are awaiting such placement.

C. In preparation for an "emergency" or "influx," as described in Subparagraph B, the INS shall have a written plan that describes the reasonable efforts that it will take to place all minors as expeditiously as possible. This plan shall include the identification of 80 beds that are potentially available for INS placements and that are licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children. The plan, without identification of the additional beds available, is attached as Exhibit 3. The INS shall not be obligated to fund these additional beds on an ongoing basis. The INS shall update this listing of additional beds on a quarterly basis and provide Plaintiffs' counsel with a copy of this listing.

13. If a reasonable person would conclude that an alien detained by the INS is an adult despite his claims to be a minor, the INS shall treat the person as an adult for all purposes, including confinement and release on bond or recognizance. The INS may require the alien to submit to a medical or dental examination conducted by a medical professional or to submit to other appropriate procedures to verify his or her age. If the INS subsequently determines that such an individual is a minor, he or she will be treated as a minor in accordance with this Agreement for all purposes.

VI    GENERAL POLICY FAVORING RELEASE

14. Where the INS determines that the detention of the minor is not required either to secure his or her timely appearance before the INS or the immigration court, or to ensure the minor's safety or that

of others, the INS shall release a minor from its custody without unnecessary delay, in the following order of preference, to:

    A.    a parent;

    B.    a legal guardian;

    C.    an adult relative (brother, sister, aunt, uncle, or grandparent);

    D.    an adult individual or entity designated by the parent or legal guardian as capable and willing to care for the minor's well-being in (i) a declaration signed under penalty of perjury before an immigration or consular officer or (ii) such other document(s) that establish(es) to the satisfaction of the INS, in its discretion, the affiant's paternity or guardianship;

    E.    a licensed program willing to accept legal custody; or

    F.    an adult individual or entity seeking custody, in the discretion of the INS, when it appears that there is no other likely alternative to long term detention and family reunification does not appear to be a reasonable possibility.

15. Before a minor is released from INS custody pursuant to Paragraph 14 above, the custodian must execute an Affidavit of Support (Form I-134) and an agreement to:

    A.    provide for the minor's physical, mental, and financial well-being;

    B.    ensure the minor's presence at all future proceedings before the INS and the immigration court;

    C.    notify the INS of any change of address within five (5) days following a move;

    D.    in the case of custodians other than parents or legal guardians, not transfer custody of the minor to another party without the prior written permission of the District Director;

10

E.  notify the INS at least five days prior to the custodian's departing the United States of such departure, whether the departure is voluntary or pursuant to a grant of voluntary departure or order of deportation; and

F.  if dependency proceedings involving the minor are initiated, notify the INS of the initiation of such proceedings and the dependency court of any immigration proceedings pending against the minor.

In the event of an emergency, a custodian may transfer temporary physical custody of a minor prior to securing permission from the INS but shall notify the INS of the transfer as soon as is practicable thereafter, but in all cases within 72 hours. For purposes of this paragraph, examples of an "emergency" shall include the serious illness of the custodian, destruction of the home, etc. In all cases where the custodian, in writing, seeks written permission for a transfer, the District Director shall promptly respond to the request.

16.  The INS may terminate the custody arrangements and assume legal custody of any minor whose custodian fails to comply with the agreement required under Paragraph 15. The INS, however, shall not terminate the custody arrangements for minor violations of that part of the custodial agreement outlined at Subparagraph 15.C above.

17.  A positive suitability assessment may be required prior to release to any individual or program pursuant to Paragraph 14. A suitability assessment may include such components as an investigation of the living conditions in which the minor would be placed and the standard of care he would receive, verification of identity and employment of the individuals offering support, interviews of members of the household, and a home visit. Any such assessment should also take into consideration the wishes and concerns of the minor.

18. Upon taking a minor into custody, the INS, or the licensed program in which the minor is placed, shall make and record the prompt and continuous efforts on its part toward family reunification and the release of the minor pursuant to Paragraph 14 above. Such efforts at family reunification shall continue so long as the minor is in INS custody.

VII    INS CUSTODY

19. In any case in which the INS does not release a minor pursuant to Paragraph 14, the minor shall remain in INS legal custody. Except as provided in Paragraphs 12 or 21, such minor shall be placed temporarily in a licensed program until such time as release can be effected in accordance with Paragraph 14 above or until the minor's immigration proceedings are concluded, whichever occurs earlier. All minors placed in such a licensed program remain in the legal custody of the INS and may only be transferred or released under the authority of the INS; provided, however, that in the event of an emergency a licensed program may transfer temporary physical custody of a minor prior to securing permission from the INS but shall notify the INS of the transfer as soon as is practicable thereafter, but in all cases within 8 hours.

20. Within 60 days of final court approval of this Agreement, the INS shall authorize the United States Department of Justice Community Relations Service to publish in the Commerce Business Daily and/or the Federal Register a Program Announcement to solicit proposals for the care of 100 minors in licensed programs.

21. A minor may be held in or transferred to a suitable State or county juvenile detention facility or a secure INS detention facility, or INS-contracted facility, having separate accommodations for minors whenever the District Director or Chief Patrol Agent determines that the minor:

A.    has been charged with, is chargeable, or has been convicted of a crime, or is the subject

12

of delinquency proceedings, has been adjudicated delinquent, or is chargeable with a delinquent act; provided, however, that this provision shall not apply to any minor whose offense(s) fall(s) within either of the following categories:

i.    Isolated offenses that (1) were not within a pattern or practice of criminal activity and (2) did not involve violence against a person or the use or carrying of a weapon (Examples: breaking and entering, vandalism, DUI, etc. This list is not exhaustive.);

ii.    Petty offenses, which are not considered grounds for stricter means of detention in any case (Examples: shoplifting, joy riding, disturbing the peace, etc. This list is not exhaustive.);

As used in this paragraph, "chargeable" means that the INS has probable cause to believe that the individual has committed a specified offense;

B.    has committed, or has made credible threats to commit, a violent or malicious act (whether directed at himself or others) while in INS legal custody or while in the presence of an INS officer;

C.    has engaged, while in a licensed program, in conduct that has proven to be unacceptably disruptive of the normal functioning of the licensed program in which he or she has been placed and removal is necessary to ensure the welfare of the minor or others, as determined by the staff of the licensed program (Examples: drug or alcohol abuse, stealing, fighting, intimidation of others, etc. This list is not exhaustive.);

D.    is an escape-risk; or

E.    must be held in a secure facility for his or her own safety, such as when the INS has

13

reason to believe that a smuggler would abduct or coerce a particular minor to secure payment of smuggling fees.

