Mark Rosenbaum (CA SBN # 59940)
Amanda Mangaser Savage (CA SBN # 325996)
Rebecca Brown (CA SBN # 345805)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
mrosenbaum@publiccounsel.org
asavage@publiccounsel.org
rbrown@publiccounsel.org

*Listing of counsel continued on following page*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Jose Antonio PEREZ-FUNEZ, *et al.*,<br><br>        Plaintiffs,<br><br>   vs.<br><br>U.S. Department of Homeland Security, *et al.*,<br><br>        Defendants. | Case No.: CV 81-1457-MWF(Ex)<br><br>**PLAINTIFFS' CROSS-MOTION TO MODIFY INJUNCTION AND MOTION FOR LEAVE TO CONDUCT DISCOVERY**<br><br>Date: February 9, 2026<br>Time: 10:00 a.m.<br>Place: TBD<br>Judge: Honorable Michael W. Fitzgerald |

Gilbert Paul Carrasco (CA SBN # 90838)
900 Pacific Coast Highway, Suite # 305
Huntington Beach, CA 92648-4863
Telephone: (503) 990-4879
carrasco@willamette.edu

Adam B. Wolfson (CA SBN # 262125)
Paulina Slagter (CA SBN # 318559)
Quinn Emanuel Urquhart & Sullivan LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
adamwolfson@quinnemanuel.com
paulinaslagter@quinnemanuel.com

Peter McGraw*
Kevin Siegel*
NATIONAL IMMIGRATION LAW CENTER
1121 14th Street, Suite 200
Washington, D.C. 20005
Telephone: (213) 639-3900
Fax: (213) 639-3911
mcgraw@nilc.org
siegel@nilc.org

Richard A. Koffman**
Alex Bodaken**
Nina L. Haug**
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave., NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 408-4600
rkoffman@cohenmilstein.com
abodaken@cohenmilstein.com
nhaug@cohenmilstein.com

Diane Kee***
COHEN MILSTEIN SELLERS & TOLL PLLC
100 N. 18th St., Suite 1820

Philadelphia, PA 19103
Telephone: (267) 479-5700
dkee@cohenmilstein.com

*Counsel for Plaintiffs*

*Admitted *pro hac vice*

** Application for *pro hac vice* admission submitted

*** Application for *pro hac vice* admission forthcoming

# TABLE OF CONTENTS

NOTICE OF MOTION ........................................................................................ vii

COMPLIANCE WITH LOCAL RULE 7-3 ...................................................... vii

CROSS-MOTION TO MODIFY PERMANENT INJUNCTION AND MOTION FOR LEAVE TO CONDUCT DISCOVERY ........................................................ ix

INTRODUCTION ................................................................................................1

BACKGROUND ..................................................................................................2

    I.    The *Perez-Funez* Injunction .......................................................................2

    II.    Relevant Legal Developments Since Entry of the *Perez-Funez* Injunction....5

ARGUMENT .......................................................................................................9

    I.    The Court Should Modify the Injunction to Prohibit the Use of the "UAC Processing Pathway Advisal"......................................................................9

    II.    The Court Should Permit Plaintiffs to Conduct Limited Post-Judgment Discovery.......................................................................................................12

CONCLUSION ..................................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*A&M Recs., Inc. v. Napster*, 284 F.3d 1091 (9th Cir. 2002) ...................................12

*Sharp v. Weston*, 233 F.3d 1166 (9th Cir. 2000) ......................................................9

*Brown v. Plata*, 563 U.S. 493 (2011).....................................................................9

*Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025 (9th Cir. 2008)..........................2

*Coleman v. Brown*, 922 F. Supp. 2d 1004 (E.D. Cal. 2013) ...................................13

*Damus v. Nielsen*, 328 F.R.D. 1 (D.D.C. 2018) ......................................................14

*Epic Games, Inc. v. Apple, Inc.*, 2025 WL 3548683 (9th Cir. Dec. 11, 2025)........11

*Flores v. Bondi*, 2025 WL 2633183 (C.D. Cal. Aug. 15, 2025)...............................8

*Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016) ........................................................5

*Flores v. Rosen*, 984 F.3d 720 (9th Cir. 2020) .......................................................8

*Fraihat v. U.S. Immigr. & Customs Enf't*, 2020 WL 2758553 (C.D. Cal. May 15, 2020).......................................................................................................................13

*Franco-Gonzalez v. Wolf*, 2020 WL 12688334 (C.D. Cal. Jan. 10, 2020)..............14

*Horne v. Flores*, 557 U.S. 433 (2009) ............................................................. 1, 5, 9

*Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016) ....................................................9

*L.G.M.L. v. Noem*, 2025 WL 2671690 (D.D.C. Sept. 18, 2025) ....................... 7, 11

*Ms. L. v. U.S. Immigr. & Customs Enf't*, 2025 WL 2590329 (S.D. Cal. July 24, 2025).......................................................................................................................13

*Perez-Funez v. Dist. Dir., I.N.S.* ("*Perez-Funez I*"), 611 F. Supp. 990 (C.D. Cal. 1984) ............................................................................................................. 3, 11, 17

*Perez-Funez v. Dist. Dir., I.N.S.* (*Perez-Funez II*), 619 F. Supp. 656 (C.D. Cal. 1985)......................................................................................................................1, 4

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806(1945)....17

*Regal Knitwear Co. v. NLRB*, 324 U.S. 9 (1945) ..................................................12

*Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444 (9th Cir. 1991) ...............................................................................................................................14

*Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367 (1992).....................................2, 9

*Rutherford v. Baca*, 2009 WL 10653011 (C.D. Cal. Aug. 4, 2009), *clarified on denial of reconsideration*, 2009 WL 10653010 (C.D. Cal. Sep. 22, 2009) ... 13, 18

*Tenn. Valley Auth. v. Hill*, 437 U.S. 153 (1978)........................................................11

*United States v. Asarco Inc.*, 430 F.3d 972 (9th Cir. 2005).......................................9

*Warren v. City of Chico*, 2025 WL 974068 (E.D. Cal. Mar. 31, 2025) ..................13

**Statutes**

8 U.S.C. § 1232 ...........................................................................................................6

8 U.S.C. § 1232(a)(2)(A) ....................................................................................... 6, 10

8 U.S.C. § 1232(a)(5)(D) ...........................................................................................6

8 U.S.C. § 1232(b)(2)(A) ...........................................................................................6

8 U.S.C. § 1232(b)(3)...............................................................................................10

8 U.S.C. § 1252(f)(1) ...............................................................................................19

**Other Authorities**

Apprehension, Processing, Care, and Custody of Alien Minors and Unaccompanied Alien Children, 84 Fed. Reg. 44392, 44429 (Aug. 23, 2019)..6, 8

