BRETT A. SHUMATE
Assistant Attorney General
DREW C. ENSIGN
Deputy Assistant Attorney General
Civil Division
TYLER BECKER
Counsel to the Assistant Attorney General
WILLIAM C. SILVIS
Assistant Director
MICHAEL CELONE
Senior Litigation Counsel
ZACHARY A CARDIN
OLEKSIY ISAEV
Trial Attorney
United States Department of Justice
Office of Immigration Litigation – General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
202-802-3410
Zachary.a.cardin@usdoj.gov
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jose Antonio PEREZ-FUNEZ; *et al.*, | Case No. CV 81-1457-ER |
| Plaintiffs, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TERMINATE PERMANENT INJUNCTION AND ADVISAL ORDER** |
| v. | |
| U.S. Department of Homeland Security, *et al.*, | Hearing Date: February 9, 2026<br>Time: 10:00AM |
| Defendants. | Place: Courtroom 5A, First Street Courthouse<br>Honorable Michael W. Fitzgerald<br>United States District Judge |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

I.    ARGUMENT ...............................................................................................2

    A.  8 U.S.C. § 1252(f)(1) AND *ALEMAN GONZALEZ* COUNSEL IN FAVOR OF

        VACATING THE INJUNCTION ...........................................................2

    B.  The TVPRA and OBBB Constitute Intervening Changes in Law That Justify

        Termination of the Injunction ................................................................9

    C.  Defendants' Termination Request Is Timely .........................................13

    D.  Relevant Factual and Legal Changes Displace the Equitable Purpose of the

        Injunction ..............................................................................................14

CONCLUSION.........................................................................................................16

# TABLE OF AUTHORITIES
## CASES

*Agostini v. Felton*,

    521 U.S. 203 (1997)...............................................................................................3

*Al Otro Lado v. EOIR*,

    138 F.4th 1102 (9th Cir. 2025) ............................................................................7

*California ex rel. Becerra v. EPA*,

    978 F.3d 708 (9th Cir. 2020) ..................................................................... 3, 9, 10

*Flores v. Lynch*,

    828 F.3d 898 (9th Cir. 2016) ...............................................................................9

*Flores v. Rosen*,

    984 F.3d 720 (9th Cir. 2020) ...............................................................................9

*Galvez v. Jaddou*,

    52 F.4th 821 (9th Cir. 2022) ....................................................................... 4, 5, 6

*Garland v. Aleman Gonzalez*,

    596 U.S. 543 (2022)...................................................................................... passim

*Gonzalez v. U.S. Immigration & Customs Enforcement*,

    975 F.3d 788 (9th Cir. 2020) ...............................................................................7

*Kelly v. Wengler*,

    822 F.3d 1085 (9th Cir. 2016) ...........................................................................15

*RAICES v. Noem,*

   793 F. Supp. 3d 19 (D.D.C. 2025)................................................................................7

*Rufo v. Inmates of Suffolk Cty. Jail,*

   502 U.S. 367 (1992)................................................................................ 10, 15

*United Farm Workers v. Noem,*

   785 F. Supp. 3d 672 (E.D. Cal. 2025) ............................................................7, 8

*United States v. Holtzman,*

   762 F.2d 720 (9th Cir. 1985) ............................................................................13

**STATUTES**

8 U.S.C. § 1225................................................................................................4, 8

8 U.S.C. § 1225(a)(4)......................................................................................5, 11

8 U.S.C. § 1229c ............................................................................................4, 5

8 U.S.C. § 1231 ................................................................................................8

8 U.S.C. § 1232................................................................................................5, 11

8 U.S.C. § 1252(f)(1) ................................................................................ 2, 3, 6, 9

8 U.S.C. § 1357................................................................................................7

8 U.S.C. § 1357(a) ............................................................................................8

8 U.S.C. §§ 1221–1231................................................................................4, 5

U.S.C. §§ 1221–1232................................................................................5

**INTRODUCTION**

The Government's Rule 60(b) motion seeks relief that is both legally necessary and practically modest: permission to discontinue a decades-old, court-ordered advisal mechanism that has been superseded by governing law, operational realities, and modern statutory protections. Contrary to Plaintiffs' portrayal, the Government does not seek to dismantle statutory safeguards for unaccompanied alien children or evade legal obligations. Rather, it seeks to terminate a specific judicial remedy—the Form I-770 advisal—that was fashioned to address a legal and factual landscape that no longer exists.

