Mark Rosenbaum (CA SBN # 59940)
Amanda Mangaser Savage (CA SBN # 325996)
Rebecca Brown (CA SBN # 345805)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
mrosenbaum@publiccounsel.org
asavage@publiccounsel.org
rbrown@publiccounsel.org

*Listing of counsel continued on following page*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jose Antonio PEREZ-FUNEZ, *et al*., <br><br> Plaintiffs, <br><br> vs. <br><br> U.S. Department of Homeland Security, *et al*., <br><br> Defendants. | Case No.: CV 81-1457-MWF(Ex) <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF CROSS-MOTION TO MODIFY INJUNCTION AND MOTION FOR LEAVE TO CONDUCT DISCOVERY** <br><br> Date: February 9, 2026 <br> Time: 10:00 a.m. <br> Place: Courtroom 5A, First Street Courthouse <br> Judge: Honorable Michael W. Fitzgerald |

i

Gilbert Paul Carrasco (CA SBN # 90838)
900 Pacific Coast Highway, Suite # 305
Huntington Beach, CA 92648-4863
Telephone: (503) 990-4879
carrasco@willamette.edu

Adam B. Wolfson (CA SBN # 262125)
Paulina Slagter (CA SBN # 318559)
Quinn Emanuel Urquhart & Sullivan LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
adamwolfson@quinnemanuel.com
paulinaslagter@quinnemanuel.com

Peter McGraw*
Kevin Siegel*
NATIONAL IMMIGRATION LAW CENTER
1121 14th Street, Suite 200
Washington, D.C. 20005
Telephone: (213) 639-3900
Fax: (213) 639-3911
mcgraw@nilc.org
siegel@nilc.org

Richard A. Koffman*
Alex Bodaken*
Nina L. Haug*
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave., NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 408-4600
rkoffman@cohenmilstein.com
abodaken@cohenmilstein.com
nhaug@cohenmilstein.com

Diane Kee*
COHEN MILSTEIN SELLERS & TOLL PLLC
100 N. 18th St., Suite 1820

Philadelphia, PA 19103
Telephone: (267) 479-5700
dkee@cohenmilstein.com

*Counsel for Plaintiffs*

*Admitted *pro hac vice*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................2

   I.    The Government's Use of the UAC Processing Pathway Advisal Violates
the Injunction, Which Should be Modified or Clarified as Necessary to Prevent
the Advisal's Usage. ...........................................................................2

   II.   Additional Discovery Is Warranted, as No "Purely Legal" Issue Can Resolve
the Motions. ......................................................................................9

CONCLUSION ....................................................................................13

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Castañon-Nava v. U.S. Dep't of Homeland Sec.*,
 161 F.4th 1048 (7th Cir. 2025) ...................................................................8

*Douglas v. Bank of Am., N.A.*,
 2020 WL 6799010 (W.D. Wash. Nov. 19, 2020)............................................10

*Fraihat v. U.S. Immigr. & Customs Enf't*,
 2020 WL 2758553 (C.D. Cal. May 15, 2020)..................................................9

*Garcia Ramirez v. U.S. Immigr. and Customs Enf't*,
 2025 WL 3563183 (D.D.C. Dec. 12, 2025) ....................................................6

*Gilmore v. California*,
 2009 WL 5218049 (N.D. Cal. Dec. 29, 2009)................................................12

*Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*,
 774 F.3d 935 (9th Cir. 2014) .........................................................................7

*Kelly v. Wengler*,
 822 F.3d 1085 (9th Cir. 2016) .......................................................................9

*L.G.M.L. v. Noem*,
 800 F. Supp. 3d 100 (D.D.C. 2025)............................................................4, 8

*Orantes-Hernandez v. Gonzales*,
 504 F. Supp. 2d 825 (C.D. Cal. 2007) ......................................................12, 13

*Perez-Funez v. Dist. Dir., I.N.S.* (*Perez-Funez I*),
 611 F. Supp. 990 (C.D. Cal. 1984) .......................................................1, 2, 4, 10

*Perez-Funez v. Dist. Dir., I.N.S.* (*Perez-Funez II*),
 619 F. Supp. 656 (C.D. Cal. 1985) ........................................................*passim*

