# EXHIBIT 6

Order Granting Plaintiffs' request for Limited Discovery on Expedited Removal

*Orantes-Hernandez, et al. v. Gonzales, et al.*, CV 82-01107 MMM (VBKx)

Aug. 21, 2006

P SEND

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

Case No.   CV 82-01107 MMM (VBKx)                              Date   August 21, 2006

Title   *Orantes-Hernandez, et al. v. Gonzales, et al.*

Present: The Honorable   MARGARET M. MORROW

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:**   **Order Granting Plaintiffs' Request For Limited Discovery On Expedited Removal And Setting A Telephonic Status Conference For August 31, 2006**

Plaintiffs filed this action in 1982, challenging practices and procedures allegedly employed by the Immigration and Naturalization Service ("INS") to detain, process and remove Salvadoran nationals who had entered the United States. Plaintiffs sued on their own behalf and on behalf of a certified class of "all citizens and nationals of El Salvador eligible to apply for political asylum . . . who have been or will be taken into custody . . . by agents of the [INS]; or . . . subsequent to June 2, 1980, requested or will in the future request, political asylum in the United States whose claims have not yet been presented or adjudicated." *Orantes-Hernandez v. Smith*, 541 F.Supp. 351, 354-55 (C.D. Cal. 1982).

On April 29, 1988, Judge David Kenyon entered a permanent injunction that mandated INS use of specific procedures when detaining, processing and removing Salvadoran immigrants. See *Orantes-Hernandez v. Meese*, 685 F.Supp. 1488, 1511-13 (C.D. Cal. 1988), aff'd., 919 F.2d 549 (9th Cir. 1990). On July 2, 1991, Judge Kenyon issued a modified permanent injunction, which added four conditions that applied solely to the Port Isabel Service Processing Center in Port Isabel, Texas ("*Orantes* injunction"). On September 28, 2004, the court entered a stipulated order clarifying the terms of the injunction to eliminate the possibility that the Office of Refugee Settlement, an agency responsible for the care of unaccompanied alien children who are in federal custody due to their immigration status, could be held in violation of the *Orantes* injunction.

(#770)

DOCKETED ON CM

AUG 2 2 2006

BY bb ꞓₐ AH  018

Plaintiffs_Bates_001

On November 28, 2005, defendants filed a motion to dissolve the permanent injunction.[1] On January 3, 2005, after holding two status conferences in which defendants raised various concerns regarding the court's jurisdiction to decide matters pertaining to the expedited removal procedures enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), the court on January 3, 2005, directed each party to file a brief regarding its jurisdiction to address such matters. The court ordered that discovery regarding defendants' expedited removal procedures be stayed pending a decision on the jurisdictional question. On May 8, 2006, the court held a hearing on the jurisdictional issue; at the conclusion of that hearing, it directed plaintiffs to submit a brief describing the discovery they sought regarding expedited removal. Plaintiffs filed this brief on May 12, 2006. Defendants filed a response on May 17, 2006, and plaintiffs replied on May 31, 2006. Based on the parties' arguments at the May 8 hearing, and their briefs regarding discovery, the court finds that limited discovery regarding expedited removal is appropriate for the reasons discussed herein.

## DISCUSSION

A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction. *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000); *Bellevue Manor Assoc. v. United States*, 165 F.3d 1249, 1255 (9th Cir. 1999); see also FED.R.CIV.PROC. 60(b)(5) (a court may modify or dissolve an injunction if "it is no longer equitable that the judgment should have prospective application"); *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 383 (1992).

Defendants advance multiple arguments in support of their motion to dissolve the *Orantes* injunction: (1) there has been a significant change in the factual circumstances that led to issuance of the injunction – i.e., the end of the civil war and human rights abuses in El Salvador and the adoption of a range of procedures by U.S. immigration authorities that ensure aliens are advised of their right to apply for asylum and are not coerced into waiving that right; and (2) there has been an intervening change in the law – i.e., the enactment of IIRIRA, which provides for expedited removal of inadmissible aliens. As respects the latter argument, defendants contend that the injunction conflicts with the statute and regulations governing expedited removal, and also that the injunction makes it burdensome for immigration authorities to place Salvadorans in expedited removal.

