ENTERED

JAN 26 1984

CLERK U. S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

FILED

JAN 24 1984

CLERK, U. S. DISTRICT COU
TRAL DISTRICT OF CALIF

MICROFILMED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ANTONIO PEREZ-FUNEZ, | NO. CV 81-1457-ER |
| Plaintiff/Petitioner, | |
| v. | |
| DISTRICT DIRECTOR, IMMIGRATION AND NATURALIZATION SERVICE, DAVID CROSLAND, | |
| Defendants/Respondents. | |
| YANIRA PENA, CLAUDIA PENA, | CONSOLIDATED WITH |
| Plaintiffs, | NO. CV 81-1932-CBM |
| v. | |
| IMMIGRATION AND NATURALIZATION SERVICE, MICHAEL LANDON, ALAN NELSON, | O P I N I O N |
| Defendants. | |

/ / /
/ / /
/ / /
/ /  Docketed
___ Mld copy Ptys
___ Mld Notice Ptys
___ JS-6

JAN 25 1984

This action comes before this Court as a challenge, primarily on consitutional due process grounds, to the manner in which the Immigration and Naturalization Service ("INS") currently implements its voluntary departure procedure with respect to unaccompanied minor aliens in its custody.  The ultimate relief sought by plaintiffs is a judgment declaring the INS' actions violative of the due process clause of the the fifth amendment of the Constitution and applicable statutes, and an order enjoining the INS from implementing voluntary departure in the case of an unaccompanied minor until, inter alia, the INS has appointed an attorney for the minor if the minor is indigent, and the minor has been produced before an immigration judge.

By way of the motions considered herein, plaintiffs seek (1) to have this case certified as a class action under Rule 23 of the Federal Rules of Civil Procedure ("F.R.Civ.P."); and (2) preliminary injunctive relief incorporating substantially the same relief ultimately sought.  Additionally, plaintiffs in a related action pending before this Court, Yanira Pena and Claudia Pena v. INS, CV 81-1932 (hereinafter the "Pena action"), seek to have that action consolidated with this action.  For the following reasons, the Court finds that the two actions should be consolidated, that a nationwide class should be certified, and that a preliminary injunction should issue, although on terms other than those proposed by the parties.

I.   THE PARTIES AND JURISDICTION

Plaintiff Jose Antonio Perez-Funez ("Perez-Funez"), a native and citizen of El Salvador, was sixteen years old at the

2.

time he was arrested by the INS, and was not accompanied by either a parent or legal guardian when taken into custody. Intervening plaintiffs, Jose De La Cruz and Suyapa Araceli Cruz, were aged twelve and thirteen respectively at the time of their arrest by the INS, are natives and citizens of El Salvador, and were not accompanied by either a parent or legal guardian when they were taken into custody. These plaintiffs seek to bring this action in their individual capacities and on behalf of all those similarly situated.

Defendant INS is an agency of the United States government with nationwide jurisdiction to implement the Immigration and Nationality Act (8 U.S.C. §§ 1101-1503). Defendant David Crosland is the District Director of the Los Angeles District Office of the INS.

Jurisdiction is properly founded on 28 U.S.C. §§ 1331, 1343(4), 1361, and 8 U.S.C. § 1329.

II.    FACTUAL BACKGROUND

Plaintiff Perez-Funez was arrested and taken into custody by the INS near the Mexican border in California on March 22, 1981, on suspicion of having entered this country illegally. Perez-Funez alleges that he was not advised of his "Miranda" rights before being interrogated and that he was not advised in a meaningful manner of his rights to apply for bail and for political asylum. 1/ INS officials presented Perez-Funez a voluntary departure consent form some time during his detention. Although he claims he did not wish to return to El Salvador, Perez-Funez signed the consent form. He alleges that he was not informed that he had any legal alternatives, and that

3.

he was led to believe that his failure to consent to voluntary departure would result in a long jail detention and a return to El Salvador nonetheless. 2/

Pursuant to his consent to voluntary departure, Perez-Funez was taken to the Los Angeles International Airport for removal from the United States, where his removal was prevented by an attorney retained by Perez-Funez's aunt. 3/ Perez-Funez is now free on a $3,000 bond, set by defendant District Director David Crosland, pending a deportation hearing.

Intervening plaintiffs Jose and Suyapa Cruz recount a similar story. Arrested near Yuma, Arizona, on October 21, 1981, they allege that they were not advised by the INS of their "Miranda" rights and were presented with voluntary departure consent and waiver forms which they were told to sign without further explanation. The Cruz children, who had relatives lawfully living in the United States, claim that they signed the voluntary departure forms only because they did not understand that they were giving up their right to other legal options, 4/ or that those other options even existed.

III. THE CHALLENGED PROCEDURE --VOLUNTARY DEPARTURE

Voluntary departure is a procedure by which a qualifying alien may consent to summary removal from the United States, usually at the alien's expense. As a condition precedent to the implementation of the voluntary departure procedure, the alien must sign a waiver of his right to a deportation hearing and all other available relief. The advantage of voluntary departure to the alien is that he

4.

usually spends less time in custody (voluntary removal from the United States typically takes place within hours of signing the waiver), and voluntary departure does not have the prejudicial effect upon possible future lawful attempts to enter the United States as does a formal deportation order.

Plaintiffs are not challenging the existence or fairness of the voluntary departure program per se, rather they are alleging that the INS coerces unaccompanied minors into electing this option regardless of whether or not voluntary departure would be in those individuals' best interests.

IV.   MOTION FOR CONSOLIDATION

Yanira and Claudia Pena seek to consolidate their action with the Perez-Funez action.  Yanira Pena, aged thirteen, and Claudia Pena, aged 11, were arrested by the INS in San Ysidro, California, on April 18, 1981.  They were not accompanied by either a parent or legal guardian at the time of their arrest. They are both natives and citizens of El Salvador.

Yanira and Claudia allege that they were not advised by the INS of their right to be represented by an attorney prior to their interrogation, or their right to apply for political asylum or other forms of relief from deportation. The children further claim that they were presented voluntary departure consent forms and told they "had to sign them", 5/ which they did because they believed that no alternatives existed.  The record at present before the Court does not reveal exactly how their removal from the United States was prevented, but they were released from custody, each on a

5.

