UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **CV 81-01457-MWF (Ex)**              Date:  **April 6, 2026**

Title:     Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

|  |  |
|---|---|
| Deputy Clerk: | Court Reporter: |
| Rita Sanchez | Not Reported |
| | |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

Proceedings (In Chambers):    ORDER DENYING DEFENDANTS' MOTION TO TERMINATE PERMANENT INJUNCTION AND ADVISAL ORDER [250]

Before the Court is the Motion to Terminate Permanent Injunction and Advisal Order (the "Motion") filed by Defendants U.S. Department of Homeland Security, et al., on November 12, 2025.  (Docket No. 250).   Plaintiffs Jose Antonio Perez-Funez, et al., filed an Opposition on January 6, 2026.  (Docket No. 268).  The Government filed a Reply on January 20, 2026.  (Docket No. 275).

The Court has read and considered the papers on the Motion and held a hearing on **February 11, 2026.**

The Motion is **DENIED.**  The Court has jurisdiction to maintain the Injunction and the Government has not established it is entitled to equitable relief due to changed circumstances.

I.    **BACKGROUND**

There are two broad background topics necessary to assess this Motion and the Plaintiffs' Cross-Motion, discussed in a concurrently filed separate Order.  These are: (A) the procedural background of this action and (B) the intervening legal changes since the Injunction was entered.

---

**CIVIL MINUTES—GENERAL**                                                    1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 81-01457-MWF (Ex)**                    **Date:  April 6, 2026**
Title:      Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

## A.       Procedural Background

This action was initiated in 1981 through a petition for a writ of habeas corpus, which was then expanded and certified as a class action.  *See Perez-Funez v. District Director, I.N.S.,* 611 F. Supp. 990, 994, n.6 (C.D. Cal. 1984) (hereinafter "*Perez-Funez I*").  The individual Plaintiffs alleged that they were detained as minors by what was then the Immigration and Naturalization Service ("INS").  *Id.* at 992.  Plaintiffs alleged that after they were detained, they were not informed of their statutory rights to apply for bail or asylum, which resulted in their involuntary waiver of these rights.  *Id.*  On January 24, 1984, this Court, presided over by District Judge Edward Rafeedie, certified a nationwide class composed of all unaccompanied minors ("UAC") who were or would be in the future taken into custody by INS agents.  *Id.* at 994.  At the same time, Judge Rafeedie entered a preliminary injunction.

### 1.  Preliminary Injunction

In *Perez-Funez I,* the Court found that Plaintiffs had shown a likelihood of success on the merits and a possibility of irreparable injury.  *Id.* at 1001-04.  The Court entered the preliminary injunction with the following terms:

> IT IS FURTHER ORDERED that defendants, their agents and successors in office shall not employ threats, misrepresentations, subterfuge, or other forms of coercion, or in any way attempt to persuade or dissuade class members when informing them of the availability of voluntary departure pursuant to 8 U.S.C. § 1252(b), that defendants, their agents and successors in office shall permit class members to retain copies or facsimiles thereof of any documents signed by the class member, and that defendants, their agents and successors in office shall not inform any member of the class of the availability of voluntary departure pursuant to 8 U.S.C. § 1252(b) until such defendant, agent, or successor in office has:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 81-01457-MWF (Ex)                    Date:  April 6, 2026
Title:      Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

(1) read verbatim to the class member in English or Spanish, or any other language understood by the class member, the oral General Advisal attached hereto as Exhibit A; and has

(2) provided the class member with a copy of the written notice attached hereto as Exhibit B and a copy of a free legal services list compiled pursuant to 8 C.F.R. § 292a.1 and has permitted the class member to retain these in his or her possession. If the class member indicates that he or she cannot read, the notice attached hereto as Exhibit B shall be read verbatim to the class member in English or Spanish, or any other language understood by the class member; and has

(3) obtained a signed acknowledgement on a separate copy of the notice attached hereto as Exhibit B from the class member showing that the aforesaid notices have been provided. If, after receiving the above notice, the class member informs such defendant, agent, or successor in the office that he or she wishes to apply for political asylum or for any other form of relief, such defendant, agent, or successor in office shall not advise, encourage, or persuade the class member to change his or her decision.

*Id.* at 1005.  The Court also attached, as Exhibit A and B, a "General Advisal" and a "Notice of Rights," for use during the term of the preliminary injunction. *Id.* at 1005-06.

**2. Judgment Following Trial**

In April 1985, the Court held a bench trial where it heard testimony from nearly twenty class members who testified that while in custody as UAC, they signed "voluntary departure" forms that waived their rights to other pathways of relief. *Perez-*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL


**Case No.  CV 81-01457-MWF (Ex)**                    **Date:  April 6, 2026**

Title:      Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

---

*Funez v. District Director, I.N.S.,* 619 F. Supp. 656, 657-58 (C.D. Cal. 1985) ("*Perez-Funez II*").  The INS form at the time that provided for voluntary departure, Form I-274, waived the right to a deportation hearing and all alternative forms of relief.  *Id.* at 658.  The INS's policy with respect to administering this form to UAC varied at the time by age, residence, and place of apprehension of the child.  *Id.*

For those UAC age fourteen to sixteen, INS informed them of the opportunity to voluntarily depart using the Form I-274 and allowed them to assent to voluntary departure, unless the UAC were apprehended near the Mexican or Canadian borders and their permanent residence was in one of those countries, *i.e.,* UAC of that age from "contiguous countries."  *Id.*  For those UAC from contiguous countries, INS would detain the child until a foreign consulate official arrived, or in certain circumstances would take the child to a Mexican or Canadian immigration officer.  *Id.*

As to those UAC age fourteen through seventeen from non-contiguous countries and for all UAC under fourteen, INS attempted to contact either an adult relative or a foreign consul from the UAC's home country.  *Id.*  Once a representative was found, INS generally advised the minor of the right to a deportation hearing and the opportunity for voluntary departure, with the exception of UAC who are apprehended at or near the border who reside in Mexico or Canada.  *Id.*  But the Court noted that ultimately the "policy varies depending on the situation," and that INS retained the discretion to refuse voluntary departure depending on the circumstance.  *Id.* at 658-59.

In class member testimony, UAC stated that while in the custody of INS, they signed the voluntary departure form unknowingly and involuntarily.  *Id.* at 657.  In the case of named Plaintiff Perez-Funez, he testified that he signed the voluntary departure form because an INS agent told him that he would otherwise be subject to lengthy detention, and another agent told him he could not afford bail.  *Id*.