22. The term "escape-risk" means that there is a serious risk that the minor will attempt to escape from custody. Factors to consider when determining whether a minor is an escape-risk or not include, but are not limited to, whether:

A. the minor is currently under a final order of deportation or exclusion;

B. the minor's immigration history includes: a prior breach of a bond; a failure to appear before the INS or the immigration court; evidence that the minor is indebted to organized smugglers for his transport; or a voluntary departure or a previous removal from the United States pursuant to a final order of deportation or exclusion;

C. the minor has previously absconded or attempted to abscond from INS custody.

23. The INS will not place a minor in a secure facility pursuant to Paragraph 21 if there are less restrictive alternatives that are available and appropriate in the circumstances, such as transfer to (a) a medium security facility which would provide intensive staff supervision and counseling services or (b) another licensed program. All determinations to place a minor in a secure facility will be reviewed and approved by the regional juvenile coordinator.

24.A. A minor in deportation proceedings shall be afforded a bond redetermination hearing before an immigration judge in every case, unless the minor indicates on the Notice of Custody Determination form that he or she refuses such a hearing.

B. Any minor who disagrees with the INS's determination to place that minor in a particular type of facility, or who asserts that the licensed program in which he or she has been placed does not comply with the standards set forth in Exhibit 1 attached hereto, may seek judicial review in any

14

United States District Court with jurisdiction and venue over the matter to challenge that placement determination or to allege noncompliance with the standards set forth in Exhibit 1. In such an action, the United States District Court shall be limited to entering an order solely affecting the individual claims of the minor bringing the action.

C. In order to permit judicial review of Defendants' placement decisions as provided in this Agreement, Defendants shall provide minors not placed in licensed programs with a notice of the reasons for housing the minor in a detention or medium security facility. With respect to placement decisions reviewed under this paragraph, the standard of review for the INS's exercise of its discretion shall be the abuse of discretion standard of review. With respect to all other matters for which this paragraph provides judicial review, the standard of review shall be *de novo* review.

D. The INS shall promptly provide each minor not released with (a) INS Form I-770, (b) an explanation of the right of judicial review as set out in Exhibit 6, and (c) the list of free legal services available in the district pursuant to INS regulations (unless previously given to the minor).

E. Exhausting the procedures established in Paragraph 37 of this Agreement shall not be a precondition to the bringing of an action under this paragraph in any United District Court. Prior to initiating any such action, however, the minor and/or the minors' attorney shall confer telephonically or in person with the United States Attorney's office in the judicial district where the action is to be filed, in an effort to informally resolve the minor's complaints without the need of federal court intervention.

VIII    TRANSPORTATION OF MINORS

25. Unaccompanied minors arrested or taken into custody by the INS should not be transported by the INS in vehicles with detained adults except:

A. when being transported from the place of arrest or apprehension to an INS office, or

B. where separate transportation would be otherwise impractical.

When transported together pursuant to Clause B, minors shall be separated from adults. The INS shall take necessary precautions for the protection of the well-being of such minors when transported with adults.

26. The INS shall assist without undue delay in making transportation arrangements to the INS office nearest the location of the person or facility to whom a minor is to be released pursuant to Paragraph 14. The INS may, in its discretion, provide transportation to minors.

IX   TRANSFER OF MINORS

27. Whenever a minor is transferred from one placement to another, the minor shall be transferred with all of his or her possessions and legal papers; provided, however, that if the minor's possessions exceed the amount permitted normally by the carrier in use, the possessions will be shipped to the minor in a timely manner. No minor who is represented by counsel shall be transferred without advance notice to such counsel, except in unusual and compelling circumstances such as where the safety of the minor or others is threatened or the minor has been determined to be an escape-risk, or where counsel has waived such notice, in which cases notice shall be provided to counsel within 24 hours following transfer.

X  MONITORING AND REPORTS

28A. An INS Juvenile Coordinator in the Office of the Assistant Commissioner for Detention and Deportation shall monitor compliance with the terms of this Agreement and shall maintain an up-to-date record of all minors who are placed in proceedings and remain in INS custody for longer than 72 hours. Statistical information on such minors shall be collected weekly from all INS district offices and Border Patrol stations. Statistical information will include at least the following: (1)

16

biographical information such as each minor's name, date of birth, and country of birth, (2) date placed in INS custody, (3) each date placed, removed or released, (4) to whom and where placed, transferred, removed or released, (5) immigration status, and (6) hearing dates. The INS, through the Juvenile Coordinator, shall also collect information regarding the reasons for every placement of a minor in a detention facility or medium security facility.

B. Should Plaintiffs' counsel have reasonable cause to believe that a minor in INS legal custody should have been released pursuant to Paragraph 14, Plaintiffs' counsel may contact the Juvenile Coordinator to request that the Coordinator investigate the case and inform Plaintiffs' counsel of the reasons why the minor has not been released.

29. On a semi-annual basis, until two years after the court determines, pursuant to Paragraph 31, that the INS has achieved substantial compliance with the terms of this Agreement, the INS shall provide to Plaintiffs' counsel the information collected pursuant to Paragraph 28, as permitted by law, and each INS policy or instruction issued to INS employees regarding the implementation of this Agreement. In addition, Plaintiffs' counsel shall have the opportunity to submit questions, on a semi-annual basis, to the Juvenile Coordinator in the Office of the Assistant Commissioner for Detention and Deportation with regard to the implementation of this Agreement and the information provided to Plaintiffs' counsel during the preceding six-month period pursuant to Paragraph 28. Plaintiffs' counsel shall present such questions either orally or in writing, at the option of the Juvenile Coordinator. The Juvenile Coordinator shall furnish responses, either orally or in writing at the option of Plaintiffs' counsel, within 30 days of receipt.

30. On an annual basis, commencing one year after final court approval of this Agreement, the INS Juvenile Coordinator shall review, assess, and report to the court regarding compliance with the

17

terms of this Agreement. The Coordinator shall file these reports with the court and provide copies to the parties, including the final report referenced in Paragraph 35, so that they can submit comments on the report to the court. In each report, the Coordinator shall state to the court whether or not the INS is in substantial compliance with the terms of this Agreement, and, if the INS is not in substantial compliance, explain the reasons for the lack of compliance. The Coordinator shall continue to report on an annual basis until three years after the court determines that the INS has achieved substantial compliance with the terms of this Agreement.