One Big Beautiful Bill Act ("OBBB"), Pub. L. No. 119-21, 139 Stat. 72 (2025) ....7

**Rules**

Fed. R. Civ. P. 5.2(a)................................................................................................16

Fed. R. Civ. P. 60(b)(5)...................................................................................... 1, 9, 12

**Regulations**

45 C.F.R. § 410.1309(a)(2)(i) ....................................................................................7

8 C.F.R. § 1236.3(h) ..................................................................................................7

8 C.F.R. § 236.3(g) ....................................................................................................8

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on February 9, 2026, at 10:00 A.M. PST Plaintiffs will and hereby do move this Court pursuant to Federal Rule of Civil Procedure 60(b)(5) for an order modifying the permanent injunction entered in this action on September 30, 1985 (reported at 619 F. Supp. 656) and for an order granting Plaintiffs leave to engage in post-judgment discovery concerning the Government's compliance with the injunction as well as the changed factual circumstances that may warrant further modification of the permanent injunction.

## COMPLIANCE WITH LOCAL RULE 7-3

This motion is made following conferences between counsel for Plaintiffs and counsel for the Government which took place by various telephone calls between December 1, 2025, and December 5, 2025, as well as by email correspondence on December 4 and December 14–17, 2025. On or about December 4, 2025, and earlier by telephone, Plaintiffs indicated their intention to seek tailored post-judgment discovery concerning the Government's compliance with the injunction and changed factual circumstances that may warrant modification of the injunction. In the course of those discussions, I delivered to the Government's counsel proposed written discovery requests and a list of proposed topics for deposition conducted under Rule 30(b)(6). On December 5, 2025, I discussed Plaintiffs' intention to seek modification of the permanent injunction with the Government's counsel by telephone, and on December 15, 2025, I followed-up with a summary email explaining that Plaintiffs sought modification based on changed factual circumstances, to prevent unlawful coercion of unaccompanied children, and to ensure that unaccompanied children continue to receive the safeguards required by the injunction. On December 5, 2025, I was informed by the Government's counsel that the Government opposes post-judgment discovery in this action, and on December 16, 2025, I was informed by email that the Government opposes modification of the injunction because its position is that legal and factual changes make the injunction unnecessary. The

Parties are therefore unable to reach a resolution that eliminates the necessity for a hearing.

I declare under penalty of perjury that the foregoing information under "Compliance with Local Rule 7-3" is true and correct.

Dated: January 6, 2026                                  /s/ Peter McGraw
                                                        Peter McGraw
                                                        Counsel for Plaintiffs

## CROSS-MOTION TO MODIFY PERMANENT INJUNCTION AND
## MOTION FOR LEAVE TO CONDUCT DISCOVERY

Plaintiffs move to modify the Court's permanent injunction under Federal Rule of Civil Procedure 60(b)(5) and for leave to conduct reasonable post-judgment discovery regarding the Government's compliance with the permanent injunction as well as the changed factual circumstances that may warrant further suitably tailored modifications. As set out below, substantial evidence from recent months indicates that U.S. Customs and Border Protection ("CBP") has developed a new advisal form for unaccompanied children that conflicts in significant ways with the advisal ordered by the Court, current statutes and regulations governing the processing of unaccompanied children, and the Fifth Amendment. Substantial violations of injunctions constitute changed circumstances that permit courts to modify injunctions. *See Kelly v. Wengler*, 822 F.3d 1085, 1098 (9th Cir. 2016). Based on this and other recent changed factual circumstances, Plaintiffs seek an immediate modification of the injunction to prohibit the use of CBP's new advisal form with unaccompanied minors from contiguous and non-contiguous countries.

Furthermore, substantial evidence demonstrates that additional discovery "could raise significant questions concerning compliance." *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1034 (9th Cir. 2008). Plaintiffs therefore seek leave to conduct reasonable and tailored post-judgment discovery regarding the Government's compliance with the permanent injunction and changed factual circumstances, including, but not limited to, circumstances highlighted in the Government's motion seeking termination of the injunction, *see* Dkt. 250 at 17–19, which may warrant a suitably tailored modification of the injunction.

This Cross-Motion and Motion are based upon the above Notice, the accompanying Memorandum of Points and Authorities, all papers on file in this action, and such other matters as may be presented to this Court at the time of the

hearing on the Cross-Motion and Motion. Pursuant to Rule 7-15, Plaintiffs do not waive oral argument.

DATED: January 6, 2026

*/s/ Mark Rosenbaum*
Mark Rosenbaum (CA SBN # 59940)
Amanda Mangaser Savage (CA SBN # 325996)
Rebecca Brown (CA SBN # 345805)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
mrosenbaum@publiccounsel.org
asavage@publiccounsel.org
rbrown@publiccounsel.org

Gilbert Paul Carrasco (CA SBN # 90838)
900 Pacific Coast Highway, Suite # 305
Huntington Beach, CA 92648-4863
Telephone: (503) 990-4879
carrasco@willamette.edu

Adam B. Wolfson (CA SBN # 262125)
Paulina Slagter (CA SBN # 318559)
Quinn Emanuel Urquhart & Sullivan LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
adamwolfson@quinnemanuel.com
paulinaslagter@quinnemanuel.com

Peter McGraw*
Kevin Siegel*
NATIONAL IMMIGRATION LAW CENTER
1121 14th Street, Suite 200
Washington, D.C. 20005
Telephone: (213) 639-3900
Fax: (213) 639-3911

x

mcgraw@nilc.org
siegel@nilc.org

Richard A. Koffman**
Alex Bodaken**
Nina L. Haug**
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave., NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 408-4600
rkoffman@cohenmilstein.com
abodaken@cohenmilstein.com
nhaug@cohenmilstein.com

Diane Kee***
COHEN MILSTEIN SELLERS & TOLL PLLC
100 N. 18th St., Suite 1820
Philadelphia, PA 19103
Telephone: (267) 479-5700
dkee@cohenmilstein.com

*Counsel for Plaintiffs*

*Admitted *pro hac vice*
** Application for *pro hac vice* admission submitted
*** Application for *pro hac vice* admission forthcoming

**INTRODUCTION**

In 1985, the district court found the Government's voluntary departure procedures for unaccompanied children "constitutionally infirm" and entered a permanent injunction to prevent the unlawful removal of unaccompanied children through unknowing and involuntary waivers of Due Process rights. *Perez-Funez v. Dist. Dir., I.N.S.* (*Perez-Funez II*), 619 F. Supp. 656, 669 (C.D. Cal. 1985). Without adequate legal justification or evidentiary support, the Government seeks to terminate the Court's permanent injunction entirely. Dkt. 250. At the same time, substantial evidence indicates that the Government is pursuing policies that seek to expeditiously remove unaccompanied children from the United States including, but not limited to, developing a new patently coercive, threatening, and misleading written rights advisal form for unaccompanied children in the custody of U.S. Customs and Border Protection ("CBP"). Exh. 1 at 6 (Decl. of Marie Silver); Exh. 2 at ¶ 10 (Decl. of Emma Winger).