Continued enforcement of this extra-statutory requirement is not necessary to remedy the due process concerns that animated this litigation in the 1980s. Today, unaccompanied alien children are afforded robust protections through the Trafficking Victims Protection Reauthorization Act ("TVPRA") and the One Big Beautiful Bill ("OBBB"). Consequently, the injunction's ongoing operation serves no remedial purpose; it improperly intrudes upon the Executive Branch's authority to administer immigration laws in accordance with congressional mandates. Rule 60(b) exists precisely to prevent outdated judicial remedies from ossifying into permanent constraints on lawful government action. Because the Form I-770 requirement no longer addresses a current legal violation and conflicts with the modern statutory framework, this Court should grant Defendants' motion and terminate this injunction.

1

## I.   ARGUMENT

Termination under Rule 60(b) is essential to align this Court's orders with controlling Supreme Court precedent and Congress's intervening changes to the Immigration and Nationality Act ("INA"). This Court's decades-old injunction is now obsolete for four distinct reasons. *First*, termination is warranted under Rule 60(b)(4) or 60(b)(5) because 8 U.S.C. § 1252(f)(1) strips this Court of jurisdiction to maintain class-wide restraints on the INA's inspection and removal provisions at issue. *Second*, termination is warranted under Rule 60(b)(5) because the enactment of the TVPRA and the OBBB has created a comprehensive statutory regime that occupies the field, displacing the statutory vacuum the injunction was designed to fill. *Third*, the motion to terminate is timely because it addresses the cumulative, prospective effect of these evolving legal obligations, which now render the injunction fundamentally inconsistent with federal law. *Fourth*, the synergy between these statutory changes and the Government's modernized intake and processing operations confirms that the injunction's equitable purpose has been fully satisfied, making termination the only suitably tailored remedy.

### A.   8 U.S.C. § 1252(f)(1) AND *ALEMAN GONZALEZ* COUNSEL IN FAVOR OF VACATING THE INJUNCTION.

Rule 60(b) relief is warranted with respect to this Court's permanent injunction and advisal because the Court lacks jurisdiction to enjoin Defendants under 8 U.S.C. § 1252(f)(1). The Supreme Court's decision in *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022), has resolved any doubt that § 1252(f)(1) divests this Court of jurisdiction to restrain the operation of the enforcement and processing

2

provisions in the INA. Relief is thus warranted (1) under Rule 60(b)(5) due to a change in decisional and statutory law and/or under Rule 60(b)(4) for lack of jurisdiction. Indeed, "[a] court errs [under Rule 60(b)(5)] when it refuses to modify an injunction or consent decree in light of" "changes in either statutory or decisional law." *Agostini v. Felton*, 521 U.S. 203, 215 (1997); *see California ex rel. Becerra v. EPA*, 978 F.3d 708, 713-15 (9th Cir. 2020) (where a "new statute … remove[s] the legal basis for the continuing application of the court's Order," petitioners are "entitled … to relief under Rule 60(b)(5)") (cleaned up).

Section 1252(f)(1) states that "[r]egardless of the nature of the action or claim …, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." As a result, § 1252(f)(1) divests lower federal courts of authority to enjoin or restrain the operation of the detention and removal provisions of the INA, including those under which the government processes class members. In 2022, the *Aleman Gonzalez* Court held that "§ 1252(f)(1) generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Aleman Gonzalez*, 596 U.S. at 550; *id.* at 551 ("[I]njunctive relief on behalf of an entire class of aliens is not allowed because it is not limited to remedying the unlawful 'application' of the relevant statutes to 'an individual alien.'").