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
 324 U.S. 806 (1945)....................................................................................11

*Rodman v. Safeway, Inc.*,
 2016 WL 5791210 (N.D. Cal. Oct. 4, 2016) .................................................10

*Salazar by Salazar v. District of Columbia*,

    896 F.3d 489 (D.C. Cir. 2018) ....................................................................8, 9

**Statutes**

8 U.S.C. § 1182(a)(9)(A) ........................................................................................7

8 U.S.C. § 1232(a)(1) .............................................................................................2

8 U.S.C. § 1232(a)(2)(A)(iii) ...............................................................................12

8 U.S.C. § 1232(b)(3) ...........................................................................................12

8 U.S.C. § 1232(a)(5)(D)(ii) ..................................................................................7

8 U.S.C. § 1232(c)(2)(A) .......................................................................................5

8 U.S.C. § 1252(f)(1) ...........................................................................................13

8 U.S.C. § 1327 ......................................................................................................5

One Big Beautiful Bill Act § 100051(8) ...............................................................11

Trafficking Victims Protection Reauthorization Act ......................................11, 12

**Other Authorities**

45 C.F.R. § 410.1003(f) .........................................................................................5

Fed. R. Civ. P. 60(b) ..............................................................................................8

**INTRODUCTION**

Moving to terminate the injunction in this case, the Government represented that it shared Plaintiffs' goal of providing unaccompanied minors the "understanding" of their rights that "the injunction was intended to guarantee." Dkt. 250 at 17. But the Government insisted that the injunction's strictures tied its hands, preventing it from "develop[ing] new policies to address the changes in immigration to the United States." *Id.* at 21. The Government had no desire to "persuade or dissuade class members when informing them of the availability of voluntary departure," as the injunction prohibits. *Perez-Funez v. Dist. Dir., I.N.S.* (*Perez-Funez I*), 611 F. Supp. 990, 1005 (C.D. Cal. 1984). It merely wished for more flexibility in informing unaccompanied children of their rights.

That flimsy artifice has failed to withstand even the slightest scrutiny. Confronted by Plaintiffs' cross-motion and accompanying exhibits, the Government now concedes that, *since September of last year*, it has been using a "UAC Processing Pathway Advisal," which threatens unaccompanied children with "prolonged" detention and the criminal prosecution of sponsors if the child so much as "indicate[s] a fear of returning to [their] country." Dkt. 269-1 at PDF p. 6; Dkt. 277 at ¶ 4. Having made no mention of the new advisal in its motion to terminate, the Government now insists that these advisals do not violate the injunction because they "accurately reflect[] current law and factual realities." Dkt. 276 at 4. Not so. In fact, the Government has breached the injunction's plain commands: the UAC Processing Pathway Advisal misleads unaccompanied children and clearly seeks to persuade class members to accept voluntary return. That the Government *also* provides the Form I-770 required by applicable law, moreover, cannot eliminate the coercion created by the new advisal's use. This ongoing violation constitutes a significant change in factual circumstances warranting modification of the injunction to prohibit use of the Government's UAC Processing Pathway Advisal or any similar document.

1

The Government's opposition to Plaintiffs' cross-motion also strengthens the case for additional tailored discovery. After all, it was only through the filing of Plaintiffs' motion that the UAC Processing Pathway Advisal's widespread use came to light. There's little telling what more discovery may reveal about the document and its usage, particularly in light of the Government's unlawful pilot program depriving unaccompanied children from non-contiguous countries of statutory protections designed to ensure safe repatriation. 8 U.S.C. § 1232(a)(1). Additionally, tailored discovery is warranted to determine the extent of the Government's violations of the injunction, as well as to assess whether additional modifications are warranted based on what the Government concedes are mixed questions of fact and law affecting the equitable nature of the injunction. Contra the Government's contentions, no purely legal issue can resolve either the Government's motion to terminate or Plaintiffs' cross-motion. As a result, this Court should permit limited discovery in addition to modifying the injunction.