Although asserting that the passage of IIRIRA and its expedited removal provisions requires dissolution of the injunction, defendants have steadfastly maintained that plaintiffs are entitled to no discovery regarding the procedures that govern expedited removal, or the implementation of the

---

[1]The *Orantes* injunction enjoins "defendants, their agents and successors in office." See *Orantes-Hernandez*, 685 F.Supp. at 1511. As a result, defendants concede that the injunction binds the Department of Homeland Security ("DHS") as successor to the INS, and its sub-agencies, Immigration and Customs Enforcement ("ICE") and Customs and Border Protection ("CBP"). It is these entities that have moved to dissolve the injunction.

Plaintiffs_Bates_002

expedited removal program because the court lacks jurisdiction to consider challenges to the expedited removal statute. In their written filings, defendants have relied primarily on 8 U.S.C. §§ 1252(a)(2)(A) and 1252(e)(3)(A).

### A. Sections 1252(a)(2)(A) And 1252(e)(3)(A)

Section 1252(a)(2)(A) strips the courts, *inter alia*, of jurisdiction to review individual removal decisions under § 1225(b)(1), claims or causes of action arising from such decisions, and "procedures and policies adopted by the Attorney General" to implement expedited removal. Section 1252(e) restores a limited range of jurisdiction to the district court for the District of Columbia. Of particular relevance here is § 1252(e)(3)(A), which provides:

> "Judicial review of determinations under section 1225(b) of this title [authorizing expedited removal] and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of –
> (i) whether such section, or any regulation issued to implement such section, is constitutional; or
> (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law." 8 U.S.C. § 1252(e)(3)(A).

Section 1252(e)(3)(B) requires that any action under § 1252(e)(3)(A) "be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure described in clause (i) or (ii) of subparagraph (A) is first implemented." 8 U.S.C. § 1252(e)(3)(B).

Defendants contend that these provisions deprive the court of jurisdiction to hear any challenge plaintiffs may make to the government's expedited removal procedures. The question is whether the fact that plaintiffs oppose defendants' motion to dissolve the *Orantes* injunction on grounds that it conflicts with the expedited removal program, or burdens implementation of that program, constitutes a challenge of the type referenced in § 1252(a)(2)(A) or § 1252(e)(3). The court concludes that it does not.

The only questions before the court respecting expedited removal are whether the *Orantes* injunction mandates actions that are inconsistent with the expedited removal statute or procedures, and whether requiring the government's continued compliance with the *Orantes* injunction will impose undue burdens on its ability to implement expedited removal. Were plaintiffs to argue that the provisions of the injunction do not conflict with the expedited removal statute and its implementing regulations, this would not constitute a challenge to the "procedures and policies adopted by the Attorney General" such as is prohibited by § 1252(a)(2)(A)(iv). Nor would it be a challenge to the validity of the program as that term is defined in § 1252(e)(3)(A). Similarly, were plaintiffs to argue that requiring the government to comply with the *Orantes* injunction does not make

Plaintiffs_Bates_003

implementation of the expedited removal program burdensome, or that there is a continuing need for the injunction because of the manner in which expedited removal is being implemented, these would not be challenges to the validity of the program or the procedures and policies adopted by the Attorney General to implement it.[2] As §§ 1252(a)(2)(A) and 1252(e)(3)(A) do not prevent the court

---

[2]Plaintiffs argue that § 1252(e)(3)(A) does not preclude the court from considering a constitutional challenge to the informal practices of immigration officers who are implementing expedited removal in the field, and contend that a review of such practices may show that class members' due process rights would be violated if the injunction were dissolved. (See Plaintiffs' Memorandum of Points and Authorities Regarding the Court's Jurisdiction over Expedited Removal ("Pls.' Jurisdiction Brief") at 3, 9, 26; but see *id.* at 32.) To the extent plaintiffs assert that the manner in which expedited removal has been implemented demonstrates that there is a need to continue the protections of the injunction in place – i.e., to the extent they seek to rebut the government's contention that changes in national standards have obviated the need for the injunction – the argument is one the court has jurisdiction to consider.