$4,000 bond.  The Pena children subsequently filed a class action suit seeking relief identical to the Perez-Funez action. 6/

Rule 42(a) of the F.R.Civ.P. provides, inter alia, that a court may order the consolidation of actions pending before it when such actions involve a common question of law or fact, or when consolidation may tend to avoid unnecessary costs or delay. A court has broad discretion in deciding whether or not to grant a motion for consolidation, A. J. Industries, Inc. v. United States Dist. Court, 503 F.2d 384, 389 (9th Cir. 1974), although, typically, consolidation is favored.  Ikerd v. Lapworth, 435 F.2d 197, 204 (7th Cir. 1970).

The Perez-Funez and Pena actions present common questions of both law and fact.  They present the identical question of law requiring the determination of the nature and extent of the due process guarantees extended to unaccompanied minors faced with deportation.  They additionally present the identical question of fact of the degree to which the INS coerces unaccompanied minors to consent to voluntary departure. 7/ Additionally, the Perez-Funez action has generated hundreds of pages of pleadings and testimony which are pertinent to the Pena action.  To require the separate prosecution of these actions would result in the duplication of effort, unnecessary costs, and delays Rule 42(a) was designed to avoid.  Accordingly, the Pena action will be consolidated with the Perez-Funez action.

V.    MOTION FOR CLASS CERTIFICATION

Plaintiffs seek certification, pursuant to Rule 23 of the F.R.Civ.P., of the following class:

/ / /

6.

> All persons who claim to be under eighteen years of age who are now, or in the future will be taken into, custody by agents of the Immigration and Naturalization Service who are not accompanied by either of their natural or lawful parents at the time of being taken into custody.

A party seeking class certification must meet all F.R.Civ.P. Rule 23(a) requirements for numerosity, commonality, typicality, and adequacy of representation, and at least one subsection (b) requirement. 8/ Additionally, there must be some necessity for class certification: where the relief, if granted to the plaintiff in his individual capacity only, would inure to the benefit of the entire proposed class, the class need not be certified. Bailey v. Patterson, 323 F.2d 201, 206 (5th Cir. 1963). 9/

### A.    PLAINTIFFS HAVE MET THE REQUIREMENTS OF RULE 23(a)

#### 1.    The Class is so Numerous That Joinder is Impracticable.

There is no fixed number of class members which either compels or precludes the certification of a class. Classes consisting of 25 members have been held large enough to justify certification. E.g., Philadelphia Electric Co. v. Anaconda Am. Brass Co., 43 F.R.D. 452, 463 (E.D. Pa. 1968). Additionally, the exact size of the class need not be known so long as "general knowledge and common sense indicate that it is large." Orantes-Hernandez v. Smith, 541 F.Supp. 350, 370 (C.D. Cal. 1982); Aiken v. Obledo, 442 F.Supp. 628, 658 (E.D. Cal. 1977).

According to defendants' documentation, the proposed class is very large: "In FY 1980, the Service [INS] apprehended 135,380 women and children from Mexico alone. This total

MICROFILMED

7.

includes a substantial number of unaccompanied juveniles.  The cited figure, however, only includes children through the age of 16." 11/  A class the size of a "substantial" percentage of 135,380, not to mention non-Mexican unaccompanied juveniles, would be impossible to join.  This is due not only to its sheer numerical bulk, but also to the fact that many of the class members have been removed from the United States and it now would be difficult or impossible to contact them.

The fact that it is at present impossible to identify each individual member of the proposed class, because plaintiffs seek to include those within the class who will in the future be taken into custody, is not necessarily fatal to a sufficient definition of the class:  "A class will be deemed sufficiently definite if it is administratively feasible to determine if a given individual is a member."  Aiken, 442 F.Supp. at 658.  The proposed class meets this test, because it is a simple matter to determine if a child is (1) known or claims to be under the age of eighteen, (2) is in the custody of the INS, and (3) is not accompanied by a natural or lawful parent.  12/

Accordingly, the proposed class is so numerous that joiner is impracticable and the numerosity requirement is met.

2.    There are Questions of Fact and Law Common to the Class

Defendants have submitted a memorandum from Glenn Bertness, Acting Associate Commissioner, Enforcement, INS, to the four Regional Commissioners that sets forth uniform processing procedures to be applied to unaccompanied minors in

8.

the custody of the INS. 13/  Although the procedures do require the field agent to explain to the subject or his representative the voluntary departure process and the detainee's right to a hearing, they do not require the INS to provide attorneys for indigent minors, to produce the minor before an immigration judge prior to removal pursuant to voluntary departure, or to explain to the minor what alternatives to voluntary departure may be available.  The issue of whether these omissions render the INS procedures constitutionally defective raises questions of law common to the class members.

Additionally, plaintiffs have documented, through depositions and declarations of what they claim to be typical class members fifteen cases where the INS allegedly employed coercive tactics to elicit a minor's consent to voluntary departure.  These tactics included telling the minor that failure to accept voluntary departure would result in a long period of detention in jail at the end of which time the minor would be deported anyway, telling the minor that bail is not returned, failing to inform the minor of the available alternatives, and, occasionally, physical abuse. 14/

The plaintiffs' claims have gone largely uncontested by the defendants, and, even where contested, the Court must accept plaintiffs' allegations as true on a motion for class certification.  Blackie v. Barrack, 524 F.2d 891, 901, n.17 (9th Cir. 1975). 15/

The above discussion reveals factual questions common to the members of the proposed class, all going to the voluntariness of the typical voluntary departure by an

9.

unaccompanied minor, and legal questions also common to the members of the proposed class.  Thus, the "common questions" requirement of Rule 23(a) is satisfied.

3.    The Representatives' Claims are Typical of Those of the Proposed Class

Typicality requires a comparison of the claims or defenses of the named plaintiffs with those of the members  of the proposed class, and not merely a showing of a common question of law or fact.  Taylor v. Safeway Stores, Inc., 524 F.2d 263, 270 (10th Cir. 1975); Nguyen Da Yen v. Kissinger, 70 F.R.D. 656, 664 (N.D. Cal. 1976).  Plaintiffs' primary claim is that the voluntary departure procedure, as applied to the members of the proposed class as alleged supra, results in the minors signing waivers of their rights that are not knowing, voluntary, or intelligent, and which effectively deny the minors their right to be heard at a deportation hearing or to apply for other relief.