The Court noted that voluntary departure, while a waiver of rights, "is in many ways a privilege."  *Id.* at 659.  It both reduces the UAC's time in detention and has no adverse impact on future lawful attempts to enter the United States.  *Id.*

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL


Case No.  **CV 81-01457-MWF (Ex)**                     **Date:  April 6, 2026**
Title:     Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

### a. *Mathews* Analysis

The Court then analyzed the INS's policy regarding voluntary departure under the three-part due process test from *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976). On the risk of erroneous deprivation, the Court held that the "one inescapable conclusion" from the trial was that "unaccompanied minors do not understand their rights when confronted with the voluntary departure form," under the procedures then-employed by INS.  *Id.* at 661.  The Court found the class member witnesses credible when they testified that they did not understand their rights, and heard from expert witnesses who explained that minors generally do not understand legal rights without explanation, particularly in a stressful environment.  *Id.*  On this point, the Court noted that:

> "[U]naccompanied children of tender years encounter a stressful situation in which they are forced to make critical decisions.  Their interrogators are foreign and authoritarian.  The environment is new and the culture completely different.  The law is complex.  The children generally are questioned separately.   In short, it is obvious to the Court that the situation faced by unaccompanied minor aliens is inherently coercive."

*Id.* at 662.  The Court did not, however, find the class members' testimony of physical mistreatment or verbal abuse credible.  *Id.* at 661.  The Court noted that INS "performs a thankless task under adverse conditions and, by and large, performs it admirably."  *Id.*

The Court further found that the one policy that "for the most part" alleviated the coercive aspects of the environment was the policy of locating adult friends or relatives of the child to act as a representative, which occurred in the case of UAC under fourteen who were not residents of Mexico or Canada.  *Id.* at 662-63.  Nonetheless, the Court held that given the "inherently coercive" nature of the environment, the risk of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 81-01457-MWF (Ex)                Date:  April 6, 2026
Title:      Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

erroneous deprivation remained high and was not cured by the INS's policies.  *Id.* at
662.

        The Court then weighed, in detail, the value of additional safeguards proposed
by the parties.  The Court concluded that access to telephones prior to being presented
with the voluntary departure form "is the only way to ensure a knowing waiver of
rights."  *Id.* at 664.   Indeed, the Court expressly found that written advisals alone were
insufficient given the coercive environment and adversarial nature of the encounter
between INS agents and UAC.  *Id.*  Additionally, the Court held that with respect to
those UAC who are not apprehended near the border and whose permanent residence is
not in Mexico or Canada, "mandatory contact with either counsel, a close relative, or
friend *prior* to presentation of the voluntary departure form is central to the success of
the telephone proposal."  *Id.* at 665 (emphasis in original).  Without such contact,
occurring prior to presentation of the form, the Court held that "the great majority of
these class members will commit an unknowing and involuntary waiver."  *Id.*

        With respect to those class members detained near the border who are residents
of contiguous countries, the Court held "the probable value of a mandatory call is
less."  *Id.* at 666.  Accordingly, for these UAC, the Court found that only "mandatory
*notification*" of the right to call an adult was sufficient.  *Id.* (emphasis in original).

        Finally, the Court held that the burden on the Government should be "tailored to
correct the specific violation and no more obtrusive than to satisfy the constitutional
minima."  *Id.* at 666 (quoting *Hoptowit v. Ray,* 682 F.2d 1237, 1258 (9th Cir. 1982)
(*overruled in part on other grounds by Sandin v. Conner,* 515 U.S. 472 (1995))).  INS
did not object to a simplified rights advisal so long as it was legally accurate, so the
Court ordered the parties to confer on the content of the advisal.  *Id.*  The Court further
ordered mandatory telephone contact with legal counsel, a close relative, or adult
friend prior to presentation of the voluntary departure form, finding that the "ten
minutes" it takes to allow the telephone contact "should not disrupt processing
significantly, even at the high volume posts."  *Id.* at 667.  As to those apprehended near

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 81-01457-MWF (Ex)                Date:  April 6, 2026
Title:       Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

the border and who were permanent residents of Mexico or Canada, INS need only offer the opportunity for a phone call.  *Id.*

The *Perez-Funez II* Court also considered INS's argument that nationwide injunctive relief was inappropriate.  *Id.* at 668-69.  But the Court found that at trial, Plaintiffs had proven that the INS's policies discussed above were violative of due process, and that they were employed in at least several states.  *Id.* at 669.  Moreover, a Memorandum provided by INS demonstrated a "uniform national policy to be implemented by an agency with nationwide jurisdiction."  *Id.*  Because "the nature of the violation determines the scope of the remedy[,]" the Court held that nationwide injunctive relief was appropriate.  *Id.* (quoting *Swan v. Charlotte-Mecklenberg Board of Education,* 402 U.S. 1, 16 (1971)).

### b.  Permanent Injunction (the "Injunction")

The Court then entered a permanent injunction that made the preliminary injunction permanent with certain modifications:

1. The language "employ threats, misrepresentations, subterfuge, or other forms of coercion or ..." shall be stricken as no longer necessary.

2. The parties are to confer among themselves and with experts to prepare a simplified rights advisal consistent with the current law of this circuit. This advisal should be prepared within thirty days of the entry of this judgment and submitted to the Court for approval. Once approved, it shall be read and provided to class members in the same manner as the previous advisal, along with the free legal services list compiled pursuant to 8 C.F.R. § 292a.1.

3. With respect to class members apprehended in the immediate vicinity of the border and who reside permanently in Mexico or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 81-01457-MWF (Ex)                Date:  April 6, 2026
Title:     Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

Canada, the INS shall inform the class member that he or she may make a telephone call to a parent, close relative, or friend, or to an organization found on the free legal services list. The INS shall so inform the class member of this opportunity prior to presentation of the voluntary departure form.

4.  With respect to all other class members, the INS shall provide access to telephones and ensure that the class member has in fact communicated, by telephone or otherwise, with a parent, close adult relative, friend, or with an organization found on the free legal services list. The INS shall provide such access and ensure communication prior to presentation of the voluntary departure form.

5.  The INS shall obtain a signed acknowledgment from the class member on a separate copy of the simplified rights advisal showing that the INS has provided all notices and required information, including confirmation of communication with a parent, close adult relative, friend, or legal organization, when applicable.