31. One year after the court's approval of this Agreement, the Defendants may ask the court to determine whether the INS has achieved substantial compliance with the terms of this Agreement.

XI    ATTORNEY-CLIENT VISITS

32.A. Plaintiffs' counsel are entitled to attorney-client visits with class members even though they may not have the names of class members who are housed at a particular location. All visits shall occur in accordance with generally applicable policies and procedures relating to attorney-client visits at the facility in question. Upon Plaintiffs' counsel's arrival at a facility for attorney-client visits, the facility staff shall provide Plaintiffs' counsel with a list of names and alien registration numbers for the minors housed at that facility. In all instances, in order to memorialize any visit to a minor by Plaintiffs' counsel, Plaintiffs' counsel must file a notice of appearance with the INS prior to any attorney-client meeting. Plaintiffs' counsel may limit any such notice of appearance to representation of the minor in connection with this Agreement. Plaintiffs' counsel must submit a copy of the notice of appearance by hand or by mail to the local INS juvenile coordinator and a copy by hand to the staff of the facility.

B. Every six months, Plaintiffs' counsel shall provide the INS with a list of those attorneys who

18

may make such attorney-client visits, as Plaintiffs' counsel, to minors during the following six month period. Attorney-client visits may also be conducted by any staff attorney employed by the Center for Human Rights & Constitutional Law in Los Angeles, California or the National Center for Youth Law in San Francisco, California, provided that such attorney presents credentials establishing his or her employment prior to any visit.

C. Agreements for the placement of minors in non-INS facilities shall permit attorney-client visits, including by class counsel in this case.

D. Nothing in Paragraph 32 shall affect a minor's right to refuse to meet with Plaintiffs' counsel. Further, the minor's parent or legal guardian may deny Plaintiffs' counsel permission to meet with the minor.

XII    FACILITY VISITS

33. In addition to the attorney-client visits permitted pursuant to Paragraph 32, Plaintiffs' counsel may request access to any licensed program's facility in which a minor has been placed pursuant to Paragraph 19 or to any medium security facility or detention facility in which a minor has been placed pursuant to Paragraphs 21 or 23. Plaintiffs' counsel shall submit a request to visit a facility under this paragraph to the INS district juvenile coordinator who will provide reasonable assistance to Plaintiffs' counsel by conveying the request to the facility's staff and coordinating the visit. The rules and procedures to be followed in connection with any visit approved by a facility under this paragraph are set forth in Exhibit 4 attached, except as may be otherwise agreed by Plaintiffs' counsel and the facility's staff. In all visits to any facility pursuant to this Agreement, Plaintiffs' counsel and their associated experts shall treat minors and staff with courtesy and dignity and shall not disrupt the normal functioning of the facility.

19

## XIII TRAINING

34. Within 120 days of final court approval of this Agreement, the INS shall provide appropriate guidance and training for designated INS employees regarding the terms of this Agreement. The INS shall develop written and/or audio or video materials for such training. Copies of such written and/or audio or video training materials shall be made available to Plaintiffs' counsel when such training materials are sent to the field, or to the extent practicable, prior to that time.

## XIV DISMISSAL

35. After the court has determined that the INS is in substantial compliance with this Agreement and the Coordinator has filed a final report, the court, without further notice, shall dismiss this action. Until such dismissal, the court shall retain jurisdiction over this action.

## XV RESERVATION OF RIGHTS

36. Nothing in this Agreement shall limit the rights, if any, of individual class members to preserve issues for judicial review in the appeal of an individual case or for class members to exercise any independent rights they may otherwise have.

## XVI NOTICE AND DISPUTE RESOLUTION

37. This paragraph provides for the enforcement, in this District Court, of the provisions of this Agreement except for claims brought under Paragraph 24. The parties shall meet telephonically or in person to discuss a complete or partial repudiation of this Agreement or any alleged non-compliance with the terms of the Agreement, prior to bringing any individual or class action to enforce this Agreement. Notice of a claim that a party has violated the terms of this Agreement shall be served on plaintiffs addressed to:

/ / /

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos Holguín
Peter A. Schey
256 South Occidental Boulevard
Los Angeles, CA  90057

NATIONAL CENTER FOR YOUTH LAW
Alice Bussiere
James Morales
114 Sansome Street, Suite 905
San Francisco, CA  94104

and on Defendants addressed to:

Michael Johnson
Assistant United States Attorney
300 N. Los Angeles St., Rm. 7516
Los Angeles, CA  90012

Allen Hausman
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC  20044

XVII   PUBLICITY

38.  Plaintiffs and Defendants shall hold a joint press conference to announce this Agreement.

The INS shall send copies of this Agreement to social service and voluntary agencies agreed upon by

the parties, as set forth in Exhibit 5 attached.  The parties shall pursue such other public dissemination

of information regarding this Agreement as the parties shall agree.

XVIII ATTORNEYS' FEES AND COSTS

39.  Within 60 days of final court approval of this Agreement, Defendants shall pay to Plaintiffs

the total sum of $374,110.09, in full settlement of all attorneys' fees and costs in this case.

/ / /

21

## XIX   TERMINATION

40. All terms of this Agreement shall terminate the earlier of five years after the date of final court approval of this Agreement or three years after the court determines that the INS is in substantial compliance with this Agreement, except that the INS shall continue to house the general population of minors in INS custody in facilities that are licensed for the care of dependent minors.

## XX   REPRESENTATIONS AND WARRANTY

41. Counsel for the respective parties, on behalf of themselves and their clients, represent that they know of nothing in this Agreement that exceeds the legal authority of the parties or is in violation of any law. Defendants' counsel represent and warrant that they are fully authorized and empowered to enter into this Agreement on behalf of the Attorney General, the United States Department of Justice, and the Immigration and Naturalization Service, and acknowledge that Plaintiffs enter into this Agreement in reliance on such representation. Plaintiffs' counsel represent and warrant that they are fully authorized and empowered to enter into this Agreement on behalf of the Plaintiffs, and acknowledge that Defendants enter into this Agreement in reliance on such representation. The undersigned, by their signatures on behalf of the Plaintiffs and Defendants, warrant that upon execution of this Agreement in their representative capacities, their principals, agents, and successors of such principals and agents shall be fully and unequivocally bound hereunder to the full extent authorized by law.