With this cross-motion, pursuant to Rule 60(b)(5), Plaintiffs request that the Court immediately modify the permanent injunction in this action to prevent the Government's use of the new "UAC Processing Pathway Advisal" form as a violation of the injunction, and therefore, a significant change in circumstances warranting modification. *Kelly*, 822 F.3d at 1098 (explaining that, "[u]nder well established law," a "substantial violation" of an injunction "constitutes a significant change in factual circumstances" that may warrant modification).

Plaintiffs also seek authorization to engage in reasonable and tailored post-judgment discovery regarding the Government's compliance with the permanent injunction, as well as equitable factors that—according to the Government—may make continued compliance with the injunction in its current form unnecessarily onerous, unworkable, or "detrimental to the public interest." Dkt. 250 at 10 (quoting *Horne v. Flores*, 557 U.S. 433, 447 (2009)). Plaintiffs easily satisfy the permissive standard applicable to requests for post-judgment discovery concerning compliance

with a court order because substantial third-party evidence demonstrates that further discovery "could raise significant questions concerning compliance." *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1034 (9th Cir. 2008). Moreover, limited post-judgment discovery would aid in the Court's determination of whether further modifications of the injunction are "suitably tailored" to the changed circumstances. *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992).

**BACKGROUND**

### I.      The *Perez-Funez* Injunction

In 1981, class representative Jose Antonio Perez-Funez filed a petition for a writ of habeas corpus alleging that he was an unaccompanied minor whom the Government sought to remove from the United States. Dkt. 2. Mr. Perez-Funez alleged that he had not received a removal hearing and that, as a 16-year-old boy, he was legally incapable of waiving his right to such a hearing absent procedural protections tailored to the needs of children. Dkt. 2 at 6. Weeks later, Mr. Perez-Funez, along with two additional unaccompanied minors, Yanira and Claudia Pena, filed a class action complaint seeking declaratory and injunctive relief against the then-Immigration and Naturalization Services' ("INS") practice of arresting and removing children from the United States, based on a purported waiver by the child, without a removal hearing or other adequate procedural safeguards. Dkt. 7.

In January of 1984, Judge Edward Rafeedie certified a class,[1] determined Plaintiffs were "likely to succeed on the merits of their claim that the procedures . . . employed by . . . INS when implementing voluntary departure in the case of an

---

[1] The class definition in this case is "[a]ll persons who appear, are known, or claim to be under the age of eighteen years who are now or in the future taken into or held in custody in the United States by agents of the Immigration and Naturalization Service for possible deportation from the United States, and who are not accompanied by at least one of their natural or lawful parents at the time of being taken or received in custody within the United States." *Perez-Funez I*, 611 F. Supp. 990, 1005 (C.D. Cal. 1984).

2

unaccompanied minor [were] constitutionally defective," and issued a preliminary injunction. *Perez-Funez v. Dist. Dir., I.N.S.* ("*Perez-Funez I*"), 611 F. Supp. 990, 1003 (C.D. Cal. 1984). The preliminary injunction prohibited the INS, as well as its "agents and successors in office," from "inform[ing] any member of the class of the availability of voluntary departure . . . until such defendant, agent, or successor in office has":

    A. Read verbatim "in English or Spanish, or any other language understood by the class member" a general advisal informing the child of their right to a deportation hearing and to apply for political asylum and other forms of relief from removal, *id.* at 1005–06;

    B. Provided to the class member a written notice containing more detailed information about the rights to be represented by a lawyer, to a deportation hearing, to apply for relief from removal, and to request voluntary departure, *id.*, and;

    C. Obtained a signed acknowledgment from the child of receipt of this written notice. *Id.* at 1005.

If the child indicated their intention to apply for relief from removal, the preliminary injunction prohibited Government officials from "advis[ing], encourag[ing], or persuad[ing]" the child to accept a voluntary departure. *Id*. at 1005. The preliminary injunction also broadly prohibited the use of "threats, misrepresentations, subterfuge, or other forms of coercion" of unaccompanied children when informing them of the availability of voluntary departure procedures, and further prohibited the Government from "in any way attempt[ing] to persuade or dissuade class members when informing them of the availability of voluntary departure." *Id*.

Following a trial that included testimony from the class representatives, 14 additional class member children, and multiple expert witnesses, the Court found that the INS's policies and practices for effectuating the return of children outside of

3

removal proceedings deprived unaccompanied children of procedural due process by coercing them into waiving their rights unknowingly and involuntarily. *Perez-Funez II*, 619 F. Supp. at 658, 661, 669. The Court therefore made the preliminary injunction permanent with certain modifications, including:

A. Striking language regarding the Government's "threats, misrepresentations, subterfuge, or other form of coercion" from the injunction, *id*. at 670;

B. Ordering the parties to confer and "prepare a simplified rights advisal" document[2] to be provided to class members "in the same manner as the previous advisal," along with a list of free legal service providers and submit the same for Court approval, *id*.;

C. Ordering the Government to inform class members from contiguous countries—Mexico or Canada—"apprehended in the immediate vicinity of the border" that they "may make a telephone call to a parent, close relative, friend, or to an organization found on the free legal services list," *id*., and;

D. For all other class members, ordering the Government to "provide access to telephones and ensure that the class member has in fact communicated . . . with a parent, close adult relative, or friend, or with an organization found on the free legal services list." *Id*.