3

Section 1252(f)(1) codifies section 242(f)(1) of the INA, which refers to "the provisions of chapter 4 of title II" of the INA (as amended by IIRIRA), i.e., sections 231 through 244 of the INA, 8 U.S.C. §§ 1221–1231. *See Galvez v. Jaddou*, 52 F.4th 821, 830 (9th Cir. 2022). These sections include the sources of ICE's and CBP's authority to detain and process class members, specifically 8 U.S.C. § 1229c (voluntary departure) and 8 U.S.C. § 1225 (inspection and withdrawal of application for admission).

This Court's injunction, and its continued enforcement, is precisely the type of class-wide order § 1252(f)(1), as confirmed by *Aleman Gonzalez*, precludes. It is a class-action that "restrain[s] the operation" of the INA—specifically, the provisions relating to voluntary departure (codified at 8 U.S.C. § 1229c) and the inspection and processing of aliens (codified at 8 U.S.C. § 1225). This Court's injunction restrains the operation of these provisions by imposing affirmative, extra-statutory procedural hurdles that Defendants must clear before they can carry out the voluntary departure provisions for any member of the plaintiff class.

Plaintiffs attempt to evade this jurisdictional bar by arguing that the injunction operates solely on the TVPRA or the Constitution, and that any effect on the INA is merely "collateral." Opp. at 17–22. This argument fails because it ignores the injunction's text and the statutory reality of immigration processing. While the TVPRA undoubtedly provides a framework for the treatment of unaccompanied children, the actual legal mechanisms by which a child may be returned to their home country are voluntary departure under 8 U.S.C. § 1229c, and the withdrawal of an application for admission, under 8 U.S.C. § 1225(a)(4). Both § 1229c and § 1225

4

are indisputably located within the exact range of statutes that § 1252(f)(1) insulates from class-wide judicial restraint: part IV of Subchapter II of the INA, which encompasses 8 U.S.C. §§ 1221–1232. *Galvez*, 52 F.4th at 830-31.

The injunction explicitly precludes Defendants from using § 1229c or § 1225 to return a class member to their country of origin unless Defendants first comply with non-statutory procedures mandated by this Court. By conditioning the operation of 8 U.S.C. §§ 1225(a)(4) and 1229c's statutory provisions on judicial requirements, the injunction "restrain[s] the operation" of § 1252(f)(1)'s covered provisions. *Aleman Gonzalez*, 596 U.S. at 550.

Plaintiffs argue that the injunction is immune from § 1252(f)(1) because it supposedly "does not 'enjoin or restrain the operation of' a covered provision of the INA." Opp. at 17. They contend that the injunction only enforces the TVPRA. Plaintiffs rely on *Galvez v. Jaddou*, 52 F.4th 821 (9th Cir. 2022), to argue that "[t]hat conclusion disposes of the Government's remedial-bar argument because … the TVPRA is not covered by Section 1252(f)(1)." Opp. at 19.

Plaintiffs' reliance on *Galvez* is misplaced. There, the Ninth Circuit upheld an injunction enforcing statutory adjudication deadlines for Special Immigrant Juvenile ("SIJ") status found within 8 U.S.C. § 1232 itself. The court reasoned that because the provisions currently enacted under § 1232 were not codified at the time of § 1252(f)(1)'s promulgation, they could not fall under one of the "specified provisions" listed, meaning the § 1252(f)(1) bar did not apply. *Id*. at 829–30. And what's more, the injunction at issue in *Galvez* merely enforced a timeline for a benefit derived from a non-covered statute; it did not restrict the Government's

5

ability to remove or return aliens under 8 U.S.C. § 1252(f)(1)'s covered statutory scheme.

Here, conversely, the injunction impedes the operation of §§ 1225 and 1229c by conditioning voluntary departure and the withdrawal of an application for admission on procedural mandates. The fact that the TVPRA also governs unaccompanied alien children does not grant a court license to hamper the INA's underlying return authorities.