## ARGUMENT

I. **The Government's Use of the UAC Processing Pathway Advisal Violates the Injunction, Which Should be Modified or Clarified as Necessary to Prevent the Advisal's Usage.**

The permanent injunction prohibits the Government from "in any way attempt[ing] to persuade or dissuade class members when informing them of the availability" of voluntary return procedures. *Perez-Funez I*, 611 F. Supp. at 1005; *Perez-Funez v. Dist. Dir., I.N.S.* (*Perez-Funez II*), 619 F. Supp. 656, 669-70 (C.D. Cal. 1985) (making the preliminary injunction permanent). This is to alleviate the "inherently coercive" and "stressful" environment that class members face during encounters with immigration officials. *Perez-Funez II*, 619 F. Supp. at 662.

The permanent injunction was crafted to satisfy class members' due process rights as efficiently as possible and functioned without issue for forty years. To avoid undue persuasion of children, the Court ordered the Parties to confer with experts

2

and prepare a simplified rights advisal to be provided to class members. *Perez-Funez II*, 619 F. Supp. at 670.  The Parties attempted to reach an agreement on the language of the advisal, but were unable to do so. Exh. 1 at 1 (Dkt. 231).[1] Separate proposals were submitted to the Court. *Id*. The Court consolidated and modified the Parties' proposals and, on February 20, 1986, ordered the Parties to show cause why the Court's proposed simplified rights advisal should not be used. *Id*. at 1. The Court entered another Order on February 20, 1986, following the Government's request to clarify the permanent injunction. Exh. 2 (Dkt. 232). In its Order to Show Cause, the Court found that a "shorter advisal is preferable" to a longer one, because expert testimony demonstrated that children would be "more likely" to recall the information. Exh. 1 at 2 (Dkt. 231). The Court rejected the presentation of additional information because it "would only leave minors more confused about what to do, rather than less so." *Id*. The Court anticipated that the law would change and proposed an advisal that would ensure basic due process for all class members. *Id*. at 3 ("[T]he law is constantly changing and not easy to understand even for skilled lawyers and judges. . . . [T]he court would rather a minor with an unmeritorious claim get a hearing than a minor with a meritorious case inadvertently sign the voluntary departure form.").

Plaintiffs and the Government submitted briefing in response to the Court's Order to Show Cause on April 25, 1986. Exhs. 3 (Dkt. 238) & 4 (Dkt. 239). On May 16, 1986, the Court entered the Order Re Advisal, which the Government now seeks to terminate, adopting the simplified rights advisal that is presently incorporated into Form I-770, and ordering the Government to "comply with the Order of this court, 619 F. Supp. at 670, as supplemented by the Order of February 20, 1986" and the Order Re Advisal. Exh. 5 at 2-3 (Dkt. 240). For decades, well after codification of

---

[1] Each exhibit submitted with this reply is an order or brief from this litigation or otherwise publicly available and is provided as an attachment for the convenience of the Court and Parties.

laws the Government now points to as requiring termination, the Government used the language of the Court's simplified rights advisal without seeking modification. Dkt. 269-3; Dkt. 250 at 6.

Then, in approximately September 2025, just as another district court was enjoining its unprecedented effort to unlawfully remove Guatemalan unaccompanied children in the middle of the night, *see L.G.M.L. v. Noem*, 800 F. Supp. 3d 100 (D.D.C. 2025), the Government began providing new advisals to unaccompanied children. Dkt. 276 at 2; Dkt. 277 at ¶ 4; Dkt. 269-1 at PDF p. 6 ("UAC Processing Pathway Advisal"). The Government made no effort to inform the Court or class counsel of the new advisal. It did not seek modification of the 1986 Order Re Advisal or any form of advance judicial approval. In November 2025, when the Government moved to terminate the 1985 permanent injunction and 1986 Order Re Advisal for their purported inconsistency with the "*actual* procedural pathway" available to unaccompanied children, it declined to inform the Court of the newly adopted advisal or submit the UAC Processing Pathway Advisal to the Court to support its position that a new advisal is needed to "ensur[e] that children understand their rights." Dkt. 250 at 16-17 (emphasis in original). The Government went so far as to promise the use of some form of advisal "if the injunction is lifted," without disclosing to the Court that it began using a new advisal months earlier, in September 2025. *Id*. at 13.