To the extent plaintiffs contend that the manner in which the expedited removal program has been implemented violates class members' due process rights, however, § 1252(e)(3)(A) prohibits this court from adjudicating the issue. In this regard, the court cannot accept plaintiffs' argument that the fact that § 1252(e)(3)(A)(ii) refers only to regulations, written policy directives and guidelines, and written procedures permits the court to consider the validity or constitutionality of unwritten practices followed in implementing the expedited removal statute.

8 U.S.C. § 1252(a)(2)(A)(iv) provides that "no court shall have jurisdiction to review . . . procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title." Plaintiffs contend that the statutory reference to policies and procedures "adopted by the Attorney General" means that the prohibition on review extends only to formal, written policies and procedures. Defendants counter that, viewing § 1252 as a whole, references to actions taken, discretion exercised, or policies adopted "by the Attorney General" encompass the actions of lower-level officials within the Department of Justice or its sub-agencies. Section 1252(a)(2)(A)(iv) makes reference not to "written" policies and procedures, but to policies and procedures generally. It is a well-accepted proposition in federal law that an agency can implement or adopt an unwritten policy or custom "even though such a custom has not received formal approval through the body's official decision-making channels." *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). Thus, § 1252(a)(2)(A)(iv) must be read as stripping the federal courts of jurisdiction to review *all* "procedures and policies adopted by the Attorney General," be they formal or informal, written or unwritten. Section 1252(e)(3)(A) restores this jurisdiction in only a limited fashion: It permits the district court for the District of Columbia to consider challenges to the validity of "a regulation, *written* policy directive, *written* policy guideline, or *written* procedure issued by or under the authority of the Attorney General to implement" the expedited removal statute if that challenge is brought within 60 days of the date the regulation, policy or procedure is implemented. For this reason, the court concludes that it lacks jurisdiction to consider a general argument by plaintiffs that defendants' unwritten, informal practices relative to expedited removal violate constitutional guarantees.

Plaintiffs_Bates_004

from considering such arguments, plaintiffs are entitled to such discovery as is necessary to develop those arguments.[3]

---

[3]Defendants also assert that plaintiffs lack standing to challenge expedited removal. (See Defendants' Brief on Standing at 1.) Like defendants' arguments regarding §§ 1252(a)(2)(A) And 1252(e)(3)(A), this contention presupposes that plaintiffs' opposition to defendants' motion to dissolve the injunction constitutes a "challenge" to expedited removal. Plaintiffs do not challenge expedited removal or seek any affirmative relief from the court at this stage of the litigation. Rather, it is defendants who have asked the court to modify or dissolve the *Orantes* injunction. The court has power to enforce, modify or dissolve an injunction it has entered. See *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932) ("We are not doubtful of the power of a court of equity to modify an injunction in adaptation to changed conditions, though it was entered by consent"); see also *Frew v. Hawkins*, 540 U.S. 431, 440 (2004) ("Federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced"). Because plaintiffs have not mounted an affirmative attack on expedited removal, and do not seek to enjoin it, and because the court has jurisdiction to determine whether the injunction that was entered should remain in force, it concludes that defendants' standing argument lacks merit.

This is particularly true since in prior rulings, both Judge Kenyon court and the Ninth Circuit rejected defendants' argument that plaintiffs lacked standing to sue. See *Orantes-Hernandez v. Meese*, 685 F.Supp. 1488, 1504 (C.D. Cal. 1988), aff'd., *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 557-58 (9th Cir. 1990). Cf. *Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938) ("when a federal court "has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of res judicata is made has not the power to inquire again into that jurisdictional fact"). Even were it true that the named plaintiffs currently lack standing to litigate the issues raised by defendants' motion, because a class was certified, their personal lack of standing would not preclude them from opposing defendants' motion. See *Sosna v. Iowa*, 419 U.S. 393, 3999 (1975) (holding that a class action was not moot because, while the suit was pending, the named plaintiff satisfied the residency requirement she had challenged, and stating: "If appellant had sued only on her own behalf, both the fact that she now satisfies the one-year residency requirement and the fact that she has obtained a divorce elsewhere would make this case moot and require dismissal. But appellant brought this suit as a class action and sought to litigate the constitutionality of the durational residency requirement in a representative capacity. When the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant" (citations omitted)); see also *U.S. Postal Comm'n v. Geraghty*, 445 U.S. 388 (1980) ("When . . . there is no chance that the named plaintiff's expired claim will reoccur, mootness still can be avoided through certification of a class prior to expiration of the named plaintiff's personal claim").