Defendants counter the typicality claim by asserting that the claims of the named plaintiffs are not typical of the members of the proposed class, because the named plaintiffs wish to remain in this country, whereas many members of the proposed class will wish to be reunited with their families in their home countries.  In Nguyen, the court denied class certification on the ground that the plaintiffs failed to satisfy the typicality requirement.  The relief sought was to have all children  returned to their biological parents in Vietnam who had been airlifted from Vietnam to the United States in the final days of the war.  The court found that the

10.

claims of the representative parties, who wished to return to Vietnam, were not necessarily typical of those of all the others who had been airlifted, because it could not be assumed that all the others wished to return to Vietnam.

Nguyen is inapposite to the instant case. Plaintiffs herein do not seek a substantive ruling on the merits of every unaccompanied minor's case. Plaintiffs challenge only the procedure utilized in reaching the ultimate substantive determination. By ensuring that the minor actually wishes to be removed from the United States, and that he has had an opportunity to evaluate the alternatives, plaintiffs seek to ensure that the substantive disposition of voluntary departure has been arrived at in a procedurally sound manner. Thus, although each class member may choose a different alternative, the procedure by which he is currently given that choice is typical of that of the representatives, plaintiffs herein.

### 4. The Representatives will Adequately Represent the Interests of the Class

The adequacy of representation factor requires that the interests of the named plaintiffs be co-extensive with, and not antagonistic to, the interests of the class, and that the named plaintiffs, and thus the class, be represented by qualified and experienced counsel. Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122, 1124-25 (5th Cir. 1969); Orantes-Hernandez v. Smith, 541 F.Supp. at 371. This is especially important where a Rule 23(b)(2) class certification is sought, because the absent members receive no notice, and are consequently unable to opt out of the class. 16/ Harriss v.

11.

_Pan Am World Airways, Inc._, 74 F.R.D. 24, 42-43 (N.D. Cal. 1977). Defendants have not challenged the qualifications or experience of the named plaintiffs' representatives.  The plaintiffs are represented by a minister as _guardian ad litem_, and legally by many qualified and experienced counsel from such organizations as the National Center for Immigrants' Rights, the Legal Aid Foundation of Los Angeles, the Lawyers' Guild, the Los Angeles Center for Law and Justice, and the American Civil Liberties Union. This Court accordingly finds that aspect of the adequacy of representation requirement to be satisfied.

Defendants claim that Perez-Funez will discontinue the prosecution of this lawsuit if he is permitted to remain in the United States and thus, because his interests are not co-extensive with those of the class, he will not adequately represent the class.  In support, defendants cite Perez-Funez's deposition where, in answer to the question:  "If the [INS] allowed you to remain in the United States, would you continue with this lawsuit?", Perez-Funez replied:  "No."  A reading of this statement in context, however, does not compel the conclusion defendants have drawn.  It is quite obvious that the deponent understood very little of what was being asked. 17/ In fact, in a later declaration, Perez-Funez stated that during this deposition:  "I was confused and did not fully understand the government's questions regarding my intentions of continuing this lawsuit in the event I am allowed to remain in the United States." 18/  Perez-Funez went on to reaffirm his intention to vigorously prosecute this action.  This intention is supported by the fact that Perez-Funez returned to Los

12.

Angeles from New York to attend his deposition.  It should also be remembered that this case has now been pending for over two years, and neither the plaintiffs, nor their attorneys, have evinced dilatory behavior or a disinclination to prosecute.

In light of the above, and the fact that the named plaintiffs seek no individualized relief that they are not seeking on behalf of the class they seek to represent, 19/ the Court finds the adequacy of representation requirement satisfied.

B.    PLAINTIFFS HAVE SATISFIED THE REQUIREMENTS OF

RULE 23(b)(2)

A Rule 23(b)(2) class action requires that "the party opposing the class has either acted or failed to act on grounds generally applicable to the class."  This has been interpreted as requiring that the opposing party has acted consistently towards members of the class or has established a regulatory scheme common to all members of the class, and not that every member of the class has actually been injured by the opposing party.  Society for Individual Rights, Inc. v. Hampton, 63 F.R.D. 399, 401 (N.D. Cal. 1973), aff'd, 528 F.2d 905, 906 (9th Cir. 1975) (the Civil Service uniformly applied a practice of excluding all active homosexuals from government jobs; a Rule 23(b)(2) class action was certified and upheld).

The Glenn Bertness memorandum, described above, establishes an official INS policy by which the INS has acted on grounds "generally applicable to the class," thus making injunctive and declaratory relief appropriate to the class as a whole.  Accordingly, the Court finds that the plaintiffs have

MICROFILMED

satisfied the requirements of Rule 23(b)(2), thus completing the requirements of Rule 23.

C.    THERE IS A NECESSITY FOR CLASS CERTIFICATION

At first blush, it appears that the class members may receive no special benefit if this case were certified as a class action that they would not receive if the plaintiffs proceeded in their individual capacities only.  That is, if the INS procedures concerning unaccompanied minor aliens were found to violate the constitutional rights of Perez-Funez and the Cruz children, the continued implementation of those procedures with respect to all the class members would automatically be prohibited as violative of this their constitutional rights as well.  See, e.g., Norwalk Core v. Norwalk Redev. Agency, 395 F.2d 920, 937 (2d Cir. 1968).

An advantage exists, however, resulting from class certification which could be achieved in no other way:  dismissal of these claims on the ground of mootness could result should the named representatives be permitted to bring this action in their individual capacities only.  In DeFunis v. Odegaard, 416 U.S. 312, 317-20 (1974), plaintiff brought suit only in his individual capacity to enjoin a law school from following allegedly discriminatory admissions policies, and to enjoin the school to admit him.  The district court issued the injunctions and the plaintiff was admitted.  The circuit court reversed, and while the plaintiff's appeal was pending before the Supreme Court, he was permitted to remain in law school by virtue of stay orders.  The Supreme Court heard the case while the plaintiff was attending his final semester, and the school

14.

stipulated that they would allow the plaintiff to complete his studies regardless of the outcome of the appeal. The Supreme Court held that the case was moot, because at that point, whether the school continued to abide by its admissions policies could no longer have any personal effect upon the plaintiff. Defendants herein have raised the spectre of mootness by pointing out that the named plaintiffs are now in deportation proceedings and are thus no longer subject to voluntary departure, and that they have retained counsel and are thus fully informed of all their rights and alternatives. Thus, claim defendants, the plaintiffs' claims have expired.