6.  The district director shall update and maintain the free legal services list compiled pursuant to 8 C.F.R. § 292a.1.

*Id.* at 670.

The parties failed to come to an agreement regarding the content of the simplified rights advisal, so the Court drafted its own and entered an Order to Show Cause why the Court's form should not be used.  (*See* Docket No. 231; *see also* Docket No. 279-1 (digital copy of OSC from Docket No. 231)).  After additional briefing on the content of the advisal, the Court entered the Order Re Advisal on May 16, 1986.  (*See* Docket No. 240; *see also* Docket No. 279-5 (digital copy of Order Re Advisal)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL


**Case No.  CV 81-01457-MWF (Ex)**                  **Date:  April 6, 2026**
Title:      Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.


Over the intervening forty years, the *Perez-Funez* advisal has developed into Form I-770, which the Government still provides to UAC today.  (*See* Motion at 6)

## B.      Legal Developments

In the over forty years since the Injunction was entered, there have been numerous changes to the nation's immigration laws.  Several changes are germane to this Motion.

### 1. Illegal Immigration Reform and Immigrant Responsibility Act and Homeland Security Act

First, the Government points to the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRAIRA").  (Motion at 7).  Among other major changes to the country's primary immigration law, the Immigration and Nationality Act of 1952 ("INA"), IIRAIRA included various new restrictions on the jurisdiction of the Judiciary and the District Courts, in particular, to review certain executive actions taken with respect to immigration.  *See* 8 U.S.C. § 1252.  The only provision of § 1252 at issue here, however, is IIRAIRA's limitation on courts' ability to issue injunctive relief, § 1252(f)(1).  In full, § 1252(f)(1) reads:

Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

Next, the Government points to the passage of the Homeland Security Act in 2002.  This legislation dismantled INS and transferred its functions with respect to

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 81-01457-MWF (Ex)                    Date:  April 6, 2026
Title:      Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

UAC to the U.S. Department of Health and Human Services.  (Motion at 7).  The
Government contends that the Office of Refugee Resettlement ("ORR"), part of HHS,
is now responsible for "ensuring that the 'interests' of UAC are considered in decisions
about UAC's 'care and custody.'"  (Motion at 7 (quoting 6 U.S.C. § 279(b)(1)(B))).

### 2.  TVPRA

Next, and perhaps most significantly, Congress passed the Trafficking Victims
Protection Reauthorization Act ("TVPRA") in 2008.  Meant to combat the trafficking
of children, the TVPRA set out a comprehensive scheme for processing UAC, codified
at 8 U.S.C. § 1232.  Relevant to this Motion, the TVPRA provides special rules for
permitting UAC, in certain situations, to withdraw their applications for admission
and/or voluntarily depart the country.

The TVPRA first sets out special provisions for children from contiguous
countries, *i.e.,* Mexico or Canada.  With respect to these UAC, the TVPRA provides
that immigration agents must screen them to determine whether they are victims of
trafficking; whether they have a fear of returning to their home country; and whether
the child is able to independently decide to withdraw their application for admission
into the United States.  *See* 8 U.S.C. § 1232(a)(2)(A).  If the child passes these
screening provisions, then DHS may permit the child to withdraw their application for
admission pursuant to 8 U.S.C. § 1225(a)(4), and return the child to their home
country.  *Id.* at § 1232(a)(2)(B).

For children from non-contiguous countries or children from contiguous
countries who do not pass the screening provisions contained in (a)(2)(A), the TVPRA
requires that they be placed in removal proceedings under 8 U.S.C. § 1229a, but also
states that they are eligible for voluntary return if they so choose, at no cost to the
child.  *See* § 1232(a)(5)(D)(i)-(ii).  These UAC are also entitled to access to counsel "to
the greatest extent practicable" and places the responsibility for ensuring counsel with
HHS.

---

**CIVIL MINUTES—GENERAL**                                          **10**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 81-01457-MWF (Ex)                    Date:  April 6, 2026
Title:      Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

Finally, for those UAC who do not qualify for the processes spelled out in (a)(2)(A)-(B), the TVPRA requires that these children be transferred to the custody of HHS within 72 hours absent "exceptional circumstances," where the children are then placed in the custody of ORR.  § 1232(b)(3).

### 3.  One Big Beautiful Bill ("OBBB")

Finally, the Government contends that the more recent passage of the OBBB further "enacted changes to the law that affect UAC." (Motion at 9).  The Government points to § 100051 of the legislation.  *See* Pub. L. No. 119-21, 139 Stat. 72 (2025), § 100051(8)(B)-(C).  In the Motion, the Government contends that these provisions provide funding for UAC to withdraw their application for admission from "any country, not just contiguous countries," pursuant to 8 U.S.C. § 1225(a)(4).  (Motion at 9).  This interpretation would have the effect of permitting *all* UAC to withdraw their application for admission and depart the country, not just those children from contiguous countries as provided in § 1232(a)(2)(A)-(B).

## II.    DISCUSSION

Against this background, the Court considers the Government's Motion to Terminate the Permanent Injunction and Advisal Order.  The Government premises its Motion alternatively under Federal Rule of Civil Procedure 60(b)(4), (5), or (6).

### A.    Relief Under Rule 60(b)(6)

First, the Government contends in its Motion that it seeks termination on the basis of Rule 60(b)(6), which provides that a party may seek relief from a final judgment for "any other reason that justifies relief." (*See* Motion at 10).  But as Plaintiffs point out, and the Government does not rebut, clause (6) is mutually exclusive with the other five bases for relief where the request for relief is only premised on reasons enumerated in clauses (1) through (5).  *See Corex Corp. v. U.S.,* 638 F.2d 119, 121 (9th Cir. 1981), *abrogated by, Gregorian v. Izvestia,* 871 F.2d 1515, 1526 (9th Cir. 1989).  The Motion does not present additional "extraordinary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 81-01457-MWF (Ex)                    Date:  April 6, 2026
Title:      Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

circumstances" separate and apart from the Government's arguments under Rule 60(b)(4) or (5) that would sufficiently invoke clause (6).  Indeed, the Government invokes the standard once in its Motion but does not make separate arguments under it, including in its Reply.  Accordingly, relief is not warranted under Rule 60(b)(6).