For Defendants:   Signed: _Louis Meissner_   Title: Commissioner, INS

Dated: _9/16/96_

For Plaintiffs:   Signed: per next page _____   Title: _____

Dated: _____

22

The foregoing stipulated settlement is approved as to form and content:

CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
Carlos Holguin
Peter Schey

NATIONAL CENTER FOR YOUTH LAW
Alice Bussiere
James Morales

ACLU FOUNDATION OF SOUTHERN CALIFORNIA
Mark Rosenbaum
Sylvia Argueta

STEICH LANG
Susan G. Boswell
Jeffery Willis

Date: 1/13/97                By

Date: 11/13/96               By

23

Exhibit 1

EXHIBIT 1

MINIMUM STANDARDS FOR LICENSED PROGRAMS

A. Licensed programs shall comply with all applicable state child welfare laws and regulations and all state and local building, fire, health and safety codes and shall provide or arrange for the following services for each minor in its care:

1.    Proper physical care and maintenance, including suitable living accommodations, food, appropriate clothing, and personal grooming items.

2.    Appropriate routine medical and dental care, family planning services, and emergency health care services, including a complete medical examination (including screening for infectious disease) within 48 hours of admission, excluding weekends and holidays, unless the minor was recently examined at another facility; appropriate immunizations in accordance with the U.S. Public Health Service (PHS), Center for Disease Control; administration of prescribed medication and special diets; appropriate mental health interventions when necessary.

3.    An individualized needs assessment which shall include: (a) various initial intake forms; (b) essential data relating to the identification and history of the minor and family; (c) identification of the minors' special needs including any specific problem(s) which appear to require immediate intervention; (d) an educational assessment and plan; (e) an assessment of family relationships and interaction with adults, peers and authority figures; (f) a statement of religious preference and practice; (g) an assessment of the minor's personal goals, strengths and weaknesses; and (h) identifying information regarding immediate family members, other relatives, godparents or friends who may be

1

residing in the United States and may be able to assist in family reunification.

4. Educational services appropriate to the minor's level of development, and communication skills in a structured classroom setting, Monday through Friday, which concentrates primarily on the development of basic academic competencies and secondarily on English Language Training (ELT). The educational program shall include instruction and educational and other reading materials in such languages as needed. Basic academic areas should include Science, Social Studies, Math, Reading, Writing and Physical Education. The program shall provide minors with appropriate reading materials in languages other than English for use during the minor's leisure time.

5. Activities according to a recreation and leisure time plan which shall include daily outdoor activity, weather permitting, at least one hour per day of large muscle activity and one hour per day of structured leisure time activities (this should not include time spent watching television). Activities should be increased to a total of three hours on days when school is not in session.

6. At least one (1) individual counseling session per week conducted by trained social work staff with the specific objectives of reviewing the minor's progress, establishing new short term objectives, and addressing both the developmental and crisis-related needs of each minor.

7. Group counseling sessions at least twice a week. This is usually an informal process and takes place with all the minors present. It is a time when new minors are given the opportunity to get acquainted with the staff, other children, and the rules of the program. It is an open forum where everyone gets a chance to speak. Daily program management

2

is discussed and decisions are made about recreational activities, etc. It is a time for staff and minors to discuss whatever is on their minds and to resolve problems.

8. Acculturation and adaptation services which include information regarding the development of social and inter-personal skills which contribute to those abilities necessary to live independently and responsibly.

9. Upon admission, a comprehensive orientation regarding program intent, services, rules (written and verbal), expectations and the availability of legal assistance.

10. Whenever possible, access to religious services of the minor's choice.

11. Visitation and contact with family members (regardless of their immigration status) which is structured to encourage such visitation. The staff shall respect the minor's privacy while reasonably preventing the unauthorized release of the minor.

12. A reasonable right to privacy, which shall include the right to: (a) wear his or her own clothes, when available; (b) retain a private space in the residential facility, group or foster home for the storage of personal belongings; (c) talk privately on the phone, as permitted by the house rules and regulations; (d) visit privately with guests, as permitted by the house rules and regulations; and (e) receive and send uncensored mail unless there is a reasonable belief that the mail contains contraband.

13. Family reunification services designed to identify relatives in the United States as well as in foreign countries and assistance in obtaining legal guardianship when necessary for the release of the minor.

14. Legal services information regarding the availability of free legal assistance, the right to be represented by counsel at no expense to the government, the right to a deportation or

3

exclusion hearing before an immigration judge, the right to apply for political asylum or to request voluntary departure in lieu of deportation.

B.  Service delivery is to be accomplished in a manner which is sensitive to the age, culture, native language and the complex needs of each minor.

C.  Program rules and discipline standards shall be formulated with consideration for the range of ages and maturity in the program and shall be culturally sensitive to the needs of alien minors. Minors shall not be subjected to corporal punishment, humiliation, mental abuse, or punitive interference with the daily functions of living, such as eating or sleeping.  Any sanctions employed shall not: (1) adversely affect either a minor's health, or physical or psychological well-being; or (2) deny minors regular meals, sufficient sleep, exercise, medical care, correspondence privileges, or legal assistance.

D.  A comprehensive and realistic individual plan for the care of each minor must be developed in accordance with the minor's needs as determined by the individualized need assessment.  Individual plans shall be implemented and closely coordinated through an operative case management system.

E.  Programs shall develop, maintain and safeguard individual client case records.  Agencies and organizations are required to develop a system of accountability which preserves the confidentiality of client information and protects the records from unauthorized use or disclosure.

F.  Programs shall maintain adequate records and make regular reports as required by the INS that permit the INS to monitor and enforce this order and other requirements and standards as the INS may determine are in the best interests of the minors.

4

**Exhibit 2**

EXHIBIT 2

INSTRUCTIONS TO SERVICE OFFICERS RE:
PROCESSING, TREATMENT, AND PLACEMENT OF MINORS

These instructions are to advise Service officers of INS policy regarding the way in which minors in INS custody are processed, housed and released. These instructions are applicable nationwide and supersede all prior inconsistent instructions regarding minors.

**(a) Minors.** A minor is a person under the age of eighteen years. However, individuals who have been "emancipated" by a state court or convicted and incarcerated for a criminal offense as an adult are not considered minors. Such individuals must be treated as adults for all purposes, including confinement and release on bond.

Similarly, if a reasonable person would conclude that an individual is an adult despite his claims to be a minor, the INS shall treat such person as an adult for all purposes, including confinement and release on bond or recognizance. The INS may require such an individual to submit to a medical or dental examination conducted by a medical professional or to submit to other appropriate procedures to verify his or her age. If the INS subsequently determines that such an individual is a minor, he or she will be treated as a minor for all purposes.