While recognizing that these protections would "entail some expense," the Court found any such cost to be a "minimal burden upon the government" when compared to the "great" risk of depriving unaccompanied children of their "significant constitutional and statutory rights." *Id*. at 668. To the Court, it was

---

[2] On May 16, 1986, the Court adopted an advisal form. Dkt. 240. As the Government notes, it now uses Form I-770, Notice of Rights and Request for Disposition. Dkt. 250 at 1; Exh. 3 (Form I-770). Since approximately 1997, both regulation and the Stipulated Settlement Agreement in what is now *Flores v. Bondi*, CV 85-4544-DMG-AGRx, have required the Government to use Form I-770 to provide the written advisals mandated by the permanent injunction. *See* 8 C.F.R. § 1236.3(g)–(h); *see also* Exh. 4 at ¶¶ 12, 24.D (*Flores* Settlement Agreement).

"common sense" that these safeguards were needed to protect unaccompanied children who were "forced to make critical decisions" about difficult legal questions in the absence of a trusted adult. *Id.* at 662. As the Court explained: "The interrogators are foreign and authoritarian. The environment is new and the culture completely different. The law is complex. The children generally are questioned separately." *Id.* (footnotes omitted). Additionally, the fact that federal immigration agents could explain rights but were prohibited from giving advice on the same "d[id] nothing to alleviate the problem." *Id.* Under such circumstances, it was "obvious to the Court that the situation faced by unaccompanied [children] is inherently coercive," such that many children—especially those "accustomed to autocratic governments"—naturally responded by "defer[ring] to the authority before them." *Id.* at 661–62.

## II.    Relevant Legal Developments Since Entry of the *Perez-Funez* Injunction

Intervening legal developments may be relevant to the Court's consideration of whether modification of the injunction is appropriate even if they fall short of requiring termination of the injunction.[3] *See, e.g.*, *Horne v. Flores*, 557 U.S. 433, 461–65 (2009) (passage of No Child Left Behind Act was "probative" to petitioners' Rule 60(b)(5) motion seeking relief from judgment); *Flores v. Lynch*, 828 F.3d 898, 910 (9th Cir. 2016) (passage of Trafficking Victims Protection Reauthorization Act ("TVPRA") "might support modification of the conflicting [settlement] provisions so that they no longer apply to the unaccompanied minors covered by the TVPRA").

---

[3] As set out in Plaintiffs' Opposition to Defendants' Motion to Terminate Injunction and Rights Advisal, legal developments since 1985 do not require termination of the injunction in its entirety because no intervening legal authority affects the Court's remedial authority or permits what the permanent injunction forbids. Dkt. 268 at 10–19.

First, the TVPRA is crucial to the Court's determination as to whether and how to modify the permanent injunction. In 2008, as part of a broad effort to combat the trafficking of children, Congress enacted the TVPRA, mandating specific legal procedures and safeguards that apply to unaccompanied children from contiguous and non-contiguous countries. Pub. L. No. 110-457, 122 Stat. 5044 (codified in relevant part at 8 U.S.C. § 1232). The TVPRA, which the Government acknowledges "creat[es] a detailed, comprehensive, and binding statutory scheme," Dkt. 250 at 14, restricts the expedited return of unaccompanied children outside of removal proceedings to certain children who are "national[s] or habitual resident[s]" of Mexico or Canada who are found "at a land border or port of entry of the United States." 8 U.S.C. § 1232(a)(2)(A)–(B). Any other unaccompanied child "sought to be removed" by the Government "shall be" placed in full removal proceedings, eligible for voluntary departure at no cost to the child overseen by an Immigration Judge, and, "to the greatest extent practicable," provided access to counsel. 8 U.S.C. § 1232(a)(5)(D), (c)(5); *see L.G.M.L. v. Noem*, 2025 WL 2671690, at *2, *14 (D.D.C. Sep. 18, 2025); *see also* Apprehension, Processing, Care, and Custody of Alien Minors and Unaccompanied Alien Children, 84 Fed. Reg. 44392, 44429 (Aug. 23, 2019) (Unaccompanied children "from non-contiguous countries are not permitted to withdraw their application for admission under the TVPRA . . . .").

The TVPRA also permits a narrow interval between the time a government official encounters an unaccompanied child and the time the child is placed in the custody of the Office of Refugee Resettlement ("ORR") and afforded the TVPRA's procedural protections. Federal agencies must notify the U.S. Department of Health and Human Services ("HHS") within 48 hours of apprehending or discovering an unaccompanied child. 8 U.S.C. § 1232(b)(2)(A). Absent "exceptional circumstances," the encountering agency *must* transfer custody of the unaccompanied child to ORR within 72 hours. *Id*. § 1232(b)(3). When unaccompanied children enter ORR custody, they receive additional procedural

protections that are unavailable during the 72-hour period before transfer. *See, e.g.,* 45 C.F.R. § 410.1309(a)(2)(i) (requiring in-person, telephonic, or video presentation about the right of unaccompanied children), 410.1309(a)(2)(v) (requiring a confidential legal consultation).

In 2025, Congress passed the One Big Beautiful Bill Act ("OBBB"), Pub. L. No. 119-21, 139 Stat. 72 (2025), which makes appropriations to DHS to fund removal operations for unaccompanied children. 139 Stat. 72, 386, § 100051(8). The Government claims, despite limitations in the TVPRA, that this appropriations legislation permits the application of expedited voluntary return procedures to unaccompanied children from "any country" including during the brief 72-hour period when the child is in CBP custody. Dkt. 250 at 9; *but see L.G.M.L.*, 2025 WL 2671690, at *15 n.9 (rejecting argument that OBBB overcomes the "very strong presumption" that "appropriation acts" do not "substantively change existing laws") (citations omitted).

The Government has also promulgated regulations that incorporate parts of the Court's permanent injunction relating to phone access and notice to unaccompanied minors. *See* 8 C.F.R. § 1236.3(g)–(h) (requiring the use of Form I-770, Notice of Rights and Disposition).[4]

---

[4] In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), amending the Immigration and Nationality Act's ("INA") procedures governing individuals seeking refuge in the United States. Pub. L. 104-208, 110 Stat. 3009-546. In March 1997, in part to comply with IIRIRA's requirement for implementing regulations, INS adopted interim regulations incorporating parts of the permanent injunction's requirement for providing unaccompanied children with phone access and advisals through use of Form I-770. *See* Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10362 (Mar. 6, 1997) (promulgating former 8 C.F.R. § 236.3(g)–(h)). Following the passage of the Homeland Security Act, as part of the transfer of the former INS's functions, the U.S. Department of Homeland Security ("DHS") duplicated the language of 8 C.F.R. § 236.3 word-for-word at 8 C.F.R. § 1236.3. *See* Aliens and Nationality; Homeland Security; Regulations, 68 Fed. Reg. 9824, 9838 (Feb. 28, 2003).