Plaintiffs next argue that § 1252(f)(1) is inapplicable because the injunction is "premised not on statutory law of any kind, but rather on the Fifth Amendment and the process due to unaccompanied children." Opp. at 18. They suggest that "the presumption that the judiciary may address constitutional claims" allows the injunction to survive. *Id.* at 18 n.7. Plaintiffs' argument is squarely foreclosed by *Aleman Gonzalez*, which held that § 1252(f)(1) is a limit on the remedial authority of lower courts, not a limit on the types of legal claims (i.e., statutory vs. constitutional) that can be brought. The Court explained that while § 1252(f)(1) generally prohibits class-wide injunctive relief, it does not bar individual relief. *See* 596 U.S. at 551. Section 1252(f)(1) therefore effectively strips courts of jurisdiction to issue a specific type of remedy—a class-wide order restraining the operation of covered provisions—regardless of whether the remedy stems from statutory or constitutional concerns. It does not deny a forum for raising such claims on an individual basis, rendering Plaintiffs' invocation of the presumption that the judiciary may address constitutional claims irrelevant. *See* Opp. at 18 n.7.

Finally, Plaintiffs argue that even if the injunction impacts covered provisions, those impacts are merely "collateral" and thus permissible. Opp. at 21 (citing *Al Otro Lado v. EOIR*, 138 F.4th 1102, 1125 (9th Cir. 2025)). They contend that "[n]umerous courts have applied this doctrine where an injunction has potential 'downstream effects on removal proceedings.'" Opp. at 21 (quoting *RAICES v. Noem*, 793 F. Supp. 3d 19, 107 (D.D.C. 2025)). Plaintiffs rely on *Gonzalez v. U.S. Immigration & Customs Enforcement*, 975 F.3d 788 (9th Cir. 2020), and *United Farm Workers v. Noem*, 785 F. Supp. 3d 672 (E.D. Cal. 2025) ("*UFW*"), in support for this contention. Neither case supports maintaining the injunction.

To start, the Ninth Circuit in *Gonzalez* considered an injunction regarding immigration detainers, holding that § 1252(f)(1) did not apply because the authority to issue detainers flows from 8 U.S.C. § 1357, a provision located in Part IX of the INA, and thus outside the scope of § 1252(f)(1)'s jurisdiction-stripping provisions. *Gonzalez*, 975 F.3d at 812-14. Indeed, the Ninth Circuit reasoned that enjoining § 1357 detainers did not directly restrain the operation of removal proceedings under §§ 1221–1231, even if it had some downstream effect. *Id*.

The injunction at issue here does not regulate a preliminary enforcement action, such as a detainer, for which statutory authority lies outside the provisions included under § 1252(f)(1)'s jurisdictional bar. Rather, the injunction here regulates the processing of the individual for return under §§ 1229c and 1225 – both of which are subject to § 1252(f)(1)'s jurisdictional bar. The injunction here thus has a *direct* effect on these sections, not a "collateral" one.

7

Plaintiffs similarly cite *UFW* for the proposition that an injunction is not prohibited "even if there may be collateral effects upon a provision covered by Section 1252(f)(1)." Opp. at 22 (quoting *UFW*, 785 F. Supp. 3d at 705–06). *UFW* involved a challenge to "suspicionless stops" and "warrantless arrests" by Border Patrol agents—actions primarily governed by the Fourth Amendment and 8 U.S.C. § 1357(a). *UFW*, 785 F. Supp. 3d at 705–06. The court in *UFW* concluded that enjoining unconstitutional stops was permissible because the injunction targeted the stop itself, not the subsequent removal proceeding. *Id.* The injunction here, however, targets the adjudication and processing phase of enforcement actions, dictating Defendants' procedural processes within the context of § 1229c voluntary departure and withdrawal of application for admission under § 1225. This is not a distinct "upstream" function of removal as in *UFW*, but a function of the return process itself.