The reason for the Government's evasive presentation is clear. U.S. Customs and Border Protection's ("CBP") UAC Processing Pathway Advisal violates the Court's permanent injunction, including the longstanding prohibition on efforts to persuade or dissuade class members to submit to voluntary return. *Perez-Funez I*, 611 F. Supp. at 1005; *Perez-Funez II*, 619 F. Supp. at 669-70.

Contrary to the Government's claim, the UAC Processing Pathway Advisal does *not* consist of "information regarding potential processing pathways" available to unaccompanied children. Dkt. 276 at 2. Rather, it contains inaccurate, retaliatory

language that seeks to persuade children to accept voluntary return. On its face, for example, the advisal informs class members that, "[i]f [they] choose to seek a hearing with an immigration judge or indicate a fear of returning to [their] country, [they] can expect" that their "sponsor may be subject to criminal prosecution for aiding [their] illegal entry." Dkt. 269-1 at PDF p. 6. A child's decision after entering the United States to seek a hearing or express fear of returning to their home country has no relationship to the crime of "aiding … illegal entry." *See* 8 U.S.C. § 1327. The Government has no reason to link the child's decision to the threat of criminal prosecution of sponsors except to persuade class members to relinquish their rights. Moreover, based on the Government's submission, immigration officials apparently threaten criminal prosecution regardless of whether factual support for the commission of a crime exists. *See* Dkt. 277 at ¶ 4. The Government's characterization of the new advisal as merely serving an "[i]nformational [p]urpose" is patently false. Dkt. 276 at 2.

Moreover, the UAC Processing Pathway Advisal intentionally misleads class members by informing them that they should "expect" prolonged detention if they so much as "indicate a fear of returning to [their] country." Dkt. 269-1 at PDF p. 6 ("*You will be detained* in the custody of the United States Government, *for a prolonged period of time*.") (emphasis added). This is legally inaccurate and cannot be reconciled with Congress's instruction to place unaccompanied children "in the least restrictive setting that is in the best interest of the child," 8 U.S.C. § 1232(c)(2)(A), or federal regulations requiring the same. 45 C.F.R. § 410.1003(f) ("In making placement determinations, [the Office of Refugee Resettlement ("ORR")] shall place each unaccompanied child in the least restrictive setting that is in the best interests of the child."). The threat of legally unjustified prolonged detention persuades exceptionally vulnerable unaccompanied children to accept voluntary return. *See, e.g.*, Dkt. 269-9 at ¶ 5; Dkt. 269-6 at ¶¶ 12, 13.

The fact that the UAC Processing Pathway Advisal is provided to unaccompanied children as a so-called "supplemental advisal" with Form I-770 only adds to the risk that children will be confused and persuaded to submit to voluntary return. Dkt. 276 at 3. In accordance with the Court's Order re Advisal, Form I-770 straightforwardly informs class members that, if they seek a hearing, an Immigration Judge will decide whether they "must leave or whether [the child] may stay in the United States." Exh. 5 at Attach. A (Dkt. 240); *see also* Dkt. 269-3. CBP's UAC Processing Pathway Advisal directly contradicts this information, warning children that, if they "turn 18 years of age while in U.S. Government custody, [they] *will be* turned over to Immigration and Customs Enforcement for removal (deportation) from the United States," apparently removing the Immigration Judge from the removal determination altogether. Dkt. 269-1 at PDF p. 6 (emphasis added). This, of course, explains why unaccompanied children feel they have no choice but to accept voluntary return. *See, e.g.,* Dkt. 269-10 at ¶¶ 15, 19; Dkt. 269-6 at ¶ 13.