There is some authority for the proposition that a change in the standing of plaintiff class members can constitute a change in circumstances that warrants modification or dissolution of an injunction. See, e.g., *O'Sullivan v. City of Chicago*, 396 F.3d 843, 868-69 (7th Cir. 2005) (reversing the dismissal of actions to enforce an injunction for lack of standing because the court that entered the injunction found that all voters had standing to enforce the injunction, and stating that on

## B.    Section 1252(f)

At the May 2006 hearing on jurisdictional issues, defendants for the first time advanced a different jurisdictional argument.  They asserted that under § 1252(f), federal courts other than the Supreme Court lack jurisdiction to enjoin the operation of the expedited removal program, and that this fact requires dissolution of the *Orantes* injunction.[4]  Section 1252(f)(1) provides:

> "Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated."

Defense counsel argued because 3the *Orantes* injunction operates prospectively, and because it may enjoin the operation of those provisions of the IIRIRA that authorize expedited removal, the court

---

remand "the focus of the district court shall not be on the law of standing as a jurisdictional concept but on the equitable standards embodied in Rule 609b)(5). . . .  The district court should consider critically whether changes in the legal landscape [regarding, *inter alia*, voter standing] since [the year the consent decree was entered] require modification or vacatur of that decree pursuant to Rule 60(b). . . . [A] decree fashioned in litigation in which[, as a result of subsequent changes in the law of standing,] one of the litigants did not have a sufficient concrete stake in the outcome might contain provisions that are not worthy of continued enforcement by a federal court"); *Gary W. v. State*, Civ. A. No. 74-2412, 1993 WL 17686, *11-12 (E.D. La. Jan. 19, 1993) (noting that the class that had been certified had a finite, rather than, fluid, membership, and that no class members were any longer subject to the conditions that had led to issuance of the injunction, and concluding that this was a changed circumstance that warranted dissolution of the injunction).  Here, however, the class that was certified was "fluid" in that it encompassed all Salvadorans who had been or would be taken into custody and who had requested or would request political asylum.  Once a class was certified, it acquired a legal status separate and apart from the interests asserted by the named plaintiffs.  For this reason, the changed circumstances defendants cite – both factual and legal – do not concern the membership of the class or the rules of standing that apply.  Consequently, to the extent concepts of standing are relevant in assessing defendants' motion to dissolve the injunction, the court concludes that plaintiffs' stake in the litigation is such that they may oppose the motion.

[4]This argument does not appear in defendants' motion to dissolve the injunction.  Moreover, as with their argument regarding standing, § 1252(f) is cited only in a footnote in defendants' brief on jurisdiction.  (See Defendants' Jurisdictional Brief in Response to Court's January 3, 2006 Order ("Defs.' Jurisdiction Brief") at 26 n. 12.)

Plaintiffs_Bates_006

lacks jurisdiction to continue the injunction in effect.[5] If in fact the *Orantes* injunction restrains operation of the expedited removal program, defendants' argument appears to have merit. See, e.g., *French v. Miller*, 530 U.S. 327 (2000) (noting that the Supreme Court's decision in *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 232 (1995), "was careful to distinguish the situation before the Court in that case – legislation that attempted to reopen the dismissal of a suit seeking money damages – from legislation that 'altered the prospective effect of injunctions entered by Article III courts.' We emphasized that 'nothing in our holding today calls . . . into question' Congress' authority to alter the prospective effect of previously entered injunctions. Prospective relief under a continuing, executory decree remains subject to alteration due to changes in the underlying law"); see also *Landgraf v. USI Film Products*, 511 U.S. 244, 273 (1994) ("When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive"); *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421, 431 (1855) (holding that an injunction that restrained construction of a bridge on the basis that it interfered with the right of navigation could not be enforced after Congress passed a statute declaring that the bridge was a "lawful structure").