The underlying reason for the holding in DeFunis is that normally a plaintiff must have a personal stake in the outcome of the litigation to have standing to bring an action. This requirement, however, was relaxed by the Supreme Court in cases that are "capable of repetition yet, evading review." Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, (1911). That the injury be capable of repetition with respect to the particular plaintiff before the court, is a requirement only in non-class actions. Weinstein v. Bradford, 423 U.S. 147, 149, (1975). Thus, even if the claims of the plaintiffs herein were deemed moot, this would not necessarily deprive them of standing to represent the proposed class.

In Sosna v. Iowa, 419 U.S. 393, 402 (1975), the Supreme Court stated that, although named plaintiffs must usually have a case or controversy at the time the class is certified, those plaintiffs may yet have standing to bring the class action if their individual claims are mooted

"before the district court can reasonably be expected to rule on a certification motion. In such circumstances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review." [20]/

In the case at bar, plaintiffs have introduced ample evidence that once a voluntary departure waiver is obtained from an alien, the alien is usually physically removed from the country within hours. [21]/ The result is that either the minor will waive his rights and be removed from the country within hours, or that the minor will select some other form of relief, such as a deportation hearing, and will thus immediately cease to be a member of the class. In that either of these events will necessarily occur before the certification of a class, plaintiffs, under the Sosna reasoning, consequently have standing to bring this class action.

In United States Parole Comm'n v. Geraghty, 445 U.S. 388 (1980), the Supreme Court held that the Federal Rules give a representative a right to class certification if the requirements of the Rules are met. In Geraghty, a federal prisoner brought suit challenging the Parole Commission's release guidelines. The district court denied class certification, and granted summary judgment to the defendant. The plaintiff appealed, and, while the appeal was pending, he was released from prison. The circuit court subsequently

16.

reversed the district court.   The Supreme Court granted certiorari, and held that, as the appeal reversed the denial of the class certification, the plaintiff would have standing to represent the class on remand, even though his claim had expired with respect to him individually.   "This 'right' is more analogous to the private attorney general concept than to the type of interest traditionally thought to satisfy the 'personal stake' requirement," which is to assure that the case is in a form capable of judicial resolution.   Id. at 403-404.   The Court also held that a "named plaintiff whose claim expires may not continue to press the appeal on the merits until a class has been properly certified." Geraghty, Id. at 404.   It is, therefore, clear that under the appropriate circumstances, such as these, a plaintiff who could not bring an action in an individual capacity only, due to mootness, may yet bring that action as a class representative.

The reality that plaintiffs' claims "would otherwise evade review" without invoking the Sosna or Geraghty exception is not merely strong:  it is inevitable.   It would be an anomolous result indeed, and one wholly violative of the Rule 23 spirit as articulated by the Supreme Court in Geraghty, to conclude that a named plaintiff had lost standing to represent a class simply because that plaintiff availed himself of the legal procedures necessary to remain in the country so as to be able to bring the action in the first place.   Without class certification, it is quite possible that the merits of the plaintiffs' claim will never be heard.   Thus, as the need for class certification is established and the requirements of Rule

MICROFILMED

23 are met, the Court will grant plaintiff's motion for class certification.

D.    THE CLASS CERTIFIED SHOULD BE NATIONWIDE IN SCOPE

Plaintiffs have requested a nationwide class, and defendants have argued that if a class is to be certified at all, it should be restricted to those minors who are in the custody of the Los Angeles District Office of the INS.  The Court agrees with the plaintiffs.

The Supreme Court has held that the "certification of a nationwide class, like most issues arising under Rule 23, is committed in the first instance to the discretion of the district court."  Califano v. Yamasaki, 442 U.S. 682, 703 (1979). 22/  The court further held that nothing in Rule 23 limits the geographical scope of a class action, and that a nationwide class is not "inconsistent with principles of equity jurisprudence, since the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the plaintiff class."  Id. at 702.

The evidence indicates that if the INS were deemed to be violating the plaintiffs' rights, the INS would be doing so on a nationwide basis.  Not only have plaintiffs documented cases of the voluntary departure procedure being followed with respect to members of the class in California, Arizona, and Texas, 23/ but the Glenn Bertness memorandum, discussed above, establishes a uniform policy to be followed with respect to class members on a nationwide basis by an agency with nationwide jurisdiction to implement that policy.

18.

This case does not fall within the ambit of cases where national certification has been deemed to conflict with the development of the law in more than one jurisdiction. In Califano, the Court noted:

> It often will be preferable to allow several courts to pass on a given class claim in order to gain the benefit of adjudication by different courts in different factual contexts. For this reason, a federal court when asked to certify a nationwide class should take care to ensure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts. But we decline to adopt the extreme position that such a class may never be certified.

442 U.S. at 702. In this case, there is little need to allow adjudication by different courts in different factual contexts, because the factual context will never change, regardless of the forum in which it is being litigated; the subject of litigation is, by admission, a uniform procedure consistently applied to a specifically defined class, not the multi-faceted merits of individual substantive claims. Thus, there is no logical reason to limit the class as requested by defendant. Additionally, defendants have presented no evidence indicating that similar issues are being litigated in other jurisdictions.

/ / /

/ / /

19.

Finally, nationwide class certification is possible because this Court has nationwide jurisdiction over the claims of each individual member of the class under 28 USC §§ 1331, 1329 24/.

## VI    MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs seek a preliminary injunction enjoining the INS from removing class members from the United States without first producing the minor before an immigration judge for a neutral determination of whether a waiver of the minor's right to a deportation hearing has been made freely, voluntarily and knowingly, and appointing a representative for the child in such proceedings if he cannot afford to retain one. 25/

### A.    THE APPLICABLE STANDARD

The purpose of a preliminary injunction is to preserve the status quo pending a determination on the merits, Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 808 (9th Cir. 1963). When mandatory, rather than prohibitive, relief is being sought, however, the plaintiffs must "clearly establish that a change in the status quo is warranted," Orantes-Hernandez v. Smith, 541 F.Supp. 351, 372 (C.D. Cal. 1982), citing Larry P. v. Riles, 502 F.2d 963, 965 (9th Cir. 1974). The law is well settled that the grant or denial of the issuance of a preliminary injunction rests largely within the discretion of the district court. Miss Universe, Inc. v. Flescher, 605 F.2d 1130, 1132-33 (9th Cir. 1979).