## B.      Relief Under Rule 60(b)(4)

Next, the Government seeks relief under Rule 60(b)(4).  Rule 60(b)(4) provides that a party may seek relief from a judgment where the judgment is void.  "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard."  *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (citations omitted).  "Federal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction."  *Id.* (quoting *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986)).

The Government first asserts that the Injunction should be vacated under Rule 60(b)(4) because the enactment of § 1252(f)(1) has the effect of "depriv[ing] the District Courts of jurisdiction" to grant class-wide injunctive relief when the relief "enjoin[s] or restrain[s] the operation of" certain provisions of IIRAIRA.  (*See* Motion at 12); *see Garland v. Aleman Gonzalez,* 546 U.S. 543, 546, 548 (2022).  But as Plaintiffs respond, Rule 60(b)(4) is reserved for challenges to jurisdiction as to the court that entered judgment, *not* whether a court entering judgment now would have jurisdiction to order the same relief.  (*See* Opp. at 14-15).  And again, as explained in *Espinosa*, 559 U.S. at 271, relief under Rule 60(b)(4) is "generally [] reserved [] only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction."  And here, there can be no argument that the Court lacked jurisdiction to award the relief it did in 1985, as § 1252(f)(1) was not yet the law.

CIVIL MINUTES—GENERAL                                        12

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 81-01457-MWF (Ex)                    Date:  April 6, 2026
Title:      Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

The Government does not respond in substance to Plaintiffs' arguments on this point.  Instead, the Reply only continues to reference Rule 60(b)(4) in passing and maintains, in conclusory fashion, that the Court is "divest[ed] … of jurisdiction to restrain the operation of the enforcement and processing provisions in the INA."  (*See* Reply at 2-3).  But the Government presents no additional legal authorities supporting relief under Rule 60(b)(4) despite Plaintiffs' arguments.

Accordingly, because the 1985 Judgment and Injunction is not void, the Government is not entitled to relief under Rule 60(b)(4).

### C.      Relief Under Rule 60(b)(5)

However, as the Government argues, relief may be alternatively available under Rule 60(b)(5) given the subsequent promulgation of § 1252(f)(1).  (*See* Motion at 11-12).  The Government further argues that equitable relief is warranted, in any event, given other legal developments, such as the passage of the TVPRA and the OBBB. (*See id.* at 13-17).

Rule 60(b)(5) provides that a court may relieve a party from a final judgment where "the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable[.]"  While the Government cites to two prongs of Rule 60(b)(5) in its Motion, it seems to only substantively invoke the legal standard under the third prong to argue that it is "no longer equitable" to "apply[] [the injunction] prospectively[.]"  (*See* Motion at 9-10).

As explained in *Agostini v. Felton,* 521 U.S. 203, 215 (1997), it is appropriate to grant equitable relief under this prong of Rule 60(b)(5) when the movant shows "a significant change either in factual conditions or in law."  *Id.*  Particularly in cases of "institutional reform" injunctions, like the one at issue here, the Supreme Court has mandated that courts take "a flexible approach" given the potential for significant changes "during the life of the decree."  *See Rufo v. Inmates of Suffolk County Jail,* 502

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **CV 81-01457-MWF (Ex)**                    Date:  **April 6, 2026**
Title:        Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

U.S. 367, 381 (1992).  The Court in *Rufo* explained that the analysis for such "changed circumstances" under Rule 60(b)(5) should be two-fold: first, the movant requesting modification "bears the burden of establishing that a significant change in circumstances warrants revision of the [injunction;]" and if that burden is satisfied, then the "court should consider whether the proposed modification is suitably tailored to the changed circumstance."  *Id.* at 383.

### 1.  8 U.S.C. § 1252(f)(1)

As the Court explained in *Rufo,* an injunction "must of course be modified if, as it later turns out, one or more of the obligations placed upon the parties has become impermissible under federal law."  *Id.* at 388.  The Government argues that the prospective application of the Injunction here violates § 1252(f)(1) by enforcing relief that "enjoin[s] or restrain[s] the operation of" the applicable provisions of IIRAIRA. (Motion at 11-12).  Plaintiffs make several arguments in response.  (*See* Opp. at 17-23).

First, Plaintiffs argue that the Injunction does not "enjoin or restrain the operation" of any covered IIRAIRA provision because it is only designed to enforce Fifth Amendment rights.  (Opp. at 18).  This argument, however, seems to assume that the purposes for injunctive relief must be mutually exclusive — that if the relief is enforcing Fifth Amendment rights, it cannot also be "enjoining or restraining" the enforcement, implementation, or carrying out of the IIRAIRA provisions.  But that proposition does not comport with the broader context of the statute.  Indeed, § 1252(f)(1) states that district courts cannot enjoin or restrain the operation of the provisions of IIRAIRA "[r]egardless of the nature of the action or claim." Accordingly, this statutory language seems to indicate that even where a claim is made to enforce a constitutional right, courts are nonetheless barred from entering injunctive relief even to enforce such a right where the "injunctions [] order federal officials to take or refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions."  *See Aleman Gonzalez* at 550; *see also id.* at 553-54 (explaining that the prefatory clause of § 1252(f)(1) implies that both challenges to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 81-01457-MWF (Ex)                    Date:  April 6, 2026
Title:      Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

"proper" interpretation of IIRAIRA's provisions and constitutional claims are subject to the remedial bar).

Next, Plaintiffs argue that the Injunction does not "operate on" the covered provisions of IIRAIRA but rather that it operates on the TVPRA.  (Opp. at 18-22).  In other words, if the Injunction only enjoins or restrains the operation of the TVPRA, then it is not subject to the remedial bar of § 1252(f)(1).

The Government does not dispute that the TVPRA is not "among the provisions the 'operation' of which cannot be 'enjoined or restrained' under § 1252(f)(1)." (*See* Reply at 4 (acknowledging that § 1252(f)(1) covers only 8 U.S.C. §§ 1221-1231)). Indeed, the Ninth Circuit has confirmed as much in *Galvez v. Jaddou,* 52 F.4th 821, 829-31 (9th Cir. 2022).  Instead, the Government argues that certain sections of the TVPRA, in turn, invoke "sources of ICE's and CBP's authority to detain and process class members, specifically [under these facts] 8 U.S.C. § 1229c (voluntary departure) and 8 U.S.C. § 1225 (inspection and withdrawal of application for admission)." (Reply at 4).  Therefore, the Government argues, "[w]hile the TVPRA undoubtedly provides a framework for the treatment of unaccompanied children, the actual legal mechanisms by which a child may be returned to their home country are voluntary departure under 8 U.S.C. § 1229c, and the withdrawal of an application for admission, under 8 U.S.C. § 1225(a)(4)[,]" both of which are covered by the remedial bar in § 1252(f)(1).  (*Id.* at 4-5).