**(b) General policy.** The INS treats, and will continue to treat minors with dignity, respect and special concern for their particular vulnerability. INS policy is to place each detained minor in the least restrictive setting appropriate to the minor's age and special needs, provided that such setting is consistent with the need to ensure the minor's timely appearance and to protect the minor's well-being and that of others. INS officers are not required to release a minor to any person or agency whom they have reason to believe may harm or neglect the minor or fail to present him or her before the INS or the immigration courts when requested to do so.

**(c) Processing.** The INS will expeditiously process minors and will provide a Form I-770 notice of rights, including the right to a bond redetermination hearing, if applicable.

Following arrest, the INS will hold minors in a facility that is safe and sanitary and that is consistent with the INS's concern for the particular vulnerability of minors. Such facilities will have access to toilets and sinks, drinking water and food as appropriate, medical assistance if the minor is in need of emergency services, adequate temperature control and ventilation, adequate supervision to protect minors from others, and contact with family members who were arrested with the minor. The INS will separate unaccompanied minors from unrelated adults whenever possible. Where such segregation is not immediately possible, an unaccompanied minor will not be detained with an unrelated adult for more than 24 hours.

If the juvenile cannot be immediately released, and no licensed program (described below) is available to care for him, he should be placed in an INS or INS-contract facility that has separate accommodations for minors, or in a State or county juvenile detention facility that separates minors in

1

INS custody from delinquent offenders. The INS will make every effort to ensure the safety and well-being of juveniles placed in these facilities.

**(d) Release.** The INS will release minors from its custody without unnecessary delay, unless detention of a juvenile is required to secure her timely appearance or to ensure the minor's safety or that of others. Minors shall be released, in the following order of preference, to:

(i) a parent;

(ii) a legal guardian;

(iii) an adult relative (brother, sister, aunt, uncle, or grandparent);

(iv) an adult individual or entity designated by the parent or legal guardian as capable and willing to care for the minor's well-being in (i) a declaration signed under penalty of perjury before an immigration or consular officer, or (ii) such other documentation that establishes to the satisfaction of the INS, in its discretion, that the individual designating the individual or entity as the minor's custodian is in fact the minor's parent or guardian;

(v) a state-licensed juvenile shelter, group home, or foster home willing to accept legal custody; or

(vi) an adult individual or entity seeking custody, in the discretion of the INS, when it appears that there is no other likely alternative to long term detention and family reunification does not appear to be a reasonable possibility.

**(e) Certification of custodian.** Before a minor is released, the custodian must execute an Affidavit of Support (Form I-134) and an agreement to:

(i) provide for the minor's physical, mental, and financial well-being;

(ii) ensure the minor's presence at all future proceedings before the INS and the immigration court;

(iii) notify the INS of any change of address within five (5) days following a move;

(iv) if the custodian is not a parent or legal guardian, not transfer custody of the minor to another party without the prior written permission of the District Director, except in the event of an emergency;

(v) notify the INS at least five days prior to the custodian's departing the United States of such departure, whether the departure is voluntary or pursuant to a grant of voluntary departure or order of deportation; and

2

(vi) if dependency proceedings involving the minor are initiated, notify the INS of the initiation of a such proceedings and the dependency court of any deportation proceedings pending against the minor.

In an emergency, a custodian may transfer temporary physical custody of a minor prior to securing permission from the INS, but must notify the INS of the transfer as soon as is practicable, and in all cases within 72 hours. Examples of an "emergency" include the serious illness of the custodian, destruction of the home, etc. In all cases where the custodian seeks written permission for a transfer, the District Director shall promptly respond to the request.

The INS may terminate the custody arrangements and assume legal custody of any minor whose custodian fails to comply with the agreement. However, custody arrangements will not be terminated for minor violations of the custodian's obligation to notify the INS of any change of address within five days following a move.

**(f) Suitability assessment.** An INS officer may require a positive suitability assessment prior to releasing a minor to any individual or program. A suitability assessment may include an investigation of the living conditions in which the minor is to be placed and the standard of care he would receive, verification of identity and employment of the individuals offering support, interviews of members of the household, and a home visit. The assessment will also take into consideration the wishes and concerns of the minor.

**(g) Family reunification.** Upon taking a minor into custody, the INS, or the licensed program in which the minor is placed, will promptly attempt to reunite the minor with his or her family to permit the release of the minor under Paragraph (d) above. Such efforts at family reunification will continue as long as the minor is in INS or licensed program custody and will be recorded by the INS or the licensed program in which the minor is placed.

**(h) Placement in licensed programs.** A "licensed program" is any program, agency or organization licensed by an appropriate state agency to provide residential, group, or foster care services for dependent children, including a program operating group homes, foster homes, or facilities for special needs minors. Exhibit 1 of the *Flores v. Reno* Settlement Agreement describes the standards required of licensed programs. Juveniles who remain in INS custody must be placed in a licensed program within three days if the minor was apprehended in an INS district in which a licensed program is located and has space available, or within five days in all other cases, except when:

(i) the minor is an escape risk or delinquent, as defined in Paragraph (i) below;

(ii) a court decree or court-approved settlement requires otherwise;

(iii) an emergency or influx of minors into the United States prevents compliance, in which case all minors should be placed in licensed programs as expeditiously as possible; or

(iv) the minor must be transported from remote areas for processing or speaks an unusual

3

language such that a special interpreter is required to process the minor, in which case the minor must be placed in a licensed program within five business days.

**(i) Secure and supervised detention.** A minor may be held in or transferred to a State or county juvenile detention facility or in a secure INS facility or INS-contracted facility having separate accommodations for minors, whenever the District Director or Chief Patrol Agent determines that the minor —

(i) has been charged with, is chargeable, or has been convicted of a crime, or is the subject of delinquency proceedings, has been adjudicated delinquent, or is chargeable with a delinquent act, unless the minor's offense is

(a) an isolated offense not within a pattern of criminal activity which did not involve violence against a person or the use or carrying of a weapon (Examples: breaking and entering, vandalism, DUI, etc.); or

(b) a petty offense, which is not considered grounds for stricter means of detention in any case (Examples: shoplifting, joy riding, disturbing the peace, etc.);

(ii) has committed, or has made credible threats to commit, a violent or malicious act (whether directed at himself or others) while in INS legal custody or while in the presence of an INS officer;

(iii) has engaged, while in a licensed program, in conduct that has proven to be unacceptably disruptive of the normal functioning of the licensed program in which he or she has been placed and removal is necessary to ensure the welfare of the minor or others, as determined by the staff of the licensed program (Examples: drug or alcohol abuse, stealing, fighting, intimidation of others, etc.);

(iv) is an escape-risk; or

(v) must be held in a secure facility for his or her own safety, such as when the INS has reason to believe that a smuggler would abduct or coerce a particular minor to secure payment of smuggling fees.