In 1997, the Government entered into a Stipulated Settlement Agreement in what is now *Flores v. Bondi*, No. CV 85-4544-RJK(Px). Exh. 4 (*Flores* Settlement Agreement). The *Flores* Settlement Agreement ("FSA"), which also requires the use of Form I-770 to inform unaccompanied children of their rights, contemplated that the Government would publish the terms of the FSA as a regulation. *Id*. at ¶¶ 9, 24D. In 1998, the Government proposed these regulations, including regulations that would "conform more accurately" to the *Perez-Funez* injunction. *See* Processing, Detention, and Release of Juveniles, 63 Fed. Reg. 39760 (July 24, 1998) (proposing to amend 8 C.F.R. § 236.3). Ultimately, that process "did not result in a final rule." *Flores v. Rosen*, 984 F.3d 720, 728 (9th Cir. 2020).

In 2001, the parties to the FSA stipulated to a modification that terminates the FSA "45 days following defendants' publication of final regulations implementing th[e] [FSA]." *Flores v. Bondi*, 2025 WL 2633183, at *1 (C.D. Cal. Aug. 15, 2025) (citing the FSA). In 2019, Defendant U.S. Department of Homeland Security ("DHS") published a final rule in which it proposed to amend 8 C.F.R. § 236.3(g) to attempt to comply with both the *Flores* Settlement Agreement and the injunction in this action. Apprehension, Processing, Care, and Custody of Alien Minors and Unaccompanied Alien Children, 84 Fed. Reg. 44392, 44429 (Aug. 23, 2019). The proposed DHS regulations, except for 8 C.F.R. § 236.3(g)(2) and 236.3(f), were enjoined in 2020. *See Flores v. Rosen*, 984 F.3d at 744. While portions of the FSA have been terminated with respect to HHS, *Flores v. Bondi*, 2025 WL 2633183, at *2, more recent efforts by the Government to terminate the FSA have been denied. *Id*. at *3–11.

8

## ARGUMENT

### I.    The Court Should Modify the Injunction to Prohibit the Use of the "UAC Processing Pathway Advisal"

### A. Standard of Review

Courts have long had the inherent power to modify court orders to account for changed circumstances. *See Brown v. Plata*, 563 U.S. 493, 542 (2011). Rule 60(b)(5) now codifies that power. *Kelly*, 822 F.3d at 1098. Unanticipated factual developments and relevant legal developments following the entry of an injunction may constitute significant changed circumstances that make an injunction "onerous," "unworkable," or "detrimental to the public interest." *United States v. Asarco Inc.*, 430 F.3d 972, 979 (9th Cir. 2005) (internal citations omitted); *see also Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000) ("A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction."); *Horne*, 557 U.S. at 447. "Under well established law, substantial violation of a court order constitutes a significant change in factual circumstances" that may warrant modification. *Kelly*, 822 F.3d at 1098. If the moving party meets this standard, the Court should consider modifications that are "suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 383). A suitably tailored modification is one that returns the parties "as nearly as possible to the position they would have occupied" absent the changed circumstances. *Kelly*, 822 F.3d at 1097.

### B. The Injunction Should be Modified to Explicitly Prohibit Use of the "UAC Processing Pathway Advisal"

In recent months, the Government has openly pursued policies that seek to expeditiously remove unaccompanied children from the United States instead of providing them with the safeguards required by Congress and the Constitution. In particular, the Government appears to be using a new advisal form entitled the "UAC Processing Pathway Advisal." Exh. 1 at 6; Exh. 2 at ¶ 10, 5–6. Because this advisal

9

wholly fails to comport with the injunction's and TVPRA's mandates, this Court should modify the injunction to explicitly bar its use.

Without submitting any evidentiary materials of a proposed alternative advisal form, the Government assures the Court that some form of an advisal will be used if the injunction is terminated, Dkt. 250 at 13, and argues that it should more accurately reflect the "*actual* procedural pathway" available to unaccompanied children. *Id*. at 16 (emphasis in original). Yet it appears that the Government has, before moving to terminate or modify the injunction, *already* developed a new advisal about the purported pathways available to unaccompanied children in CBP custody. Exh. 1 at 6. Before any mention of the right to seek relief from removal in Immigration Court, CBP's UAC Processing Pathway Advisal informs the child that they can voluntarily return to their home country in the brief 72-hour period before the TVPRA requires transfer to ORR custody where unaccompanied children receive additional procedural protections. *Id.*; 8 U.S.C. § 1232(b)(3). The new advisal also vaguely and misleadingly references the "opportunity to apply for a visa, through legal means, in the future," as if that option is contingent upon acceptance of expedited voluntary return outside of removal proceedings. Exh. 1 at 6. CBP's advisal goes on to threaten "prolonged" detention if the unaccompanied minor "seek[s] a hearing with an immigration judge" or even "indicate[s] a fear of returning to [their] country." *Id*. And the advisal baselessly threatens criminal prosecution of the sponsor of unaccompanied children for "aiding [their] illegal entry." *Id*.

The Government's UAC Processing Pathway Advisal causes particularly acute harm by misleading unaccompanied children during the 72-hour period when they are exceptionally vulnerable. *Id*. With the TVPRA, Congress enacted robust procedures to ensure the safety of unaccompanied children as they navigate a complex and foreign legal regime. 8 U.S.C. § 1232. As part of those procedures, Congress requires, absent "exceptional circumstances," that children be transferred to ORR custody within 72 hours of the determination that they are unaccompanied

by a parent or legal guardian. *Id.* § 1232(b)(3). During this period, unaccompanied children from Mexico and Canada who meet the criteria set out in 8 U.S.C. § 1232(a)(2)(A) and are found "at a land border or port of entry of the United States" may withdraw their application for admission and return to their country of habitual residence after receiving the procedural safeguards ordered by this Court. *Id.* § 1232(a)(2)(B). Other unaccompanied children must be placed in full removal proceedings and provided access to counsel. *Id.* § 1232(a)(5)(D).