Plaintiffs' assertion that "[t]he injunction here is thus categorically distinct from the classwide relief … in *Aleman Gonzalez*," Opp. at 18, is therefore misplaced. In *Aleman Gonzalez*, the plaintiffs sought to impose a requirement— bond hearings—that was not explicitly prescribed in 8 U.S.C. § 1231. The Supreme Court held that the lower court could not "order federal officials to take . . . actions that (in the Government's view) are not required by [the statute]." 596 U.S. at 551. That is precisely what this Court's injunction imposes: it orders Defendants to take actions  not required by § 1225 or § 1229c before those statutes can operate.

In sum, because the injunction directly restrains the operation of the specific statutory provisions Congress insulated from class-wide judicial review under

8 U.S.C. § 1252(f)(1), this Court would have lacked jurisdiction to issue it today as to the class, making continued enforcement of the injunction no longer equitable.

**B.     The TVPRA and OBBB Constitute Intervening Changes in Law That Justify Termination of the Injunction**

Plaintiffs mischaracterize both the Government's argument and the governing Rule 60(b)(5) standard. The Government does not contend that the TVPRA or the OBBB "validate conduct the injunction prohibits" in isolation. *See* Opp. at 23. Rather, the Government has demonstrated that Congress enacted a comprehensive statutory framework governing the processing, advisal, and disposition of unaccompanied alien children that now occupies the field previously regulated by the Court's 1985 injunction, and thus enforcing the injunction is no longer equitable.

Plaintiffs base their entire opposition on the wrong legal standards. *First*, Plaintiffs contend that "the Government must show that compliance with the injunction has become 'impermissible'" to justify vacating the injunction because of a change in the law. Opp. at 23 (quoting *Flores v. Lynch*, 828 F.3d 898, 909–10 (9th Cir. 2016)). But that is the standard for vacating or modifying a bargained-for *consent decree* due exclusively to a change in the law, not a court-ordered *injunction*—as Plaintiffs' own cited cases make clear. *See Flores*, 828 F.3d at 909–10 (discussing standard for modifying a "consent decree"); *California*, 978 F.3d at 714, 719 n.7 (distinguishing standards for modifying consent decrees versus injunction based on changes in the law); *see also Flores v. Rosen*, 984 F.3d 720, 741 (9th Cir. 2020) (government must show that new "statutes make legal what the [consent] decree was designed to prevent" to argue a change in law itself warrants

9

termination). Even if this Court were considering termination of a consent decree, Plaintiffs' standard would be too high. Where a change in the law does not expressly contradict the terms of a consent decree, courts can still consider the change in determining whether the continued enforcement of such a decree remains equitable. It just may not be the *exclusive* reason for modifying a decree, given that consent decrees are the product of a bargained-for exchange. *See Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 389 (1992); *see id.* at 390 ("acknowledging that "while a decision that clarifies the law will not, in and of itself, provide a basis for modifying a decree, it could constitute a change in circumstances that would support modification" under certain circumstances). *Third*, Plaintiffs assert that a change in the law can only justify modifying an injunction when the new law "permit[s] what was previously forbidden." Opp. at 23 (quoting *California*, 978 F.3d at 719). Plaintiffs miss that their own case includes that as one basis for modifying an injunction based on a change in law, but not the exclusive basis for doing so. *See California*, 978 F.3d at 719-20 (providing examples where injunctions should be modified, including "a shift in the legal landscape that removes the basis for an order").

Contrary to Plaintiffs' claims, Rule 60(b)(5) relief is appropriate where an *injunction* has been rendered obsolete because subsequent legislation has displaced the legal predicates on which it rested—even if the statutes do not expressly authorize conduct once forbidden. The relevant inquiry is whether continued enforcement of the injunction remains equitable in light of intervening law, not whether Congress has explicitly repudiated each provision of the decree.