The Government now contends that it can simply supplement Form I-770, which incorporates the court-ordered simplified advisal, with inaccurate information of its choosing. Dkt. 276 at 4 (describing the new advisal as "supplemental to Form I-770"). But this ignores the proceedings underlying the injunction that the Government seeks to terminate. Dkt. 250 at 1 (seeking termination of the 1986 Order Re Advisal); *Garcia Ramirez v. U.S. Immigr. and Customs Enf't*, 2025 WL 3563183, at *7 (D.D.C. Dec. 12, 2025) ("In determining compliance with an order, the Court is guided not only by the text of that order but also by its related opinions."). The Court ordered the use of a simplified rights advisal intentionally, relying on expert testimony and findings that children would be more likely to recall a simplified advisal and that additional information risks leaving class members "more confused about what to do, rather than less so."[2] Exh. 1 at 2 (Dkt. 231). Moreover, the

---

[2] CBP's new advisal regarding administrative consequences and visa eligibility is a perfect example of a complex legal concept that is likely to leave class members

Government cannot avoid violating the injunction by "hewing to the narrow letter of the injunction" while "simultaneously ignoring its spirit[.]" *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 954 (9th Cir. 2014). Providing unaccompanied children with Form I-770 while simultaneously providing the misleading information in the UAC Processing Pathway Advisal violates the letter and spirit of the injunction.

The Government now purports that CBP agents "generally" provide the advisals in the UAC Processing Pathway Advisal "orally." Dkt. 277 at ¶ 4. This circumvents accountability, preventing advocates from knowing precisely what information unaccompanied children have been provided. *See* Dkt. 269-6 at ¶ 14 (explaining that legal service providers are not able to access unaccompanied children in CBP custody). And the Court already found that immigration officials cannot advise children adequately. *Perez-Funez II*, 619 F. Supp. at 664 ("[T]he fact remains that the agents are also the arresting or detaining officers and thus are in an adversary position *vis-à-vis* the children.") (citing *In re Gault*, 387 U.S. 1, 35-36

---

more confused about the consequences of their decisions rather than less so. Exh, 1 at 2 (Dkt. 231). The UAC Processing Pathway Advisal states: "If you choose to voluntarily return to your country, there will be no administrative consequence, and you will still have the opportunity to apply for a visa, through legal means, in the future." Dkt. 269-1 at PDF p. 6. It is unclear what "administrative consequence" the Government refers to, but the statutory prohibitions on admission and visa eligibility for noncitizens who were previously removed are also time limited, 8 U.S.C. § 1182(a)(9)(A) (imposing temporary bars on visa eligibility), so even if a child receives a removal order, they could still "apply for a visa, through legal means, in the future." Dkt. 269-1 at PDF p. 6. Furthermore, CBP's advisal presents the option of voluntary return as if it must be made within the 72-hour period before a child is transferred to ORR custody, *id*., and omits that children remain eligible for voluntary departure even if they seek a hearing before an Immigration Judge. 8 U.S.C. § 1232(a)(5)(D)(ii). Contrary to the Government's characterization, CBP's new advisal does not "accurately and in plain terms" inform children about "potential future processes" and is wholly inconsistent with the Court's permanent injunction. Dkt. 276 at 5.

7

(1967)). If the Government actually intended to provide vulnerable children with accurate information to "ensur[e] that children understand their rights," Dkt. 250 at 17, then it would not have clandestinely debuted the advisal. Instead, it would have obtained advance approval for the advisal and given children the advisal in writing so that they can, for example, review the information with an adult over the phone. *See, e.g.*, Exh. 2 at 3 (Dkt. 232) ("It may be helpful for the minor to have the [voluntary departure form] so that (s)he may refer to it while speaking with an adult."). But providing accurate information is not the Government's intention. *See, e.g.*, *L.G.M.L.*, 800 F. Supp. 3d at 128 (concluding that the Government's conduct does not "inspire confidence that they themselves are convinced that they have the authority to proceed as they would like"). Instead, the Government seeks to persuade children to relinquish their rights in violation of the Court's permanent injunction. That is a substantial violation of a court order, which constitutes a significant change in factual circumstances justifying modification of the order. *See* Dkt. 269 at 9; *see also Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1059-60 (7th Cir. 2025). The Government does not contend otherwise. *See generally* Dkt. 276. Plaintiffs seek relief under Rule 60(b) in order to "enforce the terms of the injunction" and obtain its "intended result." *Salazar by Salazar v. District of Columbia*, 896 F.3d 489, 498 (D.C. Cir. 2018) (while the majority of Rule 60(b) motions are "filed by the *enjoined* party," these motions remain available to plaintiffs seeking to "prevent evasion and ensure effectuation" of the original injunction) (quoting *United States v. W. Elec. Co.*, 46 F.3d 1198, 1202 (D.C. Cir. 1995)).