Defendants, however, have declined to assert that the *Orantes* injunction prevents application of the expedited removal program to Salvadorans. To the contrary, they have stated: "The Government does not concede that application of Expedited Removal to Salvadorans would violate the Court's injunction." Rather, they note that "in the Secretary's discretion, the Government has, to date, refrained from applying Expedited Removal to Salvadorans apprehended between ports of entry so as to avoid any appearance of violating the injunction."[6]

Were it the government's position that the *Orantes* injunction enjoined operation of the expedited removal program as respects Salvadorans, it would appear that the issue could be briefed and decided without any further discovery concerning defendants' implementation of expedited removal. In light of the fact that defendants have specifically declined to take such a position, however, and in light of plaintiffs' assertion that the injunction does not prevent the government from placing Salvadorans in expedited removal, the court can see no benefit to bifurcating the issue and addressing it as a preliminary matter.[7]

C.    **Whether Discovery Regarding The Implementation Of Expedited Removal Is Warranted**

In their motion, defendants contend that "the *Orantes* injunction is inconsistent with and has burdened Expedited Removal."[8] They identify two provisions of the injunction that allegedly

---

[5]See, e.g., Reporter's Transcript of Proceedings, May 6, 2006 ("RT") at 11-12, 14.

[6]Defendants' Motion to Dissolve Permanent Injunction ("Defs.' Mot.") at 23 n. 10.

[7]See *id.* at 31-34 and n. 15.

[8]*Id.* at 30.

Plaintiffs_Bates_007

interfere with their ability to place Salvadorans in expedited removal – paragraph 2, which requires that certain advisements be given to Salvadorans when they are processed, and paragraph 11, which requires that Salvadorans without counsel not be transferred from the district where they are apprehended for seven days. It would appear that whether the advisement and transfer provisions on their face conflict with the expedited removal statute and regulations can be determined without any discovery regarding the government's implementation of the program. Thus, if the government contends that these provisions of the injunction facially conflict with the expedited removal statute and its implementing regulations, they may seek bifurcation of, and a hearing on, the purported facial conflict before any discovery authorized by this order is taken.

In addition to identifying areas of allegedly direct conflict between the expedited removal statute/regulations and the injunction, defendants also contend that the injunction makes it burdensome for them to apply expedited removal to Salvadorans. In particular, they allege that paragraph 11, which prohibits transferring unrepresented Salvadorans from the district in which they were apprehended for a period of seven days makes it difficult for the government to transfer Salvadorans to detention facilities with available bed space and results in OR release of Salvadorans at a far greater rate than other nationalities. Defendants also assert that many Salvadorans receive a final order of removal before the expiration of the seven day period, but cannot be removed because of the transfer prohibition.

Given the manner in which defendants' arguments are framed, the court concludes that the following discovery is relevant to their claim that the requirements of the *Orantes* injunction make it burdensome for the government to place Salvadorans in expedited removal, and to their claim that changes in standards have obviated the need for the protections afforded by the *Orantes* injunction.[9]

A. **Document Requests**:[10]

1. All documents containing in-force policies and procedures concerning the application of expedited removal procedures to Salvadorans;

---

[9]Defendants argue that plaintiffs' request for discovery regarding burden should be denied because plaintiffs have already had a full and fair opportunity to conduct such discovery. While plaintiffs have been given an opportunity to conduct general discovery regarding the burden placed on defendants by the *Orantes* injunction, they could not, under the court's prior discovery order, obtain information regarding the burden the injunction allegedly places on defendants' ability to implement expedited removal. All discovery regarding expedited removal was stayed pending issuance of this order. Consistent with the court's earlier order, the deposition excerpts provided by the parties indicate that full discovery on this issue has not occurred.

[10]The government has not argued that the discovery plaintiffs seek is overbroad or unduly burdensome. Nonetheless, the court has modified plaintiffs' requests in certain respects.

Plaintiffs_Bates_008

2. All documents containing in-force policies and procedures concerning the application or lack of application of expanded expedited removal to Salvadoran nationals;[11]

3. All training materials, manuals, instructions, directives, and guidance provided to the United States Customs and Border Protection ("CBP") and the United States Immigration and Customs Enforcement ("ICE") personnel concerning the processing and treatment of aliens in expedited removal from initial inspection through the end of the expedited removal proceedings;

4. All training materials, manuals, instructions, directives, and guidance provided to CBP and ICE personnel concerning the processing and treatment of aliens in expanded expedited removal from apprehension through the end of expedited removal proceedings;

5. From January 1, 2003 until the present, all portions of reports, studies, evaluations, audits, or similar documents provided to DHS or DHS agencies by the United States High Commission on Refugees (UNHCR) concerning the impact of expedited removal or expanded expedited removal on asylum seekers or potential asylum seekers.