The test most extensively utilized in this Circuit in determining the propriety of preliminary injunctive relief

MICROFILMED

20.

employs a "sliding scale" to examine the burden on the respective parties.  Thus, a preliminary injunction must issue upon a showing of either:  (1) plaintiff's probable success on the merits and the possibility of irreparable injury; or (2) a sufficiently serious question of going to the merits to make it a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief. American Motorcyclist Ass'n. v. Watt, 719 F.2d 962, 965 (9th Cir. 1983); Lopez v. Heckler, 713 F.2d 1432 (9th Cir. 1983); Aleknagik Natives Ltd. v. Andrus, 648 F.2d 496, 502 (9th Cir. 1981).  As the Court noted in Aleknagik, these are not alternative tests as such, but instead represent "extremes on a single continuum. . . . the necessary showing of likelihood of success on the merits decreases as the balance of hardships increases in favor of the movant."  (Citations omitted.) Id.  Plaintiffs herein have shown a likelihood of success on the merits and a possibility of irreparable injury.

   B. <u>PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS</u>

   The essence of plaintiffs' claim is that the coercive manner in which the INS obtains waivers of the right of unaccompanied minor aliens to deportation hearings and other forms of relief constitutes a deprivation of those minors' procedural due process guarantees under the fifth amendment to the United States Constitution.

   "Minors, as well as adults, are protected by Constitution and possess constitutional rights."  Planned Parenthood v. Danforth, 428 U.S. 52, 74 (1976).  Furthermore, aliens possess a statutory  and constitutional due process right to a

hearing, and notice thereof, prior to their removal from the United States. 8 USC § 1252(b); United States v. Gasca-Kraft, 522 F.2d 149, 152 (9th Cir. 1975). Hirsch v. INS, 308 F.2d 562, 566 (9th Cir. 1962); Hyun v. Landon, 219 F.2d 404, 406 (9th Cir. 1955), aff'd, 350 U.S. 990 (1956). "Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to [the] constitutional protection [of the due process clause]." Mathews v. Diaz, 426 U.S. 67, 77, 96 (1976).

The Immigration and Nationality Act is a bewildering and complex statute, having been described by Chief Judge Kaufman of the Second Circuit as bearing a "striking resemblance [to] King Mino's labyrinth in ancient Crete." Lok v. INS, 548 F.2d 37, 38 (2d Cir. 1977). If the Act has this impact upon one sophisticated in legal matters, then it cannot be presumed that a child from a foreign land, speaking, perhaps, a foreign tongue, possesses any meaningful understanding of his rights under the Act so as to be able to assert or waive rights guaranteed therein. As established by the Glenn Bertness memorandum, supra, the official procedure of the INS is, at most, to explain voluntary departure and the right to a deportation hearing. Assuming, arguendo, that there has been no pressure applied by the INS on minors to consent to voluntary departure, 26/ it is a reasonable conclusion that many unaccompanied minors consent to voluntary departure without knowledge that there are other alternatives available. Addition- ally, because the INS has nationwide jurisdiction, and its procedures in this matter are uniform, this problem is not

22.

isolated to a small number of incidents or to a limited geo-graphical area.

A waiver of a constitutional or procedural right, to be effective, must be made "voluntarily, intelligently, and knowingly." Fuentes v. Shevin, 407 U.S. 67, 94-95 (1972). This in turn requires "an intentional relinquishment or abandonment of a known right or privilege." Groves v. Prickett, 420 F.2d 1119, 1125 (9th Cir. 1970). Having determined that most members of the plaintiff class waive rights which they could not know of when they consent to voluntary departure, it follows that these waivers of rights, because they are not made voluntarily, intelligently, and knowingly, are ineffective. The natural result is that the implementation of voluntary departure pursuant to ineffective waivers effects a de facto deprivation of these minors' constitutional rights. Thus, plaintiffs are likely to succeed on the merits of their claim that the procedures currently employed by the INS when implementing voluntary departure in the case of an unaccompanied minor are constitutionally defective.

C.   PLAINTIFFS HAVE SHOWN A POSSIBILITY OF IRREPARABLE INJURY

Having established that the plaintiffs have a probable likelihood of success on the merits, plaintiffs must now show a possibility of irreparable injury to satisfy the "sliding scale" test, and for a preliminary injunction to issue. Aleknagik Natives. 648 F.2d at 502 (9th Cir. 1981). An irreparable injury is defined as one that "cannot be

compensated by the award of money damages; it is injury which is certain and great."  Washington Capitols Basketball Club, Inc. v. Barry, 304 F. Supp. 1193, 1197 (N.D. Cal. 1969). 27/ Generally, a preliminary injunction, especially a mandatory one, will not issue if there is an adequate remedy at law, Anderson v. United States, 612 F.2d 1112, 1115 (9th Cir. 1979). 28/ Monetary damages, however, are not an adequate remedy at law when a "pattern of unconstitutional deprivation of rights is established."  Illinois Migrant Council v. Pilliod, 398 F.Supp. 882, 904 (N.D. Ill. 1975).  Moreover, even where the alleged damage is monetary, when the damage is unconstitutional and unrecoverable, irreparable injury can be found.  Railway Labor Executives' Ass'n. v. Gibbons, 448 U.S. 1301, 1305 (1980). Consequently, the courts have generally held that interference with constitutional rights "supports a finding of irreparable injury."  Planned Parenthood v. Citizens for Com. Action, 558 F.2d 861, 867 (8th Cir. 1977). 29/  Thus, voluntary departure pursuant to an ineffective waiver of rights is per se an irreparable injury.

Additionally, if a minor who wishes to remain in this country consents to voluntary departure only because he is unaware that alternatives exist, then the possibility arises that the minor will be unnecesssarily exposed to physical dangers, such as removal to hostile environments which may have initially precipitated the minor's departure. 30/  Those dangers might well be avoided if the minor is given the opportunity to assert his rights prior to removal.

/ / /

Thus, class members are subject to not only certain irreparable injury resulting from the per se interference with their constitutional rights by the INS, but also to at least "possible" irreparable injury resulting from the consequences of such interference.  Accordingly, because plaintiffs have shown probable success on the merits and a possibility of irreparable injury, a preliminary injunction will issue.