Given this overlap between the TVPRA's provisions and covered IIRAIRA provisions, the question then becomes "whether any of the [I]njunction's requirements 'enjoin or restrain the operation of'" § 1229c or 1225(a)(4).  *See Al Otro Lado v. Exec. Off. for Immigr. Review,* 138 F.4th 1102, 1125 (9th Cir. 2025), *cert. granted on other grounds,* 146 S. Ct. 604 (2025).  Obviously, a statute such as § 1252(f)(1) must be carefully limited to its terms.  As the Fifth Circuit put it recently: "Congress legislated which sections are covered by § 1252(f)(1).  The Executive Branch does not get to propose additions." *Texas v. DHS,* 123 F.4th 186, 210 (5th Cir. 2024) (citing to U.S. Const. art. I, § 1).

CIVIL MINUTES—GENERAL                                           15

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 81-01457-MWF (Ex)                    Date:  April 6, 2026
Title:      Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

Indeed, the Ninth Circuit has specifically recognized limits on § 1252(f)(1) in its "collateral effect" case law.  *See Al Otro Lado,* 138 F.4th at 1125-26 (discussing this case law).  In *Aleman Gonzalez,* the Supreme Court recognized this case law but left it undisturbed, noting that "even if an injunction has some collateral effect on the operation of a covered provision," courts "may enjoin the unlawful operation of a provision *that is not specified in § 1252(f)(1).*"  *See* 596 U.S. at 553, n.4 (emphasis in original).

Nonetheless, both parties are correct to a certain extent that prior cases do not specifically dictate what the law requires in this instance.  On the one hand, Plaintiffs are correct that *Aleman Gonzalez* presented a much clearer case where the district court entered injunctive relief entitling noncitizens to a bond hearing under § 1231(a)(6), and no party disputed that § 1231 was a covered provision.  *See* 596 U.S. at 551.  On the other hand, the Government is also correct that *Galvez* is not quite on point, either.  There, the Ninth Circuit held that one provision of the TVPRA, § 1232(d)(2), could be enjoined without running afoul of the remedial bar in § 1252(f)(1) because it was "certainly not a provision of the INA '*as amended by* the [IIRAIRA] of 1996.'"  *See* 52 F.4th at 830 (emphasis in original).  While the provision of the TVPRA at issue here is also not one that was amended by IIRAIRA, the particular provision of the TVPRA discussed in *Galvez* did not contain any cross-reference to covered provisions, as do the TVPRA provisions at issue here.  *See* 8 U.S.C. § 1232(d)(2).

Accordingly, no case presented by the parties, or found by the Court, has answered the precise question posed.  There is thus a colorable argument that imposing additional due process constraints when immigration officers are carrying out these provisions of the TVPRA constitutes an impermissible injunction or restraint on the carrying out of IIRAIRA provisions covered by § 1252(f)(1).

To assist in analyzing this question, the Court looks for guidance in the Ninth Circuit's most recent case on the "collateral effect" rule.  In 2025, the Ninth Circuit applied the "collateral effect" rule to an injunction that required the Government to take certain actions with respect to asylum applications.  *See Al Otro Lado,* 138 F.4th at 1124.  In *Al Otro Lado,* the district court ordered "negative injunctive relief" that

**CIVIL MINUTES—GENERAL**                                              **16**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL

Case No.  CV 81-01457-MWF (Ex)                 Date:  April 6, 2026
Title:     Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

prohibited the application of an asylum rule, the Asylum Transit Rule, to a certain class of plaintiffs.  *Id.*  The district court also ordered "affirmative injunctive relief" that required the Government to notify the class members of the injunction and to take affirmative steps to reconsider or reopen past asylum determinations that were based on the now-prohibited asylum rule.  *Id.*

The Ninth Circuit held that the "negative injunctive relief" prohibiting application of the EOIR's Asylum Transit Rule was not barred by § 1252(f)(1).  *Id.* at 1126.  The court acknowledged that asylum eligibility determinations could arise within the context of expedited removal (under § 1225) or regular removal (under § 1229a) both of which are covered provisions under § 1252(f)(1).  *Id.* at 1126-27.  Nonetheless, the asylum rule enjoined by the district court was promulgated by the Government under its authority under § 1158, a non-covered provision, to "establish substantive and procedural eligibility requirements for obtaining asylum."  *Id.* at 1126.  Accordingly, the negative injunctive relief "directly implicates" that ***non***-covered provision, "[e]ven though asylum eligibility may change the outcome of a removal proceeding under a covered provision[.]"  *Id.*  Such effects on removal proceedings under a covered provision were merely "collateral" to the asylum eligibility provision.  *Id.*  The panel explained that even where an immigration agent or Immigration Judge is processing noncitizens pursuant to §§ 1225 or 1229a, those statutes direct the agent to consider eligibility requirements under § 1158, and thus do not "shift asylum determinations out" from § 1158.  *Id.*

This reasoning from *Al Otro Lado* is applicable to this action.  As the Government concedes — and, in fact, vigorously argues — the TVPRA now "occupies the field" insofar as the processing of UAC is concerned.  (Reply at 2).  In its Reply, the Government makes its position vis-à-vis the TVPRA abundantly clear: "[w]here Congress has enacted a comprehensive statutory regime [the TVPRA] addressing the same subject matter as an injunction, the statute supplants the need for court-imposed procedural rules by prescribing binding federal standards…."  (Reply at 11).  The Court agrees with the Government at least in part:  it is clear that Congress saw fit to take the treatment of UAC completely out of the IIRAIRA's generalized provisions

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 81-01457-MWF (Ex)**                    **Date:  April 6, 2026**
Title:      Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

with the enactment of the TVPRA.  Congress instead placed all rules for the processing of such children within a separate statutory provision, § 1232, which is ***not*** a covered provision within § 1252(f)(1).  It thus follows that to the extent the Injunction compels the Government to take certain procedural steps when processing UAC, it does so with respect to the TVPRA's requirements.