"Chargeable" means that the INS has probable cause to believe that the individual has committed a specified offense.

The term "escape-risk" means that there is a serious risk that the minor will attempt to escape from custody. Factors to consider when determining whether a minor is an escape-risk or not include, but are not limited to, whether:

(a) the minor is currently under a final order of deportation or exclusion;

4

(b) the minor's immigration history includes: a prior breach of a bond; a failure to appear before the INS or the immigration court; evidence that the minor is indebted to organized smugglers for his transport; or a voluntary departure or a previous removal from the United States pursuant to a final order of deportation or exclusion;

(c) the minor has previously absconded or attempted to abscond from INS custody.

The INS will not place a minor in a State or county juvenile detention facility, secure INS detention facility, or secure INS-contracted facility if less restrictive alternatives are available and appropriate in the circumstances, such as transfer to a medium security facility that provides intensive staff supervision and counseling services or transfer to another licensed program. All determinations to place a minor in a secure facility will be reviewed and approved by the regional Juvenile Coordinator.

**(j) Notice of right to bond redetermination and judicial review of placement.** A minor in deportation proceedings shall be afforded a bond redetermination hearing before an immigration judge in every case, unless the minor indicates on the Notice of Custody Determination form that he or she refuses such a hearing. A juvenile who is not released or placed in a licensed placement shall be provided (1) a written explanation of the right of judicial review as set out in Exhibit 6 of the *Flores v. Reno* Settlement Agreement, and (2) the list of free legal services providers compiled pursuant to INS regulations (unless previously given to the minor.

**(k) Transportation and transfer.** Unaccompanied minors should not be transported in vehicles with detained adults except when being transported from the place of arrest or apprehension to an INS office or where separate transportation would be otherwise impractical, in which case minors shall be separated from adults. INS officers shall take all necessary precautions for the protection of minors during transportation with adults.

When a minor is to be released, the INS will assist him or her in making transportation arrangements to the INS office nearest the location of the person or facility to whom a minor is to be released. The INS may, in its discretion, provide transportation to such minors.

Whenever a minor is transferred from one placement to another, she shall be transferred with all of her possessions and legal papers; provided, however, that if the minor's possessions exceed the amount permitted normally by the carrier in use, the possessions must be shipped to the minor in a timely manner. No minor who is represented by counsel should be transferred without advance notice to counsel, except in unusual and compelling circumstances such as where the safety of the minor or others is threatened or the minor has been determined to be an escape-risk, or where counsel has waived notice, in which cases notice must be provided to counsel within 24 hours following transfer.

**(l) Periodic reporting.** Statistical information on minors placed in proceedings who remain in INS custody for longer than 72 hours must be reported to the Juvenile Coordinator by all INS district offices and Border Patrol stations. Information will include: (a) biographical information, including the minor's name, date of birth, and country of birth, (b) date placed in INS custody, (c) each date placed, removed or released, (d) to whom and where placed, transferred, removed or released, (e) immigration

status, and (f) hearing dates. INS officers should also inform the Juvenile Coordinator of the reasons for placing a minor in a medium-security facility or detention facility as described in paragraph (i).

**(m) Attorney-client visits by Plaintiffs' counsel.** The INS will permit the lawyers for the *Flores v. Reno* plaintiff class to visit minors, even though they may not have the names of minors who are housed at a particular location. A list of Plaintiffs' counsel entitled to make attorney-client visits with minors is available from the district Juvenile Coordinator. Attorney-client visits may also be conducted by any staff attorney employed by the Center for Human Rights & Constitutional Law of Los Angeles, California, or the National Center for Youth Law of San Francisco, California, provided that such attorney presents credentials establishing his or her employment prior to any visit.

Visits must occur in accordance with generally applicable policies and procedures relating to attorney-client visits at the facility in question. Upon Plaintiffs' counsel's arrival at a facility for attorney-client visits, the facility staff must provide Plaintiffs' counsel with a list of names and alien registration numbers for the minors housed at that facility. In all instances, in order to memorialize any visit to a minor by Plaintiffs' counsel, Plaintiffs' counsel must file a notice of appearance with the INS prior to any attorney-client meeting. Plaintiffs' counsel may limit the notice of appearance to representation of the minor in connection with his placement or treatment during INS custody. Plaintiffs' counsel must submit a copy of the notice of appearance by hand or by mail to the local INS juvenile coordinator and a copy by hand to the staff of the facility.

A minor may refuse to meet with Plaintiffs' counsel. Further, the minor's parent or legal guardian may deny Plaintiffs' counsel permission to meet with the minor.

**(n) Visits to licensed facilities.** In addition to the attorney-client visits, Plaintiffs' counsel may request access to a licensed program's facility (described in paragraph (h)) or to a medium-security facility or detention facility (described in paragraph (i)) in which a minor has been placed. The district juvenile coordinator will convey the request to the facility's staff and coordinate the visit. The rules and procedures to be followed in connection with such visits are set out in Exhibit 4 of the *Flores v. Reno* Settlement Agreement, unless Plaintiffs' counsel and the facility's staff agree otherwise. In all visits to any facility, Plaintiffs' counsel and their associated experts must treat minors and staff with courtesy and dignity and must not disrupt the normal functioning of the facility.

6

Exhibit 3

EXHIBIT 3

CONTINGENCY PLAN

In the event of an emergency or influx that prevents the prompt placement of minors in licensed programs with which the Community Relations Service has contracted, INS policy is to make all reasonable efforts to place minors in programs licensed by an appropriate state agency as expeditiously as possible. An "emergency" is an act or event, such as a natural disaster (e.g. earthquake, fire, hurricane), facility fire, civil disturbance, or medical emergency (e.g. a chicken pox epidemic among a group of minors) that prevents the prompt placement of minors in licensed facilities. An "influx" is defined as any situation in which there are more than 130 minors in the custody of the INS who are eligible for placement in licensed programs.