Yet the Government ignores this plain language and claims that the OBBB—an appropriations bill—permits the application of the voluntary removal procedure outlined in § 1232(a)(2)(B) to unaccompanied children from any country. Dkt. 250 at 9; Exh. 8 (Letter from CBP Commissioner Scott). That reading is wrong. *See* Dkt. 268 at 24; *L.G.M.L.*, 2025 WL 2671690, at *15 n.9 (holding that the OBBB does not "overcome the very strong presumption that appropriation acts do not substantively change existing law" (internal citation omitted)); *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 190 (1978) (doctrine disfavoring repeals by implication applies with "even *greater* force" where claimed repeal is appropriations legislation). But the upshot is that the Government now claims an entitlement to use the UAC Processing Pathway Advisal to coerce voluntary departure of *any* unaccompanied minor while in CBP custody. This evidence strongly suggests that, like in 1984 and 1985 when the Court first enjoined INS's coercive voluntary departure policies, unaccompanied children have been and will be coerced into unknowing and involuntary waivers of rights.

In sum, the UAC Processing Pathway Advisal suffers from many of the same flaws that the Government ascribes to the Form I-770, all while being overtly threatening, misleading, and coercive during a window of time in which unaccompanied children are particularly vulnerable. CBP's advisal violates the injunction's prohibition on "attempt[ing] to persuade or dissuade class members when informing them of the availability of voluntary departure." *Perez-Funez I*, 611 F. Supp. at 1005. And because it undermines unaccompanied children's Due Process

11

rights, its use violates the permanent injunction even if the Government technically complied with some aspects of that order by, for example, also providing Form I-770 to the unaccompanied child. *See Epic Games, Inc. v. Apple, Inc.*, 2025 WL 3548683, at *7 (9th Cir. Dec. 11, 2025) (emphasizing that courts can "find a breach of the decree in a violation of the spirit of the injunction, even though its strict letter may not have been disregarded" and it is "proper to observe the objects for which the relief was granted" (internal citation omitted)). Modification of the injunction is justified to explicitly bar the advisal's use and clarify the Government's obligations to unaccompanied children. *See A&M Recs., Inc. v. Napster*, 284 F.3d 1091, 1098 (9th Cir. 2002) (district courts possess "wide discretion to modify an injunction based on changed circumstances" (internal citation omitted)); *see Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945) (noting that Courts should clarify injunctions as necessary to apply them to concrete situations that arise after the injunctions' issuance).

Plaintiffs accordingly request that the Court immediately modify the injunction to prohibit the use of CBP's "UAC Processing Pathway Advisal" document—or any similarly improper advisals—on its own or in combination with Form I-770 for class members.

## II.    The Court Should Permit Plaintiffs to Conduct Limited Post-Judgment Discovery

Limited post-judgment discovery is warranted for two reasons. First, Plaintiffs have already raised significant questions as to the Government's compliance with the injunction. But tailored discovery is justified to evaluate the extent of this noncompliance—the outcome of which could bear on both the Government's request to terminate and the necessity of additional modifications to or enforcement of the injunction. Second, both the Government and Plaintiffs have moved under Rule 60(b)(5) for modifications of the injunction based on changed factual circumstances. Dkt. 250 at 17–19; *supra* Section I. Narrow discovery will enable the

Court to better assess the on-the-ground facts that will shape any appropriate modifications.

### A. Standard of Review

Courts apply a "permissive" standard when deciding whether to allow post-judgment discovery to determine compliance with a court order. *Fraihat v. U.S. Immigr. & Customs Enf't*, 2020 WL 2758553, at \*5 (C.D. Cal. May 15, 2020). The "kind and amount of evidence of noncompliance required to justify discovery is, necessarily, considerably less than that needed to show actual noncompliance." *Leavitt*, 523 F.3d at 1034. A movant who requests permission to engage in discovery to assess compliance with an injunction need only establish that the request might generate information that "could raise significant questions concerning compliance." *Id.*

Additionally, a proper Rule 60(b)(5) analysis "should include further factual findings" about whether changed circumstances warrant relief. *Horne*, 557 U.S. at 461. As such, reasonable and tailored post-judgment discovery may be warranted. *See, e.g.*, *Rutherford v. Baca*, 2009 WL 10653011, at \*2 (C.D. Cal. Aug. 4, 2009), *clarified on denial of reconsideration*, 2009 WL 10653010 (C.D. Cal. Sep. 22, 2009) ("Where parties seek to terminate or modify a consent decree or injunction, for example, post-judgment discovery or hearings may be warranted."). Courts routinely consider evidence to determine what are appropriate modifications to injunctions. *See, e.g.*, *Warren v. City of Chico*, 2025 WL 974068, at \*9–13 (E.D. Cal. Mar. 31, 2025) (assessing evidentiary materials submitted with the City's Rule 60(b)(5) motion, including declarations and incident reports); *Coleman v. Brown*, 922 F. Supp. 2d 1004, 1035–43 (E.D. Cal. 2013) (discussing the requirement to submit "compelling evidence" to establish significantly changed circumstances and assessment Defendant's evidentiary submission); *Ms. L. v. U.S. Immigr. & Customs Enf't*, 2025 WL 2590329, at \*2–3 (S.D. Cal. July 24, 2025) (evaluating parties' evidentiary submission when considering Rule 60(b)(5) motion).

**B. Tailored Discovery Is Necessary to Assess the Government's
Compliance with the Injunction**

Limited post-judgment discovery is warranted to assess the Government's compliance with the injunction. Courts' inherent authority to monitor prior orders "extends to allowing post judgment discovery to aid the court in determining whether a party has complied with the order." *Fraihat*, 2020 WL 2758553, at *3 (citing *Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444, 1449 (9th Cir. 1991)). Under the "significant questions" standard, courts routinely hold that plaintiffs' sworn declarations are sufficient to raise significant questions concerning a defendant's compliance with a court order. *See id.* at *5 (holding that two declarations were sufficient to raise significant questions of noncompliance); *Damus v. Nielsen*, 328 F.R.D. 1, 3–4 (D.D.C. 2018) (practitioner affidavits and other evidence warranted discovery regarding compliance with court order); *Franco-Gonzalez v. Wolf*, 2020 WL 12688334, at *2–3 (C.D. Cal. Jan. 10, 2020) (holding that the experiences of four detainees were sufficient to show non-compliance with court order). Plaintiffs' declarations from legal services providers and unaccompanied children along with other evidence of noncompliance satisfy this standard.