Plaintiffs claim the TVPRA "does not validate conduct that the injunction prohibits," but make no argument that enforcing the injunction remains equitable in light of the TVPRA's changes. Any such argument is thus waived. To the extent Plaintiffs' arguments can be characterized otherwise, they fail. Plaintiffs attempt to characterize the TVPRA as merely codifying return procedures for certain children but ignore the statute's broader effect. The TVPRA established detailed, mandatory rules governing screening, advisals, access to counsel, custody transfers, and removal proceedings for unaccompanied children. 8 U.S.C. § 1232. Where Congress has enacted a comprehensive statutory regime addressing the same subject matter as an injunction, the statute supplants the need for court-imposed procedural rules by prescribing binding federal standards and continued judicial supervision premised on pre-statutory equitable assumptions is no longer warranted.

Plaintiffs likewise misinterpret the role of the OBBB. The Government does not argue that the OBBB silently repeals the TVPRA or authorizes conduct forbidden by statute. Rather, the OBBB reflects Congress's contemporary judgment regarding the scope and funding of DHS's processing and withdrawal authority under existing law. Congress's decision to appropriate funds specifically for withdrawals pursuant to 8 U.S.C. § 1225(a)(4) confirms that such authority is operative and expected to be exercised within the statutory framework Congress has established. That Congress acted through appropriations does not render those actions legally irrelevant for Rule 60(b)(5) purposes; to the contrary, appropriations are a core mechanism by which Congress implements statutory policy. The Government's position rests not on repeal by implication, but on the reality that

Congress has affirmatively structured and funded a regime that now governs the same conduct the injunction sought to regulate decades earlier.

Plaintiffs are similarly incorrect that Rule 60(b)(5) relief requires the Government to show that regulations "permit what the injunction forbids." *See* Opp. at 9. The Government does not assert that regulations alone justify termination, nor that rulemaking can override a court order. Instead, the regulations underscore that Congress's statutory framework is being implemented through ordinary administrative processes that further diminish the need for judicially imposed procedural mandates. The injunction was intended to fill a statutory vacuum; that vacuum no longer exists. Plaintiffs' arguments regarding Form I-770 and alleged regulatory noncompliance go to operational disputes, not to whether the injunction's equitable purpose remains necessary in light of intervening law. Rule 60(b)(5) does not require the Government to demonstrate a "durable remedy" to every asserted implementation concern where Congress itself has supplied the governing legal framework.

Lastly, Plaintiffs' reliance on Form I-770 and the *Flores* Settlement Agreement is misplaced. Disputes over the continued use of a particular form or compliance with separate settlement obligations do not determine whether the injunction itself remains necessary or equitable under Rule 60(b)(5). Defendants' request for termination rests on changed law, not on unilateral regulatory action or operational preferences. Plaintiffs' position improperly freezes the injunction in time and treats congressional action as legally irrelevant unless it expressly authorizes prohibited conduct. Because the TVPRA, together with the OBBB, constitutes a

comprehensive and controlling statutory scheme governing the advisal, processing, and disposition of unaccompanied children, the equitable premises underlying the injunction have been displaced and termination is warranted.

### C.    Defendants' Termination Request Is Timely

Plaintiffs' assertion that Defendants' Rule 60(b)(5) motion is untimely is meritless. *See* Opp. at 26. While Rule 60(b)(5) motions must be brought within a "reasonable time," that inquiry focuses on whether the party delayed effectively asserting its rights after the grounds for relief became apparent, not merely on the calendar age of the statutes involved. *See United States v. Holtzman*, 762 F.2d 720, 725 (9th Cir. 1985). The Government's motion relies on the cumulative effect of statutory developments—TVPRA and OBBB—that have fundamentally altered the legal landscape governing treatment of unaccompanied children.

Plaintiffs' focus on the enactment date of the TVPRA is myopic. The Government does not rely on that statute in isolation, but on its operation in conjunction with subsequent congressional action that has created overlapping and redundant obligations. The "reasonable time" analysis in institutional reform litigation is not a rigid statute of limitations; it must account for the evolving nature of the statutory scheme. Timeliness is therefore properly measured from the point at which the cumulative weight of these legislative changes rendered the injunction undeniably obsolete, including the recent OBBB.