A narrowly tailored order prohibiting the Government from using the advisals in the newly adopted UAC Processing Pathway Advisal on their own or in combination with Form I-770 will return Plaintiffs and the Government "as nearly as possible to where they would have been absent the changed circumstances." *Kelly v. Wengler*, 822 F.3d 1085, 1098 (9th Cir. 2016) (cleaned up); *see also Salazar*, 896

F.3d at 498 (a suitably tailored modification "should do no more" than is necessary
to "resolve the problems created by the change in circumstances") (quoting *Rufo v.
Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 391 (1992)). Plaintiffs respectfully
request that the Court enter such an order and, for reasons set out below, authorize
additional discovery to determine whether further modification is appropriate.

## II.    Additional Discovery Is Warranted, as No "Purely Legal" Issue Can Resolve the Motions.

As explained in Plaintiffs' cross-motion, courts routinely permit discovery to
determine whether termination or modification of an injunction is appropriate. *See*
Dkt. 269 at 13 (collecting cases). Seeking to evade this established caselaw, the
Government argues that "discovery is unnecessary when the motion rests on 'purely
legal' issues." Dkt. 276 at 6 (quoting *United States v. Twitter, Inc.*, 2023 WL
8007994, at \*7 (N.D. Cal. 2023)). That contention both ignores the existence of
Plaintiffs' cross-motion and mischaracterizes the Government's own arguments.

To start, the Government's focus on the issues raised in *its* motion to terminate
ignores Plaintiffs' cross-motion entirely. As noted above and in the cross-motion,
Plaintiffs demonstrate the Government's ongoing noncompliance or possible
noncompliance with the injunction, including "the Government's pilot program, its
use of the UAC Processing Pathway Advisal, and other efforts to encourage
voluntary departure." Dkt. 269 at 17; *see also id.* at 14-18 (further detailing possible
violations of the injunction "along several fronts"). Plaintiffs' allegations and
declarations—now bolstered by the Government's admission to widespread, secret
use of the noncompliant UAC Processing Pathway Advisal—in and of themselves
justify limited discovery. *See Fraihat v. U.S. Immigr. & Customs Enf't*, 2020 WL
2758553, at \*3 (C.D. Cal. May 15, 2020) (explaining that "[a] district court should
give careful attention to a request for discovery to establish noncompliance with one
of its judgments," and that the "standard for allowing discovery" in such
circumstances "is permissive") (citing *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d

1025, 1034 (9th Cir. 2008)). Indeed, that the Government's Opposition, Dkt. 276, was the first instance in which it admitted to the new advisal's existence itself suggests that further discovery would be illuminating and helpful in assessing the Government's compliance with this Court's order. *Cf. Rodman v. Safeway, Inc.*, 2016 WL 5791210, at *2 (N.D. Cal. Oct. 4, 2016) (the existence of "highly relevant" and "newly-disclosed documents" justified "additional discovery"); *Douglas v. Bank of Am., N.A.*, 2020 WL 6799010, at *8 (W.D. Wash. Nov. 19, 2020) (finding that "newly disclosed . . . declarations" warranted "additional discovery").

Even setting aside Plaintiffs' cross-motion, moreover, the Government errs in contending that its own motion "rests on 'purely legal' issues." Dkt. 276 at 6 (quoting *Twitter*, 2023 WL 8007994, at *7); *see id.* (admitting that Defendants seek termination of the injunction *primarily* for legal reasons). To the contrary, discovery is necessary to properly resolve many *factual* questions presented by the Government's termination motion, starting with issues surrounding the UAC Processing Pathway Advisal. Although the advisal's plain text violates the injunction, the precise details of how and when the advisal have been used are not yet known. For example, when issuing the injunction, the Court thoroughly considered the order in which advisals should be provided to unaccompanied children. *See Perez-Funez I*, 611 F. Supp. at 1005 (prohibiting immigration officials from informing class members of "the availability of voluntary departure . . . until such [official] has" provided certain verbal and written advisals to the child); *Perez-Funez II*, 619 F. Supp. at 670 (requiring simplified rights advisal be "read and provided to class members in the same manner as the previous advisal"). The Government does not specify whether the new advisal is delivered before or after the Form I-770, and thus the extent to which its use violates the injunction is not yet fully known.