6. All documents containing policies concerning the processing and treatment of aliens in expedited removal and expanded expedited removal, which were created after February 2005 in response to the recommendations of the United States Commission on International Religious Freedom ("USCIRF") Expedited Removal Study, entitled "Report on Asylum Seekers In Expedited Removal."[12]

7. Those portions of reports, studies, evaluations, audits, or similar documents concerning expanded expedited removal in the possession of DHS agencies that address the impact of the program on asylum seekers or potential asylum seekers.

---

[11]As the court understands the government's motion to dissolve the injunction, no Salvadorans are presently being placed in expedited removal or expanded expedited removal. To the extent this understanding is incorrect, however, plaintiffs are entitled to obtain copies of the policies and procedures that relate to the expedited removal of Salvadorans.

[12]This discovery is relevant in assessing the continuing need for the injunction in light of the government's contention that changes in standards have obviated the need for the protections the injunction affords. Although plaintiffs have previously had discovery on the new standards, they were precluded from seeking discovery regarding the effect of the expedited removal program on the continued need for the injunction.

Plaintiffs_Bates_009

**B.**   <u>Interrogatories</u>:

1. Identify the name(s), position(s), and address(es) of the DHS or DHS agency official, officer, agent, or other employee(s) who is most knowledgeable about the procedures for conducting expedited removal.

2. Identify the name(s), position(s), and address(es) of the DHS or DHS agency official, officer, agent, or other employee(s) who is most knowledgeable about the procedures for conducting expanded expedited removal.

3. Identify the name(s), position(s), and address(es) of the DHS or DHS agency official, officer, agent, or other employee(s) who is most knowledgeable about the training of inspectors who conduct expedited removal, and for each such person list her or his responsibilities with respect to expedited removal.

4. Identify the name(s), position(s), and address(es) of the DHS or DHS agency official, officer, agent, or other employee(s) who is most knowledgeable about the training of inspectors who conduct expanded expedited removal, and for each such person list her or his responsibilities with respect to expanded expedited removal.

5. Identify the name(s), position(s), and address(es) of the DHS or DHS agency official, officer, agent, or other employee(s) who is most knowledgeable about the USCIRF Expedited Removal Study, including any changes in policies or procedures made in response to the study, and for each such person list her or his responsibilities with respect to expedited removal.

6. Identify the name(s), position(s), and address(es) of a supervising officer or employee responsible for supervising Border Patrol officers, agents, or other employees who process aliens under expanded expedited removal in the following border sectors: Laredo, Texas; San Diego, California; and Tuscon, Arizona, and for each such person identify her or his responsibilities with respect to expedited removal.

7. State the number of Salvadoran alien removed through expedited removal at all ports-of-entry for Fiscal Year (FY) 2004 and 2005.

8. State the number of Salvadoran aliens subject to expedited removal at all ports-of-entry who were referred for credible fear interviews in FY 2004 and 2005.

9. Identify the name(s), position(s), and address(es) of each person who participated or assisted in responding to Plaintiffs' Interrogatories – Set Four, and to Plaintiffs' Request for Production of Documents pursuant to Federal Rule

Plaintiffs_Bates_010

of Civil Procedure 34 - Set Four. For each discovery response, state whether the person who prepared the answer has personal knowledge of the information contained in the answer, and if not, state the name(s), position(s) and address(es) of each person having personal knowledge who has supplied the information. Also identify each document relied on in preparing the answer and the person having custody of that document.

Plaintiffs will have ninety (90) days from the date of this order to complete this discovery. Plaintiffs may question deponents only about the subjects identified above.

The court sets a telephonic status conference to address a schedule for the hearing of defendants' motion on **August 31, 2006 at 10:00 a.m. PST.** Defendants are to initiate the teleconference through the telephone operator to include all counsel of record and chambers at **(213) 894-2957.** If there is any problem completing the call, counsel should contact the courtroom deputy, Anel Huerta, at (213) 894-7857.



DOCKETED ON CM

AUG 2 2 2006

BY _____ 085

#770

---

Plaintiffs_Bates_011