D.    PLAINTIFFS ARE NOT ENTITLED, AT THIS POINT IN THE PROCEEDINGS, TO THE FULL SCOPE OF RELIEF THEY HAVE PROPOSED

Plaintiffs propose that this Court order all unaccompanied minors in the custody of the INS to be appointed counsel by the INS if indigent, and to be produced before an immigration judge prior to removal pursuant to voluntary departure to ensure that such removal is in the minor's best interests. [31/]  When a mandatory injunction, such as this, is at issue, ". . . the question rests very largely in the discretion of the court, and the principal consideration is the relative inconvenience to the parties."  Trautwein v. Moreno Mutual Irrigation Co., 22 F.2d 374, 376 (9th Cir. 1927).

Although plaintiffs claim that the INS should provide indigent minors with an attorney, the INS violates no statute by not doing so.  8 U.S.C. § 1252(b)(2) provides that a person has the right to be represented at a deportation hearing by counsel "at no expense to the government."  Additionally, the Ninth Circuit, in Martin-Mendoza v. INS, 499 F.2d 918, 922 (9th Cir. 1974), squarely held that aliens in deportation hearings have no right to have counsel appointed for them at government

25.

expense. Thus, Congress and the judiciary have spoken with one voice on this issue.

Defendants have made persuasive arguments against producing before immigration judges all unaccompanied minors in the custody of the INS prior to their voluntary departure. For example, defendants correctly note that, because only forty-five immigration judges sit in the entire United States, longer detentions would result not only for the class members, but also for all aliens undergoing any type of administrative proceeding. 32/

Plaintiffs attempt to counter this argument by claiming that if the minors receive appointed attorneys, then the attorneys will move them through the administrative process more quickly, thus eliminating the possibility of longer detentions. It is difficult, however, to imagine a process speedier than voluntary departure, and, if it truly is the desire of the minor to consent to voluntary departure, it is difficult to imagine a process more in that minor's best interests.

Defendants also fear that if plaintiffs' proposal is implemented, present facilities for housing in-custody minors will be inadequate. 33/ There are many hidden dangers in issuing an order as simplistic and burdensome as the one proposed by plaintiffs. A trial on the merits may establish the feasibility and necessity of plaintiffs' proposal, but it is not so established now.

What is apparent, however, is the need to ensure that, prior to consenting to removal, class members be advised of and understand the altneratives to voluntary departure.

26.

MICROFILMED

Although plaintffs have alleged fifteen instances where voluntary departure was inappropriately implemented by INS officials, this showing is insufficient to raise a presumption of bad faith on the part of the INS generally.  Consequently, this Court orders the INS to adopt certain supplementary procedures when processing class members to ensure that they are meaningfully and adequately advised of their rights, much in the same way that police officers are required to deliver "Miranda" warnings.  The Court fully expects the INS to absolutely comply, both in letter and in spirit, with this order, and the Court will retain jurisdiction to ensure such compliance.  Should plaintiffs prevail, the Court, at the close of the trial on the merits, will evaluate any injunctive proposals made by the parties giving great weight to the degree of defendants' compliance so far, and the realistic likelihood of continued compliance.

NOW, THERFORE, IT IS ORDERED, that the action entitled Yanira Pena and Claudia Pena v. INS, CV 81-1932, be consolidated with the action entitled Jose Antonio Perez-Funez v. INS, CV 81-1457.

IT IS FURTHER ORDERED that a plaintiff class is hereby certified in this action pursuant to F.R.Civ.P. Rule 23(a) and and (b)(2) described as follows:

All persons who appear, are known, or claim to be under the age of eighteen years who are now or in the future taken into or held in custody in the United States by agents of the Immigration and Naturalization Service for possible deportation from the United States, and who are not accompanied

MICROFILMED

27.

by at least one of their natural or lawful parents at the time of being taken or received in custody within the United States.

IT IS FURTHER ORDERED that defendants, their agents and successors in office shall not employ threats, misrepresentations, subterfuge, or other forms of coercion, or in any way attempt to persuade or dissuade class members when informing them of the availability of voluntary departure pursuant to 8 U.S.C. § 1252(b), that defendants, their agents and successors in office shall permit class members to retain copies or facsimiles thereof of any documents signed by the class member, and that defendants, their agents and successors in office shall not inform any member of the class of the availability of voluntary departure pursuant to 8 U.S.C. § 1252(b) until such defendant, agent, or successor in office has:

(1)  read verbatim to the class member in English or Spanish, or any other language understood by the class member, the oral General Advisal attached hereto as Exhibit A; and has

(2)  provided the class member with a copy of the written notice attached hereto as Exhibit B and a copy of a free legal services list compiled pursuant to 8 C.F.R. § 292a.1 and has permitted the class member to retain these in his or her possession.  If the class member indicates that he or she cannot read, the notice attached hereto as Exhibit B shall be read verbatim to the class member in English or Spanish, or any other language understood by the class member; and has

(3)  obtained a signed acknowledgement on a separate copy of the notice attached hereto as Exhibit B from the class

28.

member showing that the aforesaid notices have been provided. If, after receiving the above notice, the class member informs such defendant, agent, or successor in the office that he or she wishes to apply for political asylum or for any other form of relief, such defendant, agent, or successor in office shall not advise, encourage, or persuade the class member to change his or her decision.

DATED:  January 24, 1984.

_____
EDWARD RAFEEDIE
United States District Judge

29.

GENERAL ADVISAL

TO BE GIVEN ORALLY IN ENGLISH OR SPANISH OR ANY OTHER LANGUAGE UNDERSTOOD BY THE DETAINEE:

You are being detained by the United States Immigration and Naturalization Service.  I am handing you a written Notice that describes your rights.  Please read this Notice carefully before deciding whether you wish to agree to be removed from the United States voluntarily, demand a deportation hearing, request political asylum, or apply for any other available form of relief.  You must sign a copy of the Notice to show that you have received it.  If you cannot read, please tell me and I will read the Notice to you.

[EXHIBIT A]

MICROFILMED

NOTICE OF RIGHTS

[To be printed in English and Spanish]

This is an advisal of your legal rights and alternatives. Do not sign any waiver of your rights until you have either read this Notice, or have had this Notice read to you, and until you understand your rights.