To be sure, the TVPRA cross-references the covered provisions of §§ 1225 and 1229c and permits the Government to follow those procedures in certain circumstances.  But like with § 1158 in *Al Otro Lado*, the Government is first and foremost required to follow the TVPRA when it encounters unaccompanied children.  *See* 138 F.4th at 1126-27.  Put more simply, the responsibilities of immigration officers when they encounter children are dictated by the TVPRA, not by the covered provisions of the IIRAIRA.  *See id.* (in processing individuals who claim asylum, immigration agents and Immigration Judges are applying the requirements for asylum found in § 1158).  Therefore, where the TVPRA "occupies the field" and constitutes a "binding" legal framework on DHS's processing of UAC, as the Government insists, the Injunction's procedural requirements are thus enjoining or restraining the way the Government "enforces, implements, or carries out" the ***TVPRA***, rather than any covered provision.

Moreover, while § 1252(f)(1) does not strip the Court of subject matter jurisdiction, *see Biden v. Texas,* 597 U.S. 785, 798 (2022), the principle seems equally applicable here that courts should be guided "by the general rule to resolve any ambiguities in a jurisdiction-stripping statue in favor of the narrower interpretation, and by the strong presumption in favor of judicial review." *Ibarra-Perez v. United States,* 154 F.4th 989, 995 (9th Cir. 2025) (internal quotations omitted).   In light of Congress's codification of the TVPRA, the Court is hesitant to expand the reach of § 1252(f)(1) to cover yet more ground in these provisions of the TVPRA and prohibit courts from imposing classwide injunctive relief when it comes to the treatment of children under this statute.

The Motion is therefore **DENIED** on the basis that § 1252(f)(1) constitutes an intervening change in law that makes the terms of the Injunction impermissible under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL


**Case No.  CV 81-01457-MWF (Ex)**          **Date:  April 6, 2026**
Title:     Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

---

federal law.  *See Rufo,* 502 U.S. at 388.  The next question is whether changes in the country's immigration laws, writ large, are so significant that termination of the Injunction is necessary under the equitable prong of Rule 60(b)(5).  *See id.* at 383.

### 2.  Broader Legal Changes

Before the Court discusses the specific changes in the law that the Government argues warrant termination of the Injunction, the Court first examines the general principles that guides the analysis.

In answering whether relief is warranted given broader changes to the immigration system and the nation's immigration laws, the Court is guided by the Supreme Court's admonitions in *Rufo* and *Horne v. Flores,* 557 U.S. 433, 447-50 (2009), to maintain a "flexible" approach and to assess whether the Injunction is "limited to reasonable and necessary implementations of federal law."  If the "objective" of the Injunction has been achieved through some other "durable remedy" in the intervening years — here, the objective being satisfaction of the Fifth Amendment's due process requirements — then "continued enforcement of the order is not only unnecessary, but improper." *Horne,* 557 U.S. at 450.  While the Supreme Court discussed this Rule 60(b)(5) standard in light of the federalism concerns posed when balancing federal oversight and local control, the Court assumes the same general principles apply when a federal court imposes requirements on the Executive branch.

The Government argues that the intervening changes in the law cataloged in section I.B., *supra*, make the continued maintenance of the Injunction inequitable because the Injunction is "obsolete." (Reply at 10).  The Government insists that in light of the TVPRA and intervening regulations, "the injunction is [] no longer necessary to safeguard the interests of UAC." (Motion at 15).  According to the Government, the following developments are of particular relevance:

- The promulgation of the "Unaccompanied Children Program Foundational Rule" at 45 C.F.R. § 410.1309.  These regulations provide procedural safeguards

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 81-01457-MWF (Ex)                    Date:  April 6, 2026
Title:      Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

and additional statutory rights for children once they are in the custody of ORR. (*See* Motion at 14-15).

- The TVPRA's voluntary departure provision at § 1232(a)(5)(D)(i)-(ii), which the Government contends ensures that UAC are placed into proceedings overseen by an Immigration Judge.  (*See id.* at 16).

- The TVPRA's screening provisions codified at § 1232(a)(2)(A)(i)-(iii).  (*See id.*).

The Government further assures that "[t]o be clear, the Government intends to continue to provide an advisal to UAC if the injunction is lifted, but the Government will adapt the form to incorporate these legal and factual developments."  (*Id.* at 13).

On this latter point, the Court notes that the Government is requesting termination of the entire Injunction, rather than modification, and explicitly seeks to be relieved of its obligation to provide the Form I-770 to UAC.  (Motion at 19).  The Government's insistence on termination remains even though existing regulations and the still-binding *Flores* Settlement Agreement would continue to require it to provide the I-770.  (*See* Opp. at Ex. 6 ¶ 24.D).  It is not clear whether the Government intends to repeal its own regulations, and another court in this District has recently rejected the Government's attempts to dissolve the *Flores* Settlement Agreement.  *See Flores v. Bondi,* 803 F. Supp. 3d 1018 (C.D. Cal. 2025).  But for purposes of this Motion, the Court takes at face value the repeated assertions by the Government that the I-770 will no longer be necessary if the Injunction is vacated.  Notably, the Government does not argue on this Motion that the regulations requiring provision of I-770 or the *Flores* Settlement Agreement are such "changed circumstances" that call for equitable relief under Rule 60(b)(5), which might present a different question entirely.

Nonetheless, the Government is certainly correct that the legal landscape has significantly changed since the Injunction was entered in 1985.  But where the Court deviates from the Government's conclusions is the argument that these changes "supplant" the protections from Form I-770.  While certain changes in the law provide

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 81-01457-MWF (Ex)                    Date:  April 6, 2026
Title:      Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

additional requirements as to the Government's treatment and processing of UAC, including the TVPRA, none provide for the minors to be explained their rights in the manner that the Court found was required by the Fifth Amendment in 1985. Therefore, these changes neither accomplish the objective of the Injunction nor provide any "durable remedy." *See Horne,* 557 U.S. at 450.