1. The Juvenile Coordinator will establish and maintain an Emergency Placement List of at least 80 beds at programs licensed by an appropriate state agency that are potentially available to accept emergency placements. These 80 placements would supplement the 130 placements that the INS normally has available, and whenever possible, would meet all standards applicable to juvenile placements the INS normally uses. The Juvenile Coordinator may consult with child welfare specialists, group home operators, and others in developing the List. The Emergency Placement List will include the facility name; the number of beds potentially available at the facility; the name and telephone number of contact persons; the name and telephone number of contact persons for nights, holidays, and weekends if different; any restrictions on minors accepted (e.g. age); and any special services that are available.

2. The Juvenile Coordinator will maintain a list of minors affected by the emergency or influx, including (1) the minor's name, (2) date and country of birth, (3) date placed in INS custody, and (4)

1

place and date of current placement.

3. Within one business day of the emergency or influx the Juvenile Coordinator or his or her designee will contact the programs on the Emergency Placement List to determine available placements. As soon as available placements are identified, the Juvenile Coordinator will advise appropriate INS staff of their availability. To the extent practicable, the INS will attempt to locate emergency placements in geographic areas where culturally and linguistically appropriate community services are available.

4. In the event that the number of minors needing emergency placement exceeds the available appropriate placements on the Emergency Placement List, the Juvenile Coordinator will work with the Community Relations Service to locate additional placements through licensed programs, county social services departments, and foster family agencies.

5. Each year the INS will reevaluate the number of regular placements needed for detained minors to determine whether the number of regular placements should be adjusted to accommodate an increased or decreased number of minors eligible for placement in licensed programs. However, any decision to increase the number of placements available shall be subject to the availability of INS resources. The Juvenile Coordinator shall promptly provide Plaintiffs' counsel with any reevaluation made by INS pursuant to this paragraph.

6. The Juvenile Coordinator shall provide to Plaintiffs' counsel copies of the Emergency Placement List within six months after the court's final approval of the Settlement Agreement.

2

Exhibit 4

EXHIBIT 4

AGREEMENT CONCERNING FACILITY VISITS UNDER PARAGRAPH 33

The purpose of facility visits under paragraph 33 is to interview class members and staff and to observe conditions at the facility. Visits under paragraph 33 shall be conducted in accordance with the generally applicable policies and procedures of the facility to the extent that those policies and procedures are consistent with this Exhibit.

Visits authorized under paragraph 33 shall be scheduled no less than seven (7) business days in advance. The names, positions, credentials, and professional association (e.g., Center for Human Rights and Constitutional Law) of the visitors will be provided at that time.

All visits with class members shall take place during normal business hours.

No video recording equipment or cameras of any type shall be permitted. Audio recording equipment shall be limited to hand-held tape recorders.

The number of visitors will not exceed six (6) or, in the case of a family foster home, four (4), including interpreters, in any instance. Up to two (2) of the visitors may be non-attorney experts in juvenile justice and/or child welfare.

No visit will extend beyond three (3) hours per day in length. Visits shall minimize disruption to the routine that minors and staff follow.

1

Exhibit 5

EXHIBIT 5

LIST OF ORGANIZATIONS TO RECEIVE INFORMATION RE: SETTLEMENT AGREEMENT

Eric Cohen, Immig. Legal Resource Center, 1663 Mission St. Suite 602, San Francisco, CA 94103

Cecilia Munoz, Nat'l Council Of La Raza, 810 1st St. NE  Suite 300, Washington, D.C. 20002

Susan Alva, Immig. & Citiz. Proj Director, Coalition For Humane Immig Rights of LA, 1521 Wilshire Blvd., Los Angeles, CA 90017

Angela Cornell, Albuquerque Border Cities Proj., Box 35895, Albuquerque, NM 87176-5895

Beth Persky, Executive Director, Centro De Asuntos Migratorios, 1446 Front Street, Suite 305, San Diego, CA 92101

Dan, Kesselbrenner, , National Lawyers Guild, National Immigration Project, 14 Beacon St.,#503, Boston, MA 02108

Lynn Marcus , SWRRP, 64 E. Broadway, Tucson, AZ 85701-1720

Maria Jimenez, , American Friends Service Cmte., ILEMP, 3522 Polk Street, Houston, TX 77003-4844

Wendy Young, , U.S. Cath. Conf., 3211 4th St. NE, , Washington, DC, 20017-1194

Miriam Hayward , International Institute Of The East Bay, 297 Lee Street , Oakland, CA 94610

Emily Goldfarb, , Coalition For Immigrant & Refugee Rights, 995 Market Street, Suite 1108 , San Francisco, CA 94103

Jose De La Paz, Director, California Immigrant Workers Association, 515 S. Shatto Place , Los Angeles, CA, 90020

Annie Wilson, LIRS, 390 Park Avenue South, First Asylum Concerns, New York, NY 10016

Stewart Kwoh, Asian Pacific American Legal Center, 1010 S. Flower St., Suite 302, Los Angeles, CA 90015

Warren Leiden, Executive Director, AILA, 1400 Eye St., N.W., Ste. 1200, Washington, DC, 20005

Frank Sharry, Nat'l Immig Ref & Citiz Forum, 220 I Street N.E., Ste. 220, Washington, D.C. 20002

Reynaldo Guerrero, Executive Director, Center For Immigrant's Rights, 48 St. Marks Place , New York, NY 10003

1

Charles Wheeler , National Immigration Law Center, 1102 S. Crenshaw Blvd., Suite 101  , Los Angeles, CA 90019

Deborah A. Sanders, Asylum & Ref. Rts Law Project, Washington Lawyers Comm., 1300 19th Street, N.W., Suite 500 , Washington, D.C. 20036

Stanley Mark, Asian American Legal Def.& Ed.Fund, 99 Hudson St, 12th Floor, New York, NY 10013

Sid Mohn, Executive Director, Travelers & Immigrants Aid, 327 S. LaSalle Street, Suite 1500, Chicago, IL, 60604

Bruce Goldstein, Attornet At Law, Farmworker Justice Fund, Inc., 2001 S Street, N.W., Suite 210, Washington, DC 20009

Ninfa Krueger, Director, BARCA, 1701 N. 8th Street, Suite B-28, McAllen, TX 78501

John Goldstein, , Proyecto San Pablo, PO Box 4596,, Yuma, AZ 85364

Valerie Hink, Attorney At Law, Tucson Ecumenical Legal Assistance, P.O. Box 3007 , Tucson, AZ 85702

Pamela Mohr, Executive Director, Alliance For Children's Rights, 3708 Wilshire Blvd. Suite 720, Los Angeles, CA 90010

Pamela Day, Child Welfare League Of America, 440 1st St. N.W., , Washington, DC 20001