Plaintiffs' declarations demonstrate the Government's noncompliance or possible noncompliance with the injunction along several fronts. Most obviously, and as described above, the use of the "UAC Processing Pathway Advisal" document raises significant questions about the Government's compliance with the permanent injunction, particularly given its rejection of Plaintiffs' proposed limited discovery requests concerning that document.[5] *See Leavitt*, 523 F.3d at 1036

---

[5] On December 4, 2025, as part of conferring regarding the present motion, Plaintiffs delivered to the Government's counsel a copy of the proposed discovery requests that seek, in part, additional information about the use of the "UAC Processing Pathway Advisal." Exh. 5. The Government objected to answering these requests voluntarily. Plaintiffs now seek leave to conduct reasonable discovery similar in

(government entity's refusal to respond to post-judgment requests for production made it clear that opposing party "could not come forward with further evidence of noncompliance without an order authorizing discovery").

There is also evidence suggesting that the Government has pursued other policies aimed at expediting the removal of unaccompanied children. For example, in October 2025, DHS began an unprecedented effort to pay unaccompanied children up to $2,500 to accept voluntary departure. Exh. 7 at ¶ 12 (Decl. of Emily Norman). The TVPRA requires that voluntary departure be provided to unaccompanied children from non-contiguous countries "at no cost to the child," so the payment cannot be characterized as a stipend. 8 U.S.C. § 1232(a)(5)(D)(ii). Just weeks earlier, in August of 2025, the Government attempted to expel dozens of unaccompanied children in the middle of the night on a holiday weekend under the guise of "repatriation" to Guatemala and to parents who had supposedly sought their return. *L.G.M.L.*, 2025 WL 2671690 at *1. The Government's justification "crumbled like a house of cards" within days, and a district court preliminarily enjoined the removal of these unaccompanied children as a violation of 8 U.S.C. § 1232(a)(5)(D), the TVPRA provision codifying fundamental procedural protections for unaccompanied children from non-contiguous countries. *Id*. at *1, *12.

Substantial evidence also indicates that, in recent months, the Government implemented a pilot program in the Rio Grande Valley area of Texas whereby unaccompanied children from non-contiguous countries are encouraged by immigration officials to "voluntarily" return within the brief 72-hour period before they are transferred to ORR custody. Exh. 6 at ¶ 5 (Decl. of Fisher Flores). Legal service providers in the Rio Grande Valley are not able to access unaccompanied children in CBP custody, and the Government's implementation of its novel

scope to the proposed requests, but accounting for additional factual developments that may warrant modification.

interpretation of the OBBB takes place outside of any oversight from Immigration Judges. *Id*. at ¶ 14; Dkt. 250 at 16 (describing the OBBB as "provid[ing] the ability for [unaccompanied children] to withdraw their application for admission before being placed into removal proceedings").

In this context, children describe being pressured into accepting return under circumstances that fall far short of a knowing and voluntary waiver of rights. Exh. 6 at ¶¶ 6–15. One unaccompanied child from Guatemala was threatened with a taser and dogs by immigration officials during apprehension. Exh. 9 at ¶ 3 (Decl. of D.A.T.M.).[6] Later, while a type of detention facility commonly referred to as the "hielera," or "icebox," due to its temperature, the child was informed he would stay detained if he declined to return voluntarily to Guatemala. *Id*. at ¶¶ 4–5. He understood that when the immigration official told him he would be detained, it would be in the detention center. *Id*. He did not understand his rights to seek relief in Immigration Court and was told he needed to make a decision "now," while in CBP custody. *Id*. at ¶¶ 5–6. He signed voluntary return paperwork because he did not feel he had another option. *Id*. at ¶ 6. Another unaccompanied child from Honduras was apprehended after suffering injuries in a serious car accident and questioned by immigration officials while in pain. Exh. 10 at ¶¶ 7–13 (Decl. of Y.Y.Z.O.). She was informed that her options were to voluntarily return to Honduras or remain in a shelter until age 18, when she would be removed. *Id*. at ¶ 15. She was yelled at and told forcefully told that she had to sign documents approving voluntary return, so she did. *Id*. at ¶¶ 17–19. Other unaccompanied children also report the voluntary return form as being filled out incorrectly and their articulations of fear of return being ignored. Exh. 6 at ¶ 9. In total, legal services providers in the Rio Grande Valley area of Texas are aware of 13 cases in which unaccompanied children from non-contiguous countries were subject to voluntary return procedures in CBP

---

[6] The declarations of D.A.T.M. and Y.Y.Z.O. are submitted in accordance with Fed. R. Civ. P. 5.2(a).

custody, *id*. at ¶ 10, but they cannot access any unaccompanied minors in CBP custody. *Id*. at ¶ 14. These cases may represent a small fraction of unaccompanied children who are denied protections of the TVPRA and the Court's injunction.

Legal service providers have intervened to withdraw purported acceptance of voluntary return for unaccompanied children from non-contiguous countries whose waivers were unknowing and involuntary. *See* Exh. 6 at ¶¶ 6, 12–13. But the Government's unlawful and patently cruel practices have persisted. For instance, legal services providers in the Rio Grande Valley are aware of 13 cases in which unaccompanied children from non-contiguous were processed for expedited voluntary return while in CBP custody. *Id*. at ¶ 10. And as the UAC Processing Pathway Advisal makes clear, return may happen within the brief 72-hour period before the child is transferred to ORR custody and before they are afforded the TVPRA's protections, including access to counsel. Exh. 1 at 6 ("You have the option to voluntarily return to your country of origin, and you can return within 72 hours."); 45 C.F.R. § 410.1309(a), (a)(2)(v) (requiring, *inter alia*, legal consultation within 10 business days of transfer to ORR custody).

Additional tailored discovery will illuminate the breadth and details of the Government's pilot program, its use of the UAC Processing Pathway Advisal, and other efforts to encourage voluntary departure. Plaintiffs' existing evidence indicates that the UAC Processing Pathway Advisal violates the permanent injunction, *see supra* Section I, and at least suggests that the Government's other activities may constitute violations of the TVPRA, the permanent injunction, or both. *See, e.g.*, *Perez-Funez I*, 611 F. Supp. at 1005 (barring the Government from "attempt[ing] to persuade or dissuade class members when informing them of the availability of voluntary departure"). Discovery regarding potential noncompliance is particularly essential here because it could not only justify enforcement or modification of the injunction, *see infra* Section II.C., but also undermine the Government's motion to terminate the injunction. *See Precision Instrument Mfg. Co. v. Auto. Maint. Mach.*

17

*Co.*, 324 U.S. 806, 814–15 (1945) (explaining that parties seeking relief in equity must "come with clean hands" and "have acted fairly and without fraud or deceit as to the controversy in issue"). These "significant questions" regarding the Government's noncompliance are sufficient to justify the limited discovery Plaintiffs seek. *Leavitt*, 523 F.3d at 1034.