Finally, Plaintiffs' reliance on "finality" and asserted prejudice is unavailing. Opp. at 26. The principle of finality applies with far less force to prospective injunctions, which remain subject to the continuing supervisory power of the Court.

13

Rule 60(b)(5) exists precisely to ensure that such decrees do not continue to bind the Executive Branch after changes in law render them inconsistent with congressional will. Plaintiffs identify no cognizable prejudice beyond the loss of a decree that no longer reflects current law. Because the Government moved within a reasonable time to align this Court's order with the controlling statutory framework, the motion is timely.

### D. Relevant Factual and Legal Changes Displace the Equitable Purpose of the Injunction

Plaintiffs assert that factual changes alone cannot justify termination because Rule 60(b)(5) relief requires a "significant and unanticipated change in factual conditions" and is warranted only in rare circumstances. Opp. at 27. This argument misapplies the standard, however. Rule 60(b)(5) requires the Court to consider whether changed circumstances—both factual and legal—have displaced the equitable rationale underlying the injunction, not whether every operational change was arguably foreseeable. Here, the synergy between statutory developments (the TVPRA and OBBB) and updated operational practices (centralized recordkeeping, interagency coordination, and modern intake procedures) has rendered the equitable purpose of the 1985 injunction obsolete.

Plaintiffs next dismiss the Government's evidence of technological and operational modernization as "conclusory." *See* Opp. at 17–19. This argument, too, ignores the reality that these factual developments are the practical implementation of intervening law, not merely minor procedural tweaks. Modern intake and adjudication procedures exist precisely because of the statutory framework Congress

established through the TVPRA and the funding authorized by the OBBB. These operational changes are inseparable from the statutory changes; together, they confirm that the injunction's pre-statutory equitable rationale—ensuring notice and protections that did not otherwise exist—has been supplanted.

Finally, Plaintiffs' contention that termination is not "suitably tailored" to changed circumstances is incorrect. *See* Opp. at 29 (quoting *Rufo*, 502 U.S. at 383; *Kelly v. Wengler*, 822 F.3d 1085, 1098 (9th Cir. 2016)). Termination is the only suitably tailored remedy where a court order duplicates or conflicts with a comprehensive statutory scheme. Granting the motion eliminates judicially imposed requirements that are now redundant while leaving in place all substantive obligations mandated by Congress in the TVPRA and OBBB. Maintaining the injunction would impose unnecessary judicial oversight without providing additional protection to children not already secured by federal statute.

The factual developments, viewed in conjunction with the legal changes, fundamentally displace the injunction's original equitable purpose. And this Court's remedial authority in this context has been significantly altered by subsequent statutory and decisional law. Because the Government has demonstrated that continued enforcement is no longer equitable, termination is warranted under Rule 60(b).

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' motion to terminate the permanent injunction and advisal order.

15

DATED: January 20, 2026                    Respectfully submitted,

                                           BRETT A. SHUMATE
                                           Assistant Attorney General

                                           DREW C. ENSIGN
                                           Deputy Assistant Attorney General
                                           Civil Division

                                           TYLER BECKER
                                           Counsel to the Assistant Attorney General

                                           WILLIAM C. SILVIS
                                           Assistant Director

                                           MICHAEL CELONE
                                           Senior Litigation Counsel

                                           OLEKSIY ISAEV
                                           Trial Attorney

                                           s/ Zachary Cardin
                                           ZACHARY CARDIN
                                           Trial Attorney
                                           United States Department of Justice
                                           Civil Division
                                           Office of Immigration Litigation
                                           P.O. Box 868, Ben Franklin Station
                                           Washington, DC 20044
                                           (202) 802-3410
                                           Zachary.a.cardin@usdoj.gov

                                           *Attorneys for Defendants*

16