Moreover, given the Government's simultaneous implementation of the violative new advisal and its pilot program—purportedly authorized by

10

appropriations in § 100051(8) of the One Big Beautiful Bill Act ("OBBB"), *see* Dkt. 250 at 9—in which unaccompanied children from non-contiguous countries are subjected to voluntary return contrary to protections in the Trafficking Victims Protection Reauthorization Act ("TVPRA"), additional discovery concerning Defendants' treatment of vulnerable class members from non-contiguous countries during the past several months is justified. *See Perez-Funez II*, 619 F. Supp. at 662-63 (describing the great risk of erroneous deprivation "especially with respect to class members who are . . . not permanent residents of Mexico or Canada"). At the very least, given the new advisal's overtly misleading information and the inherently coercive environment that unaccompanied children face in CBP detention, discovery is needed to assess the Government's entitlement to termination. *See Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945) (parties seeking equitable relief must "come with clean hands" and "have acted fairly and without fraud or deceit as to the controversy in issue").

Other factual questions likewise remain, as the Government's presentation does nothing to shed light on the relevance of vague allusions to "factual developments" that allegedly "supplant[]" the injunction's core purposes. Dkt. 275 at 14-15. For instance, it is far from clear why factual changes such as "centralized recordkeeping, interagency coordination, and modern intake procedures" have purportedly "rendered the equitable purpose of the 1985 injunction obsolete." Dkt. 275 at 14. And the Government's assertion that other on-the-ground changes mean that Form I-770 "no longer serves as an effective or realistic method of advisal," Dkt. 250 at 17, can only be tested through discovery that elucidates what factual changes or procedures supposedly create barriers to continued compliance with the injunction.

To be sure, the Government's motion also invokes legal arguments. But its "conten[tion] that no discovery is needed for resolution of the 'primarily legal' issues presented in the motion to terminate" relies on "an artificial distinction" between

11

facts and law. *Gilmore v. California*, 2009 WL 5218049, at *2 (N.D. Cal. Dec. 29, 2009). Indeed, the Government's briefing on both motions repeatedly makes clear that its purported rationales for termination involve a "synergy between" statutory and factual changes. Dkt. 275 at 2; *see* Dkt. 250 at 18-19 (arguing that "changes in immigration law . . . compound the operational changes" cited by the Government); Dkt. 275 at 15 (emphasizing that "[t]hese operational changes are inseparable from the statutory changes"); Dkt. 276 at 7 (arguing that "substantial legal changes" mixed with "changes to the structure and operations" of immigration officials renders the injunction inequitable).

In particular, the Government highlights the injunction's impact on operations required by the TVPRA. Dkt. 250 at 18. It claims the Court's simplified advisal "cannot accommodate the complexities of modern intake operations" in which unaccompanied children "mov[e] rapidly between facilities" and are "transferred to child-friendly facilities in HHS custody" where they receive protection after the child is "placed into removal proceedings." *Id*. Limited discovery is needed to properly assess how the advisal to unaccompanied children should change, if at all, to remain equitable and ensure children's ability to make independent decisions about whether to seek relief from removal in the United States or accept voluntary return, particularly during the 72-hour period before they reach ORR custody. 8 U.S.C. §§ 1232(a)(2)(A)(iii), 1232(b)(3); *see, e.g.*, *Orantes-Hernandez v. Gonzales*, 504 F. Supp. 2d 825, 870 (C.D. Cal. 2007), *aff'd sub nom. Orantes-Hernandez v. Holder*, 321 F. App'x 625 (9th Cir. 2009) (explaining that the court granted the plaintiffs' requests for discovery on the Government's motion to dissolve an injunction related to the detention and removal of immigrants from El Salvador to assess whether detention practices "serve to isolate the detainees and increase the coercive nature of the atmosphere they confront"); *see also* Exh. 6 at 8 (order issued in *Orantes-Hernandez v. Gonzales* granting discovery related to the Government's motion to dissolve an injunction to assess the Government's claims that "the

requirements of the *Orantes* injunction make it burdensome for the government to place Salvadorans in expedited removal, and to their claim that changes in standards have obviated the need for the protections afforded by the *Orantes* injunction").