1.    RIGHT TO BE REPRESENTED BY AN ATTORNEY

You have the right to be represented by an attorney of your choice at your own expense.  If you wish legal advice and cannot afford a lawyer, you may contact one of the lawyers listed on the attached sheet who provide free legal services. If you wish to contact an attorney, you should so inform me after you have read, or have had read to you, this Notice.

2.    RIGHT TO A DEPORTATION HEARING

You have the right to a deportation hearing to determine whether you are lawfully in the United States before you can be deported.  If you request a deportation hearing, you may be represented at the hearing by an attorney at your own expense. You may be eligible to be released on bail until the time of the deportation hearing.  If you are released on bail and then appear at the hearing as ordered, the money you have paid in as bail will be returned to you.  If you wish to have a deportation hearing, you should so inform me after you have read, or have had read to you, this Notice.

3.    RIGHT TO APPLY FOR POLITICAL ASYLUM

You may be eligible for political asylum if you have reason to believe that you would be persecuted because of your

[EXHIBIT B]

MICROFILMED

race, religion, nationality, membership in a particular social group, or political opinions if you were deported from the United States.  If you wish to apply for political asylum, you should so inform me after you have read, or have had read to you, this Notice.

4.    RIGHT TO REQUEST VOLUNTARY DEPARTURE

If you wish to be removed immediately from the United States, you may ask to be allowed to voluntarily depart.  By agreeing to voluntarily depart, you give up your right to a deportation hearing and your right to apply for political asylum.  If you wish to apply for voluntary departure, you should so inform me after you have read, or have had read to you, this Notice.

I ACKNOWLEDGE THAT I HAVE READ, OR HAVE HAD READ TO ME, A COPY OF THE ABOVE NOTICE OF RIGHTS, AND THAT A LIST OF THE AVAILABLE FREE LEGAL SERVICES HAS BEEN PROVIDED TO ME.

Signature of Minor: _____

Signature of INS Official: _____

Date, time, and location: _____

_____

_____

[EXHIBIT B]

F O O T N O T E S

1.     The INS never advised Perez-Funez of his right to bail, and did not discuss this issue with him until it was raised by his attorney.  Perez-Funez alleges that the INS agents left him with the impression that any bail he posted would automatically be forfeited, regardless of whether or not he appeared for a hearing.  Deposition of Perez-Funez, p.60.

Perez-Funez also claims that the right to apply for political asylum was never explained to him by the INS, and that he was told that if he applied for it (without explaining what "it" was), he would have to spend three to four months in jail.  Deposition of Perez-Funez, pp. 17-18.

2.     Deposition of Perez-Funez, p. 70.

3.     Although the record is unclear on this point, it appears that, after arrest, the INS makes contact or permits the detainee to make contact with some third party.  This would explain how the plaintiffs, and many of the proposed class members, have had legal intercession on their behalves.

4.     Pursuant to Title 8 U.S.C. § 1252(b), any person taken into custody by the INS as a suspected alien has a right to a deportation hearing prior to removal from this country.  At this hearing, the detainee may be represented by counsel, although he has no right to appointed counsel, may submit and examine evidence, and may cross-examine witnesses.  The detainee also has a right to apply for bail pursuant to 8 U.S.C. § 1252(a).  In addition, any suspected alien has the right to petition for relief from deportation in the form of

(i)

political asylum (8 U.S.C. §§ 1158, 1253(h)), adjustment of status and suspension of deportation (8 U.S.C. § 1254), deferred action status (INS Operations Instruction § 103.1a (i) (ii)), and voluntary departure (8 U.S.C. § 1254(e)).

5.    Deposition of Yanira Pena, p. 31.

6.    The Perez-Funez action was originally filed as a petition for habeas corpus, and was subsequently amended to expand the proceeding to a class action.  Although the INS has questioned the validity of such an amendment, that question need not be decided, because consolidation of the Pena class action with the Perez-Funez acton has rendered this issue moot.

7.    E.g., by failing to advise the minor of the available legal alternatives.

8.    Rule 23 provides in pertinent part:

(a)  Prerequisites to a Class Action.   One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b)  Class Actions Maintainable.  An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(ii)

MICROFILMED

(1)    The prosecution of separate actions by or against individual members of the class would create a risk of

(A)    inconsistent or varying adjudication with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B)    adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2)    the party opposing the class has acted or refused to act on grounds generally applicable to the class, therebuy making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

*    *    *    *

9.    Bailey is the seminal case for this proposition. There, plaintiffs brought suit to enjoin enforcement of state and municipal segregaton laws affecting common carriers on constitutional grounds.  In discussing whether the action should have been certified as a class action, the court found it "unnecessary to determine whether this action was properly brought under Rule 23(a)," because the decree to which the plaintiffs would be entitled in their individual capacities would automatically inure to the benefit of the entire class.

(iii)

323 F.2d at 206.

10. Citing 1 Newberg on Class Actions § 2094, at 596 (1977). In Orantes-Hernandez v. Smith, the court certified a class consisting of all citizens of El Salvador eligible to apply for political asylum who have been or will be taken into custody by the INS.

11. Declaration of Glenn A. Bertness, Acting Associate Commissioner, Enforcement, INS, at paragraph (2)(a).

12. Also see In re U.S. Financial Sec. Litig., 69 F.R.D. 24, 34 (S.D. Cal. 1975), where the court held that knowledge of the precise number and identity of each member of a class was not necessary (where the class in question consisted of purchasers of debentures, some of which were issued to "bearer").

13. Defendants' third exhibit of their Exhibits to Opposition to Motion for Preliminary Injunction. The memorandum is dated May 22, 1981, directed to the four Regional Commissioners of the INS, and sets forth procedures to be applied "in all cases involving unaccompanied minors with the exception of those apprehended in the immediate vicinity of the border and whose permanent residence is in foreign contiguous territory." These procedures provide that in the case of unaccompanied minors, aged 14-16 years, the Service must, inter alia, "explain voluntary departure and subject's right to a hearing." In the case of unaccompanied minors, age 13 and under, the Service is to follow the same steps as with minors aged 14-16, with the following additions: "Contact appropriate foreign consulate or embassy for assistance in locating

(iv)

relatives or friends in the minor's country . . . If necessary, contact American Embassy in subject's country for assistance in verifying facts and arranging reunion with subject's relatives or friends." Additionally, INS officials are required to explain to the subject's representative the voluntary departure program and the subject's right to a deportation hearing.