Again, the "objective" of the Court's Injunction was to address procedural due process violations that were found at a particular point in time during the child's detention: the period after initial apprehension and before the child was advised of the option to voluntarily depart, typically within the first few hours or days of detention. *Perez-Funez II,* 619 F. Supp. at 656.  The Court heard testimony by class members that they were "presented the voluntary departure forms without any explanation of rights and told" to sign them.  *Id.* at 657.  The Court found that the children signed the forms, but "only because they did not understand they were waiving their rights to other possible relief."  *Id.*  Indeed, in the case of Plaintiff Perez-Funez himself, who was sixteen years old at the time, he was told that he would "otherwise have a lengthy detention period" if he did not sign the voluntary departure form and later was told by an agent "that he could not afford bail[,]" even if he exercised his right to seek bail.  *Id.*

It was considering this testimony, along with the testimony of Government and expert witnesses, that the Court found that the risk of erroneous deprivation of rights was high in this encounter.  *See id.* at 660-63.  Particularly detailed were the Court's findings as to the minors' lack of understanding of their rights during this period.  The findings of the Court on this point bear repeating:

> "[U]naccompanied children of tender years encounter a stressful situation in which they are forced to make critical decisions. Their interrogators are foreign and authoritarian. The environment is new and the culture completely different. The law is complex. The children generally are questioned separately. In short, it is obvious to the Court that the situation faced by unaccompanied minor aliens is inherently coercive."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 81-01457-MWF (Ex)                    Date:  April 6, 2026
Title:      Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

The Court further found that "agents are also the arresting or detaining officers and thus are in an adversary position vis-à-vis the children." *Id.* at 664.  These were the findings that compelled the Court to carefully tailor the Injunction to provide for a rights advisal along with requirements to provide access to a telephone.

With this background problem in mind, the Government has failed to point to anything in the statutory or regulatory landscape that constitutes a meaningful cure to the scenario that UAC encounter upon apprehension by immigration agents, which persists to this day.  To be sure, the TVPRA and related regulations provide additional safeguards for UAC that did not exist at the time the Injunction was entered.  In particular, the Court notes the robust set of processes to which children become entitled once they reach the custody of ORR, embodied in the "Unaccompanied Children Program Foundational Rule" at 45 C.F.R. § 410.1309.  But there remains a critical 72-hour period, before the child is required to be transferred to ORR, where the Government has pointed to only limited statutory or regulatory protections for UAC.  And none of these replace the Injunction by ensuring a voluntary, knowing, and intelligent waiver of a child's rights.

These are the inadequate protections on which the Government relies:

First, as to UAC who are from contiguous countries, the Government points to federal agents' requirements under the TVPRA to screen children for trafficking concerns, fear of return to their home countries, and to assess whether the child can make an independent decision to withdraw their application for admission.  (Motion at 14).  But the Court recognized in 1985 that leaving the determination of whether UAC could knowingly, voluntarily, and intelligently waive their rights to an INS agents' discretion was not a sufficient "safety valve" to protect the child's rights, as the Government also urged at the time.  *See* 619 F. Supp. at 663.  Rather, additional and specific safeguards were required to ensure voluntary and knowing waiver, "irrespective of INS' good intentions."  *Id.*

So too, here, even with the development of the TVPRA's screening requirements.  Although immigration agents encountering UAC are statutorily required

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL

Case No.  **CV 81-01457-MWF (Ex)**                    **Date:  April 6, 2026**
Title:       Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

---

to ensure that UAC may "make an independent decision to withdraw" their application for admission, the Government does not discuss how that cures the issue that the Injunction identified:  the inherently coercive scenario faced by UAC and the inherently adversarial relationship between immigration agents and UAC.  As the Court held in 1985, in the context of this adversarial encounter, the Constitution requires more than the Government's discretion, however well-intentioned, to act in the child's best interest.  *See id.*  Yet relying on immigration agents' discretion is precisely what is urged by the Government here.

Second, as to UAC from non-contiguous countries or those UAC who do not pass the screening requirements of § 1232(a)(2)(A), the Government points to the provisions of the TVPRA that allow for voluntary departure, codified at § 1232(a)(5)(D)(i)-(ii).  The TVPRA provides that these subgroups of UAC are placed in removal proceedings under § 1229a, and that they are eligible for voluntary departure under § 1229c, meaning that UAC may choose to voluntarily depart the United States prior to completion of removal proceedings.  (*See* Motion at 8).  The Government contends that these safeguards "more than resolve the concerns that animated the permanent injunction[,]" noting that if the named Plaintiffs from this action were encountered by immigration enforcement today, they would be placed in removal proceedings before an Immigration Judge pursuant to the TVPRA.   (Motion at 15).

If each child in these categories of UAC were guaranteed to make it to an Immigration Judge before they were permitted to voluntarily depart, the issues on this Motion might have been different.  But the Government goes on to assert that notwithstanding the TVPRA, the OBBB expands DHS's authority with respect to these subgroups of UAC. (Motion at 15).  Specifically, the Government contends that the OBBB permits the Government to allow UAC from ***any*** country, not just contiguous countries, to withdraw their application for admission and return to their home country.  Put more simply, in one breath, the Government assures the Court that these groups of UAC may only choose to depart under the supervision of an Immigration Judge, and in the next, asserts that DHS can, in its discretion, permit withdrawal and return the child at any time.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  **CV 81-01457-MWF (Ex)**                    **Date:  April 6, 2026**
Title:       Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

And the Government's position with respect to the OBBB is not merely theoretical in this Motion, but seems to have already been confirmed in practice.  In evidence before the Court is a letter dated December 4, 2025, from Rodney S. Scott, the Commissioner of U.S. Customs and Border Protection, confirming that DHS has implemented voluntary return procedures for *all* UAC, not just those who are authorized for such procedures under the TVPRA (*i.e.,* children from contiguous countries).  (*See* Plaintiffs' Cross-Motion at Ex. 8 (Docket No. 269-8)).  The letter specifically cites OBBB as authorizing CBP's processing of UAC in this fashion.  (*Id.*).  Ironically, the letter also asserts that CBP provides these UAC with the Form I-770, the very advisal the Government now seeks to terminate.  Nonetheless, CBP notes, without distinction, that UAC "who choose to do so[] are repatriated from the United States . . . as soon as operationally feasible."  (*Id.*).

The Court makes no comment on the merits of whether OBBB expands the Executive's ability to process UAC in this way.  This point is only relevant to show that it is not the case that voluntary departure for these categories of UAC is always overseen by an Immigration Judge.  Given the Government's shifting interpretation of the law, the Court simply cannot assess what procedural protections, if any, these subgroups of UAC are afforded absent the Injunction and Form I-770.  At the very least, the Court cannot conclude on this record that children from non-contiguous countries or those from contiguous countries who fail the screening requirements of § 1232(a)(2)(A) are adequately safeguarded by hearings before Immigration Judges once they are placed in removal proceedings.  The Government has in no uncertain terms asserted the right to present children with the option to voluntarily depart before they can be placed into such proceedings.  Rather, the Government urges a return to the exact situation the Court identified in 1985: unfettered discretion of immigration agents to present UAC with the option to voluntarily depart.