Susan Lydon, Esq., Immigrant Legal Resource Center, 1663 Mission St. Ste 602, San Francisco, CA 94103

Patrick Maher, Juvenile Project, Centro De Asuntos Migratorios, 1446 Front Street, # 305, San Diego, CA 92101

Lorena Munoz, Staff Attorney, Legal Aid Foundation of LA-IRO, 1102 Crenshaw Blvd., Los Angeles, CA 90019

Christina Zawisza, Staff Attorney, Legal Services of Greater Miami, 225 N.E. 34th Street, Suite 300, Miami, FL 33137

Miriam Wright Edelman, Executive Director, Children's Defense Fund, 122 C Street N.W.  4th Floor, Washington, DC 20001

Rogelio Nunez, Executive Director, Proyecto Libertad, 113 N. First St., Harlingen, TX  78550

Exhibit 6

EXHIBIT 6
NOTICE OF RIGHT TO JUDICIAL REVIEW

"The INS usually houses persons under the age of 18 in an open setting, such as a foster or group home, and not in detention facilities. If you believe that you have not been properly placed or that you have been treated improperly, you may ask a federal judge to review your case. You may call a lawyer to help you do this. If you cannot afford a lawyer, you may call one from the list of free legal services given to you with this form."

PROOF OF SERVICE BY MAIL

I, Sonia Fuentes, declare and say as follows:

1. I am over the age of eighteen years and am not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 256 South Occidental Boulevard, Los Angeles, California 90057, in said county and state.

2. On January ___, 1997, I served the attached STIPULATED SETTLEMENT AGREEMENT on defendants in this proceeding by placing a true copy thereof in a sealed envelope addressed to their attorneys of record as follows:

Mr. Michael Johnson
Assistant U.S. Attorney
300 N. Los Angeles St. #7516
Los Angeles, CA 90012

and by then sealing said envelope and depositing the same, with postage thereon fully prepaid, in the mail at Los Angeles, California; that there is regular delivery of mail between the place of mailing and the place so addressed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___th day of January, 1997, at Los Angeles, California.

///

- 3 -

LODGED

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos Holguin
Peter A. Schey
Charles Song
256 South Occidental Boulevard
Los Angeles, CA 90057
Telephone: (213) 388-8693; Fax: (213) 386-9484

LATHAM & WATKINS
Steven Schulman
555 Eleventh St., NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2184

*Of counsel:*

YOUTH LAW CENTER
Alice Bussiere
417 Montgomery Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 543-3379 x 3903

*Attorneys for plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JENNY LISETTE FLORES, et al., | ) | Case No. CV 85-4544-RJK(Px) |
| | ) | |
| Plaintiffs, | ) | STIPULATION EXTENDING |
| | ) | SETTLEMENT AGREEMENT AND FOR |
| -vs- | ) | OTHER PURPOSES; AND ORDER |
| | ) | THEREON |
| JANET RENO, Attorney General | ) | |
| of the United States, et al. | ) | |
| | ) | |
| Defendants | | |
| | ) | |

/ /

IT IS HEREBY STIPULATED by and between the parties as follows:

1. Paragraph 40 of the Stipulation filed herein on January 17, 1997, is modified to read as follows:

"All terms of this Agreement shall terminate ~~the earlier of five years after the date of final court approval of this Agreement or three years after the court determines that the INS is in substantial compliance with this Agreement,~~ *45 days following defendants' publication of final regulations implementing this Agreement* ~~except that~~ *Notwithstanding the foregoing,* the INS shall continue to house the general population of minors in INS custody in facilities that are state-licensed for the care of dependent minors."

/ / /

2  For a period of six months from the date this Stipulation is filed, plaintiffs shall not initiate legal proceedings to compel publication of final regulations implementing this Agreement  Plaintiffs agree to work with defendants cooperatively toward resolving disputes regarding compliance with the Settlement. The parties agree to confer regularly no less frequently than once monthly for the purpose of discussing the implementation of and compliance with the settlement agreement  However, nothing herein shall require plaintiffs to forebear legal action to compel compliance with this Agreement where plaintiff class members are suffering irreparable injury

Dated: December 7, 2001.

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos Holguín
Peter A  Schey

LATHAM & WATKINS
Steven Schulman

YOUTH LAW CENTER
Alice Bussiere

Carlos Holguín, *for plaintiffs*.

Dated: December 7, 2001

Arthur Strathern
Office of the General Counsel
U.S. Immigration & Naturalization Service

Arthur Strathern, *for defendants*
Per tax authorization

IT IS SO ORDERED

Dated: December _____ 2001

_____
UNITED STATES DISTRICT JUDGE

2. For a period of six months from the date this Stipulation is filed, plaintiffs shall not initiate legal proceedings to compel publication of final regulations implementing this Agreement. Plaintiffs agree to work with defendants cooperatively toward resolving disputes regarding compliance with the Settlement. The parties agree to confer regularly no less frequently than once monthly for the purpose of discussing the implementation of and compliance with the settlement agreement. However, nothing herein shall require plaintiffs to forebear legal action to compel compliance with this Agreement where plaintiff class members are suffering irreparable injury.

Dated: December 7, 2001.

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos Holguin
Peter A. Schey

LATHAM & WATKINS
Steven Schulman

YOUTH LAW CENTER
Alice Bussiere

_____
Carlos Holguin, *for plaintiffs*

Dated: December 7, 2001.

Arthur Strathern
Office of the General Counsel
U.S. Immigration & Naturalization Service

_____
Arthur Strathern, *for defendants*
Per fax authorization

IT IS SO ORDERED

Dated: December 7, 2001.

_____
UNITED STATES DISTRICT JUDGE

- 3 -

PROOF OF SERVICE BY MAIL

I, Carlos Holguin, declare and say as follows:

1  I am over the age of eighteen years and am not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 256 South Occidental Boulevard, Los Angeles, California 90057, in said county and state

2  On December 7, 2001, I served the attached STIPULATION on defendants in this proceeding by placing a true copy thereof in a sealed envelope addressed to their attorneys of record as follows:

Arthur Strathern
Office of the General Counsel
U.S. Immigration & Naturalization Service
425 I St. N.W.
Washington, DC  20536

and by then sealing said envelope and depositing the same, with postage thereon fully prepaid, in the mail at Los Angeles, California; that there is regular delivery of mail between the place of mailing and the place so addressed.

I declare under penalty of perjury that the foregoing is true and correct

Executed this 7th day of December, 2001, at Los Angeles, California

/ / /