### C. Tailored Discovery Is Necessary to Assess the Government's Rationales for Seeking Termination of the Injunction and Determine Appropriate Modifications

Courts routinely consider evidence to determine what modifications to injunctions are appropriate. *See, e.g.*, *Coleman*, 922 F. Supp. 2d at 1035–43; *Ms. L.*, 2025 WL 2590329 at *2–3. Discovery is warranted to assist the Court in making its determination of whether a modification is warranted based on the factual changes and legal developments cited by the Government, and, if so, what modification is suitably tailored to the changed circumstances. *See, e.g.*, *Rutherford*, 2009 WL 10653011, at *2.

For example, the Government claims federal agencies have increased "technological capacity" to provide advisals that might better overcome language and literacy barriers to ensuring that unaccompanied children receive the procedural safeguards to which they are entitled. Dkt. 250 at 17. But it provides no concrete information on how it would use that technology to satisfy Due Process requirements. Indeed, evidence indicates that unaccompanied children in CBP custody may only receive CBP's new written advisal, which fails to adequately explain the rights of unaccompanied children and encourages them to accept return to their home countries.[7] Exh. 1 at 6; Exh. 2 at ¶ 10.

---

[7] At the time of the entry of the permanent injunction, Plaintiffs advocated for the use of a videotape advisal, and Judge Rafeedie strongly considered it, but ultimately it was deemed "administratively burdensome." *Perez-Funez II*, 619 F. Supp. at 667. Certainly, technological advancements in the past 40 years may impact the feasibility of providing similar multi-media advisals. For example, the Government adopted

As discussed above, there is also substantial evidence of the Government's actual and potential noncompliance with the permanent injunction in recent months. *See supra* Sections I.B., II.B. Authorization of post-judgment discovery will aid the Court in its determination of whether suitably tailored modifications of the injunction in response to these changed factual circumstances are appropriate. For instance, it may be that the Government's recent tactics justify reinstitution of the prohibition on "employ[ing] threats, misrepresentations, subterfuge, or other forms of coercion" that was a part of the preliminary injunction in this case but was eliminated before the permanent injunction's entry. *See Perez-Funez II*, 619 F. Supp. at 670.

Finally, limited discovery is also warranted to determine whether modification of declaratory relief issued in this case is appropriate. The Court's 1985 opinion entered declaratory relief stating that the "original INS procedures" were unconstitutional. *Id.* at 669. Limited discovery will help the Court to fully understand the scope of the Government's current practices regarding removal of unaccompanied minors, which in turn may justify issuance of updated declaratory relief. Such a modification may be warranted in any event, but would be particularly important if the Court agrees with the Government's contention that injunctive relief is barred by 8 U.S.C. § 1252(f)(1).[8] *See* Dkt. 250 at 11–12.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' cross-motion and modify the permanent injunction to prohibit the use of

---

regulations that permit the use of "video presentation[s] concerning the rights and responsibilities of undocumented children in the immigration system" once they reach ORR custody. 45 C.F.R. § 410.1309(a)(2)(i).

[8] To be clear, Plaintiffs vigorously contest this erroneous argument. *See* Dkt. 268 at 10–16. But were the Court to deem injunctive relief unavailable, modifying the declaratory relief would be even more essential to ensuring that the Government complies with the Due Process protections owed to unaccompanied minors.

CBP's "UAC Processing Pathway Advisal" document with unaccompanied children—or any similarly improper advisals—on its own or in combination with Form I-770. Plaintiffs further respectfully request that the Court grant Plaintiffs' motion for leave to conduct discovery.

DATED: January 6, 2026

*/s/ Mark Rosebaum*

Mark Rosenbaum (CA SBN # 59940)
Amanda Mangaser Savage (CA SBN # 325996)
Rebecca Brown (CA SBN # 345805)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
mrosenbaum@publiccounsel.org
asavage@publiccounsel.org
rbrown@publiccounsel.org

Gilbert Paul Carrasco (CA SBN # 90838)
900 Pacific Coast Highway, Suite # 305
Huntington Beach, CA 92648-4863
Telephone: (503) 990-4879
carrasco@willamette.edu

Adam B. Wolfson (CA SBN # 262125)
Paulina Slagter (CA SBN # 318559)
Quinn Emanuel Urquhart & Sullivan LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
adamwolfson@quinnemanuel.com
paulinaslagter@quinnemanuel.com

Peter McGraw*
Kevin Siegel*
NATIONAL IMMIGRATION LAW CENTER
1121 14th Street, Suite 200
Washington, D.C. 20005
Telephone: (213) 639-3900
Fax: (213) 639-3911
mcgraw@nilc.org
siegel@nilc.org

Richard A. Koffman**

21

Alex Bodaken**
Nina L. Haug**
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave., NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 408-4600
rkoffman@cohenmilstein.com
abodaken@cohenmilstein.com
nhaug@cohenmilstein.com

Diane Kee***
COHEN MILSTEIN SELLERS & TOLL PLLC
100 N. 18th St., Suite 1820
Philadelphia, PA 19103
Telephone: (267) 479-5700
dkee@cohenmilstein.com

*Counsel for Plaintiffs*

*Admitted *pro hac vice*

** Application for *pro hac vice* admission submitted

*** Application for *pro hac vice* admission forthcoming

22

## CERTIFICATE OF COMPLIANCE

I, Peter McGraw, certify that the Memorandum of Points and Authorities contains 6,103 words and complies with the word limit of Local Rule 11-6.1.

DATED: January 6, 2026.

/s/ Peter McGraw
Peter McGraw
NATIONAL IMMIGRATION LAW CENTER
1121 14th Street, Suite 200
Washington, D.C. 20005
Telephone: (213) 639-3900
Fax: (213) 639-3911
mcgraw@nilc.org

23

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2026, I caused a copy of Plaintiffs' Cross-Motion to Modify Injunction and Motion for Leave to Conduct Discovery to be served by email to the following counsel by filing the same with the Court's electronic filing system:

ZACHARY CARDIN
Trial Attorney
United States Department of Justice
Office of Immigration Litigation
Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington DC 20044
(202) 802-3410
zachary.a.cardin@usdoj.gov

Dated: January 6, 2026                    *Peter McGraw*
                                          Peter McGraw

24