Finally, although the Government does not label it as such, perhaps the closest to a "purely legal" issue raised by its motion is the argument that 8 U.S.C. § 1252(f)(1) requires the injunction's termination. *See* Dkt. 250 at 11-12. As Plaintiffs have explained, that meritless argument is foreclosed by Ninth Circuit precedent. Dkt. 268 at 17-22. Most relevant here, however, is that Plaintiffs have requested limited discovery to support modified declaratory relief protecting unaccompanied children's constitutional rights, in the event the Court accepts the Government's Section 1252(f)(1) argument. Dkt. 269 at 19. Facts regarding the Government's recent treatment of unaccompanied children, particularly children from non-contiguous countries who have been subjected to voluntary return procedures under the Government's flawed interpretation of the OBBB, are required to properly shape the scope of such relief. So, the Section 1252(f)(1) remedial-bar issue is not itself "potentially dispositive," and resolving it in the Government's favor would not allow the Court to resolve Plaintiffs' cross-motion "absent additional discovery." Dkt. 276 at 7.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' cross-motion and modify the permanent injunction to prohibit the use of CBP's "UAC Processing Pathway Advisal" document, orally or in its written form, on its own or in combination with Form I-770. Plaintiffs further request that the Court grant Plaintiffs' motion for leave to conduct targeted discovery.

DATED: January 27, 2026

*/s/ Mark Rosenbaum*
Mark Rosenbaum (CA SBN # 59940)
Amanda Mangaser Savage (CA SBN # 325996)
Rebecca Brown (CA SBN # 345805)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone: (213) 385-2977
mrosenbaum@publiccounsel.org
asavage@publiccounsel.org
rbrown@publiccounsel.org

Gilbert Paul Carrasco (CA SBN # 90838)
900 Pacific Coast Highway, Suite # 305
Huntington Beach, CA 92648-4863
Telephone: (503) 990-4879
carrasco@willamette.edu

Adam B. Wolfson (CA SBN # 262125)
Paulina Slagter (CA SBN # 318559)
Quinn Emanuel Urquhart & Sullivan LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Fax: (213) 443-3100
adamwolfson@quinnemanuel.com
paulinaslagter@quinnemanuel.com

Peter McGraw*
Kevin Siegel*
NATIONAL IMMIGRATION LAW CENTER
1121 14th Street, Suite 200
Washington, D.C. 20005
Telephone: (213) 639-3900
Fax: (213) 639-3911
mcgraw@nilc.org
siegel@nilc.org

Richard A. Koffman*
Alex Bodaken*
Nina L. Haug*
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave., NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 408-4600
rkoffman@cohenmilstein.com
abodaken@cohenmilstein.com
nhaug@cohenmilstein.com

Diane Kee*
COHEN MILSTEIN SELLERS & TOLL PLLC
100 N. 18th St., Suite 1820
Philadelphia, PA 19103
Telephone: (267) 479-5700
dkee@cohenmilstein.com

*Counsel for Plaintiffs*

*Admitted *pro hac vice*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that this brief

contains 4,328 words, which complies with the word limit of Local Rule 11-6.1.

DATED: January 27, 2026

/s/ Peter McGraw
Peter McGraw
NATIONAL IMMIGRATION LAW
CENTER
1121 14th Street, Suite 200
Washington, D.C. 20005
Telephone: (213) 639-3900
Fax: (213) 639-3911
mcgraw@nilc.org

16

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2026, I caused a copy of Plaintiffs' Reply in Support of Cross-Motion to Modify Injunction and Motion for Leave to Conduct Discovery to be served by email to the following counsel by filing the same with the Court's electronic filing system:

ZACHARY CARDIN
Trial Attorney
United States Department of Justice
Office of Immigration Litigation
Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington DC 20044
(202) 802-3410
zachary.a.cardin@usdoj.gov

Dated: January 27, 2026                    *Peter McGraw*
                                           Peter McGraw

17