14. See plaintiffs' Exhibits 1, 3, 4, 5, 7, 8, 16, 21 & 22. For example: Jose Cruz claims that he was read, but did not understand, the voluntary departure consent forms, and that he was never informed by the INS of any alternative to voluntary departure (Declaration of Jose Cruz); Suyapa Cruz claims that she was presented the voluntary departure forms and, without further explanation, told to sign them (Declaration of Suyapa Cruz); attorney E. James Rausch alleges that he was told that Patricia Gonzalez, aged 15, was physically dragged from an INS detention center screaming and crying that she did not want to return to El Salvador during the implementation of her voluntary departure to that country (Declaration of E. James Rausch); Juanita Melgar alleges that she consented to voluntary departure and did not attempt to contact her parents in the United States for the reason that she was told by an INS officer to tell him if she had any family in the United States so that they, too, could be arrested (Declaration of Timothy Barker, Exhibit 5); Eli Roque claims that he saw his brother being "pushed around" by an INS agent (Declaration of Eli Roque, Exhibit 7); and Christopher Encisco, a United States citizen, claims he was "physically abused" by INS agents, and then removed to Mexico (Declaration of Christopher Encisco,

(v)

Exhibit 8).

15.   Class certification must be made at an early stage of the proceedings, pursuant to Rule 23(c), before a record can be fully developed.  Consequently, the court "is bound to take the substantive allegations of the complaint as true."  Blackie v. Barrack, 524 F.2d 891, 901, n.17 (9th Cir. 1975); Eisen v. Carlisle and Jacqueline, 417 U.S. 156, 178 (1974).  Therefore, even where the defendants do contest a claim of plaintiffs, a court may not inquire into the merits of the action at this stage of the proceedings.

16.   Unlike F.R.Civ.P. 23(b)(3), which does require require notice to the class members.

17.   The passage in question is as follows:

BY MR. GEST:

Q     If the Immigration Service allowed you to remain in the United States, would you drop this lawsuit?

A     I don't know.

Q     If the Immigration Service allowed you to remain in the United States, would you continue with this lawsuit?

A     No.

Q     Are you interested in representing anybody else other than yourself in this lawsuit?

A     How's that?  Would you explain that, please?

Q     Do you understand what I mean when I say or when I ask you about representing people other than yourself?

(vi)

A    Representing them how?

Q    Is it your understanding that you brought this lawsuit only on behalf of yourself?

A    Just for me?

Q    Yes.

A    I don't know.

Q    Do you know if anyone else was involved?

A    I don't know.

Q    Has this ever been explained to you?

A    I do not remember.

Deposition of Perez-Funez, p. 44.

18.   Declaration of Perez-Funez of October 1981 (Exhibit 31).

19.   See First Amended Complaint.

20.   In Sosna, a petition for divorce was dismissed, because the petitioner had not satisfied the state's durational residency requirements.   The plaintiff brought a class action suit challenging these requirements.   By the time the case reached the Supreme Court, the residency requirement had long since been met.   The court held the plaintiff's claim not moot, because the injury was one which was capable of repetition yet evading review.

21.   See plaintiff's Exhibits 2, 3, 4, 8, 16, 21 & 22.

22.   In Califano v. Yamasaki, a class action was brought against the Secretary of the Dept. of H.E.W. for unconstitutionally recouping overpayments of Social Security benefits without considering certain statutory relief provisions.

(vii)

MICROFILMED

The district court certified a nationwide class, and this certification was upheld by both the Ninth Circuit and the Supreme Court.

23.    Perez-Funez was apprehended in Calexico, California (plaintiffs' Exhibit 1, paragraph 3), Jose Cruz was apprehended near Yuma, Arizona (Declaration of Jose Cruz), and Patricia Gonzalez was incarcerated in Edinburg, Texas (Declaration of E. James Rausch).

24.    Pled in the First Amended Complaint, paragraph 2.

25.    The preliminary injunction proposed by plaintiffs would require defendants to:

(1)    Advise unaccompanied minors upon arrest of the rights in understandable terms;

(2)    Bring the child before an immigration judge for an arraignment-type hearing for a custody determination and for the appointment of counsel to represent the child;

(3)    Not obtain the execution of a voluntary departure waiver from the child unless (a) the child is represented by counsel or (b) the immigration judge determines, on the record, that the waiver is knowing, intelligent and voluntary.

26.    For example, by failing to explain what voluntary departure is, failing to advise of the right to a deportation hearing, or mischaracterizing the procedures the minor will be subjected to if the minor does not consent to voluntary departure.

/  /  /

(viii)

MICROFILMED

27.   Where the irreparable injury was the loss of an irreplaceable basketball team member.

28.   In Anderson, the plaintiff alleged that the Air Force had wrongfully denied her a promotion and refused to transfer her to a specific job.  The Ninth Circuit held that the district court had abused its discretion in granting a preliminary injunction ordering the Air Force to transfer plaintiff pending a disposition on the merits, because, if she prevailed, she could be promoted retroactively and compensated with back pay, and thus had an adequate remedy at law.

29.   See also Deerfield Medical Center v. City of Deerfield Beach, 661 F.2d 328 (5th Cir. 1981) (First amendment and privacy rights); Citizens for a Better Env't. v. City of Park Ridge, 567 F.2d 698, 691 (7th Cir. 1975) (First amendment rights); Doe v. Mundy, 514 F.2d 1179, 1183 (7th Cir. 1975) (Privacy-abortion rights); Henry v. Greenville Airport Comm'n., 284 F.2d 631, 633 (4th Cir. 1960) (Negroes excluded from airport waiting room -- "District Court has no discretion to deny relief by preliminary injunction to a person who clearly establishes by undisputed evidence that he is being denied a constitutional right."); McGinnis v. U.S. Postal Service, 512 F. Supp. 517, 525 (ND Cal. 1980) (First amendment rights).

30.   For example, Perez-Funez left El Salvador because "they were killing the youth like me."  Deposition of Perez-Funez, p.49.

31.   See, supra, note 25.

32.   Defendants' Opposition to Motion for Preliminary Injunction pp. 17-18.

(ix)

33.  Id.

MICROFILMED

(x)