In sum, the two points above demonstrate that for any group of UAC covered by the TVPRA, the Government has not carried its burden to show that significant changes in the law warrant termination of the Injunction.  Indeed, all of the Government's arguments eventually boil down to the assertion that the Executive

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. **CV 81-01457-MWF (Ex)**                    Date: **April 6, 2026**
Title:       Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

branch should have unfettered discretion to fashion processes to permit voluntary departure of UAC, even before UAC ever leave the custody of immigration authorities. But as the Court found in 1985, the Constitution requires more than the goodwill of immigration agents to ensure that any waivers of rights are voluntary, knowing, and intelligent.  The Government has not proven that it is complying with (or will comply with) that constitutional command any more today than it did in 1985, and thus has not fashioned a "durable remedy" apart from the Injunction in the intervening years.  *See Horne,* 557 U.S. at 450.

### 3.  Factual Changes

Next, the Government makes several arguments regarding putative factual changes that it claims warrant the termination of the Injunction.  Specifically, the Government argues that the Form I-770 is outdated in the following ways:

- The Form provides no chance for interactivity, mechanisms to account for language barriers, and no opportunity to verify understanding.  (Motion at 17).
- The Form could now be provided in "multimedia formats" rather than in paper form.  (*Id.* at 17-18).
- The Form does not account for "complexities in modern intake operations" given the volume of UAC and the process of transferring UAC to HHS custody.  (*Id.* at 18).
- The content of the Form fails to account for the changed legal landscape. (*See id.* at 18-19).

While these certainly may be developments worthy of consideration, these arguments do not compel outright termination of the Injunction.  Rather, the Government seems to urge that it may be trusted to develop a more flexible form of notice without the judicial oversight that would inherently arise from modifying – not terminating – the Injunction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


CIVIL MINUTES—GENERAL

**Case No.  CV 81-01457-MWF (Ex)**                **Date:  April 6, 2026**
Title:      Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

---

This assumption by the Government is dubious based on the Government's provision of the UAC Pathway Processing Advisal, discussed in the concurrent Order. But even putting that aside, Plaintiffs are correct that even where there are significant changed factual circumstances, the proper relief must be "suitably tailored to the changed circumstance."  (*See* Opp. at 27-30); *see Rufo,* 502 U.S. at 391.  The Government merely suggests that the changed statutory law — the TVPRA and OBBB — provides sufficient procedural protection to these rights warranting termination, *see* Reply at 15, but that argument has already been rejected above.

The onus is therefore on the Government to demonstrate that the factual circumstances identified above are such that **termination** is a suitably tailored remedy. *See Rufo,* 502 U.S. at 391.  The Government has failed to do so.  If the Government contends that more interactivity, a different format, or other modifications in light of the statutory changes should be made, the Court is certainly open to such a request. But none of these technological changes inherently suggests that the "objective" of the Injunction has been achieved because UAC's Fifth Amendment rights are sufficiently safeguarded by these changes, and thus the Injunction should be terminated in its entirety.

Accordingly, the factual changes standing alone, or even considered in conjunction with legal changes, do not constitute changed circumstances that warrant outright termination of the Injunction.

### 4.  Separation of Powers

Finally, the Government argues that general concerns about separation of powers also warrants termination, and that the Injunction deprives the Executive branch of necessary flexibility in this area.  (*See* Motion at 19-21).

The Court certainly recognizes that the Injunction wades into a legal area where Congress has afforded the Executive much discretion and latitude, particularly given the jurisdiction-stripping provision of § 1252 discussed above.  The Court said so at the

---

**CIVIL MINUTES—GENERAL**                                            **26**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 81-01457-MWF (Ex)                    Date:  April 6, 2026
Title:        Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

hearing.  The Court also recognizes as a general matter that the Supreme Court has emphasized that the political branches should retain primacy in creating and enforcing immigration law, and "[a]ny rule of constitutional law [in this area] that would inhibit the flexibility of the political branches of government to respond to changing world conditions should be adopted only with the greatest caution."  *See Mathews v. Diaz,* 426 U.S. 67, 81-82 (1976).

But *Mathews* does not establish a general rule that "flexibility" must be preserved at all costs even where courts have found constitutional violations, as here.  And where those violations remain unremedied by any durable protections, the Court concludes that termination is not warranted under Rule 60(b)(5).

Moreover, the Court holds in a concurrently filed Order that the Government's provision of the new UAC Pathway Processing Advisal violates the terms and the spirit of the 1985 Injunction.  This holding is relevant to the Government's Motion because, at bottom, the Government seeks relief in equity under Rule 60(b)(5).  Plaintiffs are therefore correct to cite to the discussion in *Precision Instrument Mfg. Co. v. Automotive Maintenance Machine Co.,* 324 U.S. 806, 814-15 (1945).  The Supreme Court there reminds this Court and the parties that "he who comes into equity must come with clean hands."  *Id.*  Equity does not require a party to have "led blameless lives," but "it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue."  *Id.* at 815.  This principle takes on "even wider and more significant proportions" where the "suit in equity concerns the public interest."  *Id.*  The Government's violation of the Injunction provides an additional reason to deny this Motion.

## III.    **CONCLUSION**

As was made clear at the hearing, the Court (and Plaintiffs, for that matter) have no intention of preventing the Government from requesting modification or termination of the Injunction when the circumstances warrant such a change.  Obviously, this Order only pertains to the record before the Court on this Motion.  And on this Motion, the Government suggests that the Court should terminate the Injunction

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  CV 81-01457-MWF (Ex)**                    **Date:  April 6, 2026**
Title:      Jose Antonio Perez-Funez, et al. v. Dept. of Homeland Security, et al.

without pointing to any significant change in circumstance that assures the Court that the objective of the Injunction has been accomplished, as required by *Horne*.

Accordingly, the Court declines to terminate the Injunction on an equitable basis.  Given the rejection of the arguments under Rule 60(b)(4) and (6), the Motion is **DENIED**.

IT IS SO